**ARNOLD & PORTER**
**KAYE SCHOLER**

Sara L. Shudofsky
+1 212.836.7922 Direct
Sara.Shudofsky@apks.com

October 25, 2017

BY ECF and Facsimile
Hon. Nelson S. Román
United States District Judge
United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

    Re: Lowell v. Lyft, Inc., 17-cv-06251 (NSR)(LMS)

Dear Judge Román:

  We represent Lyft, Inc. ("Lyft"), defendant in the above-referenced action. In accordance with Sections 3.F and 3.A.ii of Your Honor's Individual Practices, we write respectfully to request a pre-motion conference to address Lyft's anticipated motion to dismiss.

  Plaintiff Harriet Lowell ("Plaintiff"), purporting to represent a nationwide class, a New York State-wide class, and a New York City-wide class, alleges that Lyft has violated Title III of the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL") by failing to make wheelchair accessible vehicles ("WAVs") available for passengers who request them, notwithstanding that Plaintiff does not allege that Lyft owns or leases *any* type of vehicle. And Plaintiff cannot make such an allegation: Lyft is an online ride-sharing platform created and maintained to connect drivers and passengers.

  Despite the fact that Lyft does not own or lease any type of vehicle, Lyft is committed to anti-discrimination policies and supporting accommodations for persons with disabilities. Lyft enforces clear anti-discrimination policies requiring its independent contractor drivers to accommodate passengers with service animals and those who use collapsible and foldable wheelchairs. In certain markets where WAV providers exist, Lyft has also partnered with them to enhance access to WAVs. The relief Plaintiff seeks here, however, is foreclosed under the applicable law.

  The complaint is subject to a motion to dismiss for the following reasons: (1) the complaint fails to state a claim for relief, as Plaintiff alleges that Lyft is a private entity engaged in the transportation business, and such businesses are squarely exempt from any requirement to provide WAVs; (2) Plaintiff lacks standing; (3) the Court lacks subject matter jurisdiction over the complaint, as Plaintiff is bound by the arbitration and class action waiver provisions of Lyft's Terms of Service ("TOS"); and (4) the purported classes that Plaintiff seeks to represent are not ascertainable. Lyft's arguments are summarized below.

*First*, Plaintiff alleges that Lyft is engaged in the business of transportation, akin to a taxi service. *See, e.g.*, Compl. ¶¶ 74, 26, 30, 31. While Lyft is not a transportation provider, taking all facts pled in the complaint as true solely for purposes of a motion to dismiss, Plaintiff cannot state a claim for relief under the ADA because the *only* relief she seeks--that Lyft be required to provide WAVs--is not available as a matter of law. Private entities primarily engaged in the business of transportation, such as a taxi or limousine service, are not required under Title III of the ADA and its implementing regulations to purchase or lease WAVs. *See* 42 U.S.C. § 12184(b)(3); 49 C.F.R. § 37.29(b); 49 C.F.R. § 37.103(c); 49 C.F.R. Pt. 37, App D ("Under the ADA, no private entity is required to purchase an accessible automobile"); *Preamble -- Transportation for Individuals with Disabilities*, Final Rule, 49 C.F.R. Parts 27, 37 and 38, P. 45590 (Fed. Reg. Sept. 6, 1991) (same). The provision of transportation by such entities via automobiles that are not wheelchair accessible is *not* discrimination under the statute. *See* 42 U.S.C. § 12184(b)(3).

The same is true even if the Court were to find that Lyft is a public accommodation under Title III. Again, accepting as true Plaintiff's factual allegation that Lyft is in the transportation business, the company would not be required under the ADA to purchase or lease WAVs. *See* 42 U.S.C. § 12182(b)(2)(C)(i); *see also Noel v. New York City Taxi and Limousine Comm'n*, 687 F.3d 63, 73 (2d Cir. 2012) (holding that "Title III expressly exempts taxi providers from purchasing or leasing 'accessible automobiles.'"); *id.* at 73, 74 (noting the exemption of "the taxi industry from the ADA" and stating that the "exemption compels the conclusion that the ADA, as a whole, does not require the . . . taxi industry to provide accessible taxis"); *Toomer v. City Cab*, 443 F.3d 1191, 1195 (10th Cir. 2006) ("a taxi fleet consisting entirely of non-accessible vehicles would be in accord with the ADA").

Accordingly, Plaintiff cannot state a claim for relief under the ADA. The same is true of her claim under the NYSHRL, *see* N.Y. Exec. Law § 296(2)(c)(iii) (exempting refusal to retrofit vehicles by installation of hydraulic or other lifts from definition of discrimination), and her claim under the NYCHRL, *see Stephens v. Shuttle Assocs., L.L.C.*, 547 F. Supp. 2d 269, 281 (S.D.N.Y. 2008) ("The same standards used to evaluate claims under the ADA also apply to cases involving the NYHRL and NYCHRL") (internal quotation omitted).

*Second*, Plaintiff has not signed up for a Lyft account, and has never herself attempted to obtain a ride using Lyft's services. (Compl. ¶ 101). She therefore lacks standing to raise her claims. Nor could she show that she has standing on the ground that she is not required to engage in a "futile gesture," *see* 42 U.S.C. § 12188(a)(1), because Plaintiff could have signed up for an account with the touch of a button, in the privacy of her home, with no risk of the kind of humiliation or embarrassment that underlies this doctrine in the ADA context. Plaintiff alleges that a friend in Westchester attempted on one occasion to obtain a ride, but was told that no WAVs were available. (Compl. ¶ 93). That single concrete allegation is insufficient to establish futility in any context. At the very least, the complaint lacks any allegation regarding notice to Plaintiff of Lyft's alleged failure to provide WAVs in NYC; the complaint relies on a conversation with one friend who allegedly could not obtain a WAV in *Westchester*, a market/location distinct from NYC. Accordingly, for this additional reason Plaintiff lacks standing to represent the purported NYC class.

*Third*, as noted, Plaintiff is not a Lyft customer, as she has not even signed up for a Lyft account. She alleges instead that she "would like to" get a ride using Lyft. (Compl. ¶ 14). But when people become Lyft customers and avail themselves of the benefits of its platform, they also bind themselves to Lyft's TOS, which include arbitration and class action waiver provisions.

It is solely by virtue of signing up for an account and accepting the TOS that Plaintiff can get the benefit she seeks: a ride through Lyft. The *quid pro quo* for getting that ride is an agreement not to sue in court or be part of a class action, terms of service that the Supreme Court has upheld as valid. *See American Express Co. v. Italian Colors Rest.*, 133 S.Ct. 2304, 2311-12 (2013).

"When a non-signatory plaintiff seeks the benefits of a contract that contains an arbitration provision, it is estopped from 'denying its obligation to arbitrate.'" *Robinson Brog Leinwand Greene Genovese and Gluck P.C. v. John M. O'Quinn & Associates, LLP*, 523 Fed. App'x 761, 763 (2d Cir. 2013) (internal citation omitted). A non-signatory "may not seek to benefit" from one portion of an agreement "without also subjecting itself to the arbitration clause contained in that same agreement." *Id.* Relatedly, while the alleged futility of Plaintiff signing up for a Lyft account may put her in the position--for standing purposes--of someone who *did* sign up, Plaintiff also bears the obligations attendant to being in that position. She is estopped under the principles of direct benefits estoppel from seeking the benefits of the TOS while denying its obligations, and the Court should dismiss the complaint on that basis. *See, e.g., id.* (affirming grant of defendant's motion to dismiss under direct benefits estoppel theory, applying arbitration clause to non-signatory).

*Fourth*, the three purported classes in the complaint are all defined on the basis of futility, which is to say that the classes consist entirely of people who "want" to sign up and "would" sign up but who have *not* signed up for Lyft's services, because they have allegedly been deterred from doing so. Under this formulation, which would allow Plaintiff to exclude actual Lyft customers from the classes (and thereby avoid the TOS's arbitration and class action waiver provisions), membership is entirely dependent on a purely subjective criterion: that someone "wants" to use Lyft but was allegedly deterred from doing so (*see* Compl. ¶¶ 109-11). The non-ascertainable nature of these futility-based classes dooms them at the threshold.

Under Fed. R. Civ. P. 23, class certification requires satisfaction of the implied requirement of ascertainability. *See, e.g., Brecher v. Republic of Argentina*, 806 F.3d 22, 24-25 (2d Cir. 2015). A class is ascertainable "when defined by objective criteria" so that it is "administratively feasible" to identify its members and "not require a mini-hearing on the merits of each case." *M.G. New York City Dep't of Educ.*, 162 F. Supp. 3d 216, 233 (S.D.N.Y. 2016) (quotation omitted). This requirement applies to all types of class actions under Rule 23, including injunctive class actions under Rule 23(b)(2), although the latter standard is less precise. *See id.* ("[T]he Second Circuit recognizes an implied requirement of ascertainability.... even under Rule 23(b)(2).") (internal quotations and citations omitted). Moreover, courts may dismiss class claims at the pleading stage where it is facially apparent from the pleadings that there is no ascertainable class. *See John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). Here, Plaintiff's patently subjective criterion for defining each of the proposed classes is fatal.

For the foregoing reasons, Lyft respectfully requests that the Court schedule a pre-motion conference to discuss Lyft's contemplated motion. We thank the Court for its consideration.

Respectfully,

*/s/ Sara L. Shudofsky*
Sara L. Shudofsky

cc: Jeremiah Frei-Pearson, Esq. (via ECF and email)