UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HARRIET LOWELL and WESTCHESTER DISABLED ON THE MOVE, INC., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

LYFT, INC.,

Defendant.

7:17-CV-06251 (NSR)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Sara L. Shudofsky
Harry K. Fidler
ARNOLD & PORTER
250 West 55th Street
New York, NY 10019-9710
T: (212) 836-7922
F: (212) 836-8689
sara.shudofsky@apks.com
harry.fidler@apks.com

*Attorneys for Defendant Lyft, Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .......... 1
BACKGROUND .......... 2
I. THE LYFT PLATFORM AND LYFT'S TERMS OF SERVICE .......... 2
II. PLAINTIFFS' ALLEGATIONS .......... 4
A. The Nature of Lyft's Business .......... 4
B. Plaintiff Harriet Lowell .......... 5
C. Plaintiff WDOMI .......... 6
D. The Three Purported Classes .......... 7
III. LYFT'S ANTI-DISCRIMINATION POLICIES .......... 7
ARGUMENT .......... 8
I. THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION .......... 8
A. The Arbitration and Class Action Waiver Provisions in the TOS Apply to the Claims Brought by Plaintiffs and the Purported Absent Class Members .......... 8
B. Plaintiffs Lack Standing to Bring a Claim .......... 11
*1. Lowell* .......... 12
*2. WDOMI* .......... 13
II. IN THE ALTERNATIVE, THE COURT SHOULD DISMISS ALL CLAIMS FOR FAILURE TO STATE A CLAIM, AND THE CLASS CLAIMS SHOULD BE DISMISSED BECAUSE THE CLASSES ARE NOT ASCERTAINABLE .......... 19
A. Plaintiffs Fail To State a Claim Under the ADA, NYSHRL, or NYCHRL .......... 19
*1. Plaintiffs Fail to State A Claim Under the ADA* .......... 20
*2. Plaintiffs Fail to State a Claim Under the NYSHRL & the NYCHRL* .......... 23
B. Plaintiffs' Class Claims Should Be Dismissed Because the Purported Classes Are Not Ascertainable .......... 24
CONCLUSION .......... 25

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Access 4 All, Inc. v. G&T Consulting Co., LLC*,
No. 06-CIV-13736, 2008 WL 851918 (S.D.N.Y. Mar. 28, 2008) ....................18

*Access 4 All, Inc. v. Trump International Hotel & Tower Condominium*,
458 F. Supp. 2d 160 (S.D.N.Y. 2006) ....................18

*Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*,
170 F.3d 349 (2d Cir. 1999) ....................9

*American Express Co. v. Italian Colors Rest.*,
133 S.Ct. 2304 (2013) ....................9

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
671 F.3d 140 (2d Cir. 2011) ....................14

*Arizonans for Official English v. Arizona*,
520 U.S. 43 (1997)....................13

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ....................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................19

*Bennett v. Spear*,
520 U.S. 154 (1997) ....................18, 19

*Brecher v. Republic of Argentina*,
806 F.3d 22 (2d Cir. 2015) ....................24

*Clapper v. Amnesty Int'l USA*,
133 S.Ct. 1138 (2013) ....................17

*Disabled in Action of Metropolitan New York v. Trump International Hotel & Tower*,
No. 01-CIV-5518, 2003 WL 1751785 (S.D.N.Y. Apr. 2, 2003) ....................18

*Doe v. Village of Mamaroneck*,
462 F. Supp. 2d 520 (S.D.N.Y. 2006) ....................16, 17

*Goldberg v. Danaher*,
599 F.3d 181 (2d Cir. 2010) ....................19

*Goldemberg v. Johnson & Johnson Consumer Cos. Inc.*,
317 F.R.D. 374 (S.D.N.Y. 2016) ....................24

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) ....................15

*Hunt v. Washington State Apple Advertising Comm'n*,
432 U.S. 333 (1977) ....................13

*In re Refco Inc. Securities Litig.*,
No. 07 MDL 1902, 2009 WL 5548666 (S.D.N.Y. Nov. 16, 2009) ....................11

*Int'l Chartering Services, Inc. v. Eagle Bulk Shipping Inc.*,
138 F. Supp. 3d 629 (S.D.N.Y. 2015) ....................11

*John v. Nat'l Sec. Fire & Cas. Co.*,
501 F.3d 443 (5th Cir. 2007) ....................25

*Klay v. All Defendants*,
389 F.3d 1191 (11th Cir. 2004) ....................15

*Knife Rights, Inc. v. Vance*,
802 F.3d 377 (2d Cir. 2015) ....................17, 18

*Kreisler v. Second Ave. Diner Corp.*,
731 F.3d 184 (2d Cir. 2013) ....................11, 17

*Loeffler v. Staten Island Univ. Hosp.*,
582 F.3d 268 (2d Cir. 2009) ....................23

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000) ....................8

*M.G. v. New York City Dep't of Educ.*,
162 F. Supp. 3d 216 (S.D.N.Y. 2016) ....................24

*National Congress for Puerto Rican Rights v. City of New York*,
75 F. Supp. 2d 154 (S.D.N.Y. 1999) ....................15, 16

*Nnebe v. Daus*,
644 F.3d 147 (2d Cir. 2011) ....................15

*Noel v. New York City Taxi and Limousine Comm'n*,
687 F.3d 63 (2d Cir. 2012) ....................22

*Ortiz v. Westchester Medical Center Health Care Corp.*,
No. 15-CIV-5432, 2016 WL 6901314 (S.D.N.Y. Nov. 18, 2016) ....................................23

*Penn. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*,
713 F. Supp. 2d 734 (N.D. Ill. 2010) ....................................13, 15

*Percy v. New York (Hudson Valley DDSO)*,
264 F. Supp. 3d 574 (S.D.N.Y. 2017) ....................................8

*Ramos v. Uber Techs., Inc.*, No. SA-14-CA-502-XR, 2015 WL 758087
(W.D. Tex. Feb. 20, 2015) ....................................12

*Robinson Brog Leinwand Greene Genovese and Gluck P.C. v. John M. O'Quinn & Associates LLP*, 523 Fed. App'x 761 (2d Cir. 2013) ....................................9, 10, 11

*Simon v. Eastern Ky. Welfare Rights Org.*,
426 U.S. 26 (1976) ....................................15

*Small v. General Nutrition Cos., Inc.*,
388 F. Supp. 2d 83 (E.D.N.Y. 2005) ....................................*Passim*

*Toomer v. City Cab*,
443 F.3d 1191 (10th Cir. 2006) ....................................22

*United States ex. rel Ladas v. Exelis, Inc.*,
824 F.3d 16 (2d Cir. 2016) ....................................25

*Warth v. Seldin*,
422 U.S. 490 (1975) ....................................18

**STATUTES & REGULATIONS**

42 U.S.C. § 12181 ....................................21

42 U.S.C. § 12182 ....................................21

42 U.S.C. § 12184 ....................................21

42 U.S.C. § 12188 ....................................11, 12, 19

49 C.F.R. § 37.29 ....................................21, 22

49 C.F.R. § 37.103 ....................................21

49 C.F.R. Pt. 37, App. D ....................................21

Local Civil Rights Restoration Act of 2005,
N.Y.C. Local Law No. 85 (2005) ....................................23

N.Y. EXEC. LAW § 296 .....23

Preamble -- Transportation for Individuals with Disabilities, Final Rule, 49 C.F.R. Parts 27, 37 and 38, P. 45590 (Fed. Reg. Sept. 6, 1991) .....21

**OTHER AUTHORITIES**

LYFT, Service Animal Policy, https://help.lyft.com/hc/en-us/articles/115013080048 (last visited Jan. 24, 2018) .....7

Lyft Terms of Service ..... *Passim*

LYFT, Wheelchair Policy, https://help.lyft.com/hc/en-us/articles/115012926827 (last visited Jan. 24, 2018) .....7

Speech of Hon. Steny Hoyer, 136 Cong. Rec. E1913-01, 1990 WL 80290 (May 22, 1990) .....12

## PRELIMINARY STATEMENT

Plaintiffs in this action, Harriet Lowell ("Lowell") and Westchester Disabled on the Move, Inc. ("WDOMI"), allege that Defendant Lyft, Inc. ("Lyft") fails to provide wheelchair accessible vehicles to riders who use its online platform. But neither Plaintiffs nor the purported class members they seek to represent have signed up for an account to use the Lyft platform. Had they signed up for a Lyft account, they would have been subject to Lyft's Terms of Service ("TOS"), which include an arbitration agreement and a class action waiver, the combination of which would preclude action in this Court entirely and preclude a class-wide action in any forum. Plaintiffs are thus seeking the benefits of the services offered by Lyft on terms that are flatly inconsistent with those provided to *every* one of Lyft's users.

The Court should dismiss the Amended Complaint because Plaintiffs and the purported class members they seek to represent should be subject to the same arbitration and class action waiver provisions in the TOS that apply to all Lyft users. Plaintiffs cannot, under the principles of direct benefits estoppel, seek the benefits of the services offered by Lyft – ride requests matched with drivers through Lyft's online platform – while denying the obligations in the TOS.

Further, the Amended Complaint should be dismissed for the separate reason that Lowell and WDOMI do not have standing to pursue their claims. Lowell, who has never signed up for a Lyft account, has failed to identify an injury that is concrete and particularized, and actual or imminent. And WDOMI lacks both associational standing (because, among other reasons, it is bound by the same arbitration provision in the TOS that its members are bound by) and organizational standing (because it has not alleged any concrete past or future injury to *itself*, and it also cannot overcome the prudential barriers to standing). The Court therefore lacks subject matter jurisdiction over Plaintiffs' claims.

Even if, however, the Court determines that it has subject matter jurisdiction, the Amended Complaint should still be dismissed. Lyft is a technology company that does not own or lease any of the vehicles utilized by users of its online platform; it is not in the transportation business. But taking all of the factual allegations in the Amended Complaint as true solely for purposes of Lyft's motion to dismiss, Plaintiffs cannot state a claim for relief under the Americans with Disabilities Act ("ADA") because the *only* relief they seek – that Lyft be required to provide vehicles that can accommodate persons with non-foldable wheelchairs or motorized scooters ("wheelchair accessible vehicles" or "WAVs") – is simply not available as a matter of law. That is so because Plaintiffs allege (albeit incorrectly) that Lyft is a private entity primarily engaged in the business of transportation, and such entities are not required under the ADA to purchase or lease WAVs. Plaintiffs' claims under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") likewise fail to state a claim.

Moreover, all of the class claims should be dismissed because it is apparent on the face of the Amended Complaint that the purported classes are not ascertainable, given that membership in the classes is entirely dependent on a purely subjective criterion.

For these reasons, as detailed below, the Court should dismiss the Amended Complaint.

## BACKGROUND

### I. THE LYFT PLATFORM AND LYFT'S TERMS OF SERVICE

Lyft, as alleged by Plaintiffs, is a "ride-hailing application to connect riders and drivers to provide public conveyance and transportation services across urban and suburban areas across the United States." Amended Complaint ("Am. Compl."), attached to the Declaration of Sara L. Shudofsky dated January 24, 2018 ("Shudofsky Dec.") as Ex. A, ¶ 32. Lyft "makes its services available only to members of the public who have a credit card and a smartphone capable of

running one of Lyft's applications, who create a Lyft account, and who request a ride through Lyft's smartphone application." *Id.* ¶ 69. Plaintiffs do not allege that Lyft owns or leases any type of vehicle. Nor could they do so, because all of the vehicles available to users of Lyft's online platform are owned or leased by the independent contractor drivers themselves.

Drivers and passengers ("Users") alike must create an account with Lyft and agree to Lyft's TOS in order to use its online ride-sharing platform (the "Lyft Platform"). Specifically, the Lyft TOS provides that "each User shall create a User account that enables access to the Lyft Platform." *See* Lyft TOS, attached to the Shudofsky Dec. as Ex. B, at Section 1. The TOS also expressly states as follows:

> IF YOU DO NOT AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS AGREEMENT, YOU MAY NOT USE OR ACCESS THE LYFT PLATFORM.

*See* Lyft TOS at Introduction.

As part of the TOS, both Lyft and all users of the Lyft Platform mutually agree to resolve any dispute (with limited exceptions not applicable here) by non-class arbitration:

> **(a) Agreement to Binding Arbitration Between You and Lyft.**
>
> YOU AND LYFT MUTUALLY AGREE TO WAIVE OUR RESPECTIVE RIGHTS TO RESOLUTION OF DISPUTES IN A COURT OF LAW BY A JUDGE OR JURY AND AGREE TO RESOLVE ANY DISPUTE BY ARBITRATION. . . . ANY ARBITRATION UNDER THIS AGREEMENT WILL TAKE PLACE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED.
>
> . . .
>
> Except as expressly provided below, ALL DISPUTES AND CLAIMS BETWEEN US . . . SHALL BE EXCLUSIVELY RESOLVED BY BINDING ARBITRATION SOLELY BETWEEN YOU AND LYFT. These claims include, but are not limited to . . . discrimination [claims] . . . and claims arising under the . . . Americans With Disabilities Act.

*See* Lyft TOS at Section 17(a)-(b). Notwithstanding these provisions, Plaintiffs filed a purported class action suit against Lyft in this Court.

## II. PLAINTIFFS' ALLEGATIONS

The gravamen of Plaintiffs' Amended Complaint is that "the overwhelming majority of the vehicles in [Lyft's] fleet are not wheelchair accessible." Am. Compl. ¶ 86. They seek to represent three classes of individuals, each of which is defined to consist of those "who require wheelchair accessible vehicles for vehicular transportation," *id*. ¶¶116-118, and who "want" to sign-up for a Lyft account but have allegedly been deterred from doing so because the company does not service those who require WAVs. *Id.* The backdrop of Plaintiffs' suit is that government-provided transportation systems pose "significant barriers to access" for those who use non-foldable wheelchairs or motorized scooters, and that companies like Lyft "can fill the significant transportation gaps" resulting from these barriers. *Id.* ¶¶ 41-44. For example, Plaintiffs allege deficiencies in the New York City subway system, bus system, and paratransit system. *Id*. ¶¶ 41-43. Accordingly, Plaintiffs are asking the Court to order Lyft to provide WAVs in New York City, New York State, and nationwide, alleging that Lyft has violated Title III of the ADA, the NYSHRL, and the NYCHRL by allegedly failing to provide them.

### A. The Nature of Lyft's Business

In language that permeates the Amended Complaint, Plaintiffs allege that Lyft is engaged in the business of providing transportation to the public across the nation via a service that enables users of the Lyft Platform to connect to drivers who will take them to their designated destinations.[1] Specifically, Plaintiffs allege that:

[1] In fact, Lyft is manifestly not in the transportation business; it is a technology company that provides an online ride-sharing platform that matches ride requests with independent contractor drivers. For purposes of this motion, however Lyft must accept all of the factual allegations in the Amended Complaint as true, as discussed *infra* Point II.A.

- Lyft is a "transportation company" that provides a "massive transportation service" for "millions of individuals" (Am. Compl. ¶¶ 24, 81, 37);

- Lyft is one of the "emerging leaders" in the "transportation industry" that "are quickly supplanting traditional taxi companies" (*id.* ¶¶ 4, 38);

- Lyft is an "on-demand transportation" service by which customers "can remotely hail a nearby Lyft vehicle [and] select a destination to which he or she wishes to be driven" (*id.* ¶¶ 33, 44);

- "Across the United States, in approximately 300 cities and regions, Lyft provides transportation services" that are "door-to-door" (*id.* ¶¶ 80, 90);

- "Lyft and similar companies are now a significant part of the national transportation system" (*id.* ¶ 5);

- "[T]raditional taxicab ridership has declined," while "ridesharing companies, like Lyft, grow" (*id.* ¶¶ 40-41); and

- Lyft is an "entity primarily engaged in the business of transporting people." (*id.* ¶ 128).

**B. Plaintiff Harriet Lowell**

Lowell is a resident of White Plains, New York, who has a mobility disability which typically requires her to use a motorized scooter to travel. *Id.* ¶¶ 12-13. Although she alleges that she "would like" to use Lyft's services, Lowell concedes that she "has not signed up for an account with Lyft" and has therefore never used or attempted to use the Lyft Platform. *Id.* ¶¶ 14, 108. She alleges, however, that a "friend in White Plains" recounted this experience to her: he "tried to order an accessible Lyft" and "was told that none were available and received a text message from Lyft advising him to obtain alternative methods of transit." *Id.* ¶ 100. Based on this one incident in White Plains, Plaintiffs allege that Lowell was deterred from seeking access to "Lyft's transportation services" not just in Westchester, but in New York City as well, *id.* ¶¶ 101, 104, despite Lowell's residency in White Plains and her infrequent visits to the City. *Id.* ¶¶

12, 102. Lowell does not allege that she has traveled and would seek to travel and use Lyft's services outside of Westchester or New York City.

### C. Plaintiff WDOMI

Plaintiff WDOMI is a non-profit, independent living center located in Yonkers, New York, the membership of which consists of persons with disabilities. *Id*. ¶¶ 18-19. WDOMI's mission is to "empower people with disabilities to control their own lives, advocate for civil rights and a society free of barriers to people with disabilities, encourage people with disabilities to become politically and socially active, educate government entities, businesses, other organizations, and society as a whole to understand, accept and accommodate people with disabilities, and generally create an[ ] environment for people with disabilities that inspires self-respect." *Id*. ¶ 20. There is no allegation in the Amended Complaint that any of WDOMI's members have been deterred from using the Lyft Platform. Plaintiffs' allegations regarding WDOMI's members are limited to the conclusion that "one or more members of WDOMI have been or will be injured as a direct result of Defendant's discriminatory policies and practices and would have standing to sue in their own right." *Id*. ¶ 23

WDOMI also alleges that the organization itself has been injured directly by Lyft because "it must expend resources advocating for its constituents who are harmed by Lyft's discriminatory policies and practices [and] has suffered injury in the form of diversion of these resources and frustration of its mission." *Id*. ¶ 22. Plaintiffs provide no factual allegations as to where these resources were allegedly diverted from or how its mission, which encapsulates advocating for its members, *id*. ¶ 20, is frustrated by having to advocate for its members here.

### D. The Three Purported Classes

Plaintiffs seek to represent purported classes of similarly situated persons nationwide, New York State-wide, and New York City-wide, all of whom, like Lowell, have never used or attempted to use the Lyft Platform, but claim a subjective desire to do so in the future:

> The class Plaintiffs seek to represent consists of all people with mobility disabilities who are residents in or visitors to any and all cities and regions serviced by Lyft who require wheelchair accessible vehicles for vehicular transportation, and *who want to, but have been deterred from, signing up for Lyft's transportation network* because it does not provide equal service to people who require wheelchair accessible vehicles.

*Id*. ¶ 116 (emphasis added); *see also id*. ¶ 117 (similarly defining the New York State subclass); *id*. ¶ 118 (similarly defining the New York City subclass). As a result, Lowell's unnamed friend, and the sole individual mentioned in the Amended Complaint who actually accessed the Lyft Platform, *see id*. ¶ 100, would *not* be a member of any of the purported classes.

## III. LYFT'S ANTI-DISCRIMINATION POLICIES

As Plaintiffs note, "Lyft prohibits its drivers from discriminating against people based on race, religion, national origin, disability, sexual orientation, sex, marital status, gender identity, age, or any other characteristic protected under applicable federal or state law." *Id*. ¶ 57. People who need WAVs can "toggle on the 'Access Mode' function in the Lyft smartphone application to attempt to be matched with a wheelchair-accessible vehicle." *Id*. ¶ 47. Further, Lyft requires the independent contractor drivers using the Lyft Platform to accommodate riders with service animals and those who use collapsible and foldable wheelchairs (and thus do not need WAVs), providing that violation of this policy can result in deactivation from the Lyft Platform. *See* LYFT, Service Animal Policy, https://help.lyft.com/hc/en-us/articles/115013080048 (last visited Jan. 24, 2018); LYFT, Wheelchair Policy, https://help.lyft.com/hc/en-us/articles/115012926827 (last visited Jan. 24, 2018).

## ARGUMENT

### I. THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

"[A] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Percy v. New York (Hudson Valley DDSO)*, 264 F. Supp. 3d 574, 580 (S.D.N.Y. 2017) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). Plaintiffs have the burden to prove by a preponderance of the evidence that the court has subject matter jurisdiction. *Id*. (internal quotation omitted). While the court must accept as true all well-pled allegations in the complaint, in reviewing a motion under Rule 12(b)(1) the court does not draw inferences from the complaint in the plaintiff's favor. *Id*.

#### A. The Arbitration and Class Action Waiver Provisions in the TOS Apply to the Claims Brought by Plaintiffs and the Purported Absent Class Members

This Court lacks jurisdiction over the claims made by Plaintiffs and the purported absent class members they seek to represent because, as discussed below, all such claims are subject to the arbitration and class action waiver provisions in the Lyft TOS.[2]

When people become Lyft Users and avail themselves of the benefits of the Lyft Platform, they also bind themselves to Lyft's TOS, which include arbitration and class action waiver provisions. *See* Lyft TOS at Introduction, Sections 1 & 17(a)-(b). Specifically, Section 17 of the TOS, titled "DISPUTE RESOLUTION AND ABRITRATION AGREEMENT," sets out the agreement between Lyft and Lyft Users as follows:

> YOU AND LYFT MUTUALLY AGREE TO WAIVE OUR RESPECTIVE RIGHTS TO RESOLUTION OF DISPUTES IN A

[2] The Court may consider the TOS even though it is not referenced in the Amended Complaint, as a court is not limited to the allegations in the complaint in ruling on a Rule 12(b)(1) motion, but may also consider "affidavits and other materials beyond the pleadings to resolve the jurisdictional issue." *Percy*, 264 F. Supp. at 580.

> COURT OF LAW BY A JUDGE OR JURY AND AGREE TO RESOLVE ANY DISPUTE BY ARBITRATION. . . . ANY ARBITRATION UNDER THIS AGREEMENT WILL TAKE PLACE ON AN INDIVIDUAL BASIS; CLASS ARBITRATION AND CLASS ACTIONS ARE NOT PERMITTED.

Lyft TOS at Section 17(a). It is solely by virtue of signing up for an account and accepting the TOS that Plaintiffs and anyone else can get the benefit Plaintiffs seek: a ride from a driver matched through the Lyft Platform. *See id.* at Introduction (specifying that someone who does "NOT AGREE TO BE BOUND" by the TOS "MAY NOT USE OR ACCESS THE LYFT PLATFORM"). The *quid pro quo* for getting that ride is an agreement not to sue in court or be part of a class action, provisions that the Supreme Court has upheld as valid. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351-52 (2011) (upholding validity of arbitration agreement and class action waiver provision); *see also American Express Co. v. Italian Colors Rest.*, 133 S.Ct. 2304, 2309, 2312 (2013) (internal quotation omitted) (reaffirming its holding in *Concepcion* and acknowledging that "courts must rigorously enforce arbitration agreements"). Moreover, the TOS explicitly states that the claims subject to arbitration include claims alleging discrimination and claims under the ADA. Lyft TOS at Section 17(a).

Though Plaintiffs and the purported absent class members have not signed up for a Lyft account, they are nonetheless bound by the arbitration agreement in the TOS through the direct benefits estoppel doctrine. Under the direct benefits estoppel doctrine, "[w]hen a non-signatory plaintiff seeks the benefits of a contract that contains an arbitration provision, it is estopped from 'denying its obligation to arbitrate.'" *Robinson Brog Leinwand Greene Genovese and Gluck P.C. v. John M. O'Quinn & Associates LLP*, 523 Fed. App'x 761, 763 (2d Cir. 2013) (citing *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999)). A non-signatory "may not seek to benefit" from one portion of an agreement "without also subjecting itself to the arbitration clause contained in that same agreement." *Id.*

In *Robinson Brog*, the law firm Robinson Brog sought to recover attorneys' fees from another law firm stemming from a joint representation by the firms. *Id*. at 763. Robinson Brog and the other firm had entered into a joint representation agreement that did not contain an arbitration provision. A separate agreement, however, already existed between the jointly-represented client and the other firm establishing the attorney client relationship and the fee arrangement for the representation, and that existing agreement did contain an arbitration clause. *Id*. After a dispute arose, Robinson Brog sought to recover from the other law firm the fees for its services. The other firm opposed the recovery, arguing that Robinson Brog was subject to the arbitration provision in the client agreement even though it had never signed that contract. *Id*. at 762-63. The Second Circuit held that the arbitration provision applied to Robinson Brog as a non-signatory because the agreement containing the arbitration provision formed the "foundation" of any claim for fees made by the firm. *Id*. at 763. Robinson Brog was accordingly bound by the arbitration provision in the agreement because it sought the benefits of that agreement.

So too here, where the Lyft TOS forms the foundation of any claim by Plaintiffs. Access to the Lyft Platform – and access thereby to a ride using Lyft's services – is predicated on acceptance of the TOS. *See* Lyft TOS at Introduction & Section 1. As in *Robinson Brog,* Plaintiffs and the purported class members may not seek to avail themselves of the benefits of the TOS – a ride request matched with a driver through the Lyft Platform – without also being subject to the obligations of the TOS. Put another way, Plaintiffs and the purported absent class members are not entitled to access Lyft's services under terms different than those binding every single one of Lyft's millions of Users.

Since Plaintiffs and the purported absent class members are subject to the arbitration and class action provisions found in the TOS, those provisions require the arbitration of all discrimination and ADA claims, and the dismissal of the class claims. As a result, this court simply does not have subject matter jurisdiction over these claims. *See Robinson Brog*, 523 Fed. App'x at 763-64 (affirming grant of defendant's motion to dismiss under direct benefits estoppel theory, applying arbitration clause to non-signatory); *see also Int'l Chartering Services, Inc. v. Eagle Bulk Shipping Inc.,* 138 F. Supp. 3d 629, 636-37 (S.D.N.Y. 2015) (applying direct benefits estoppel, finding that the "relief Plaintiffs seek . . . is a benefit that depends on the [contracts] for its existence"); *In re Refco Inc. Securities Litig.*, No. 07 MDL 1902, 2009 WL 5548666, at *9 (S.D.N.Y. Nov. 16, 2009) ("It is well-settled that a party seeking to obtain the benefits of a contract must also accept its burdens, including contractual forum selection").

### B. Plaintiffs Lack Standing to Bring a Claim

Plaintiffs' claims should also be dismissed for lack of subject matter jurisdiction because all Plaintiffs, including the entity Plaintiff WDOMI, lack standing to bring their claims.

To satisfy Article III standing requirements, Plaintiffs must establish "(1) an injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct and (3) that the injury is likely to be redressed by a favorable decision. Plaintiffs seeking injunctive relief must also prove that the identified injury in fact presents a real and immediate threat of repeated injury." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013) (internal quotation omitted). Under the ADA, "a person with a disability [is not required] to engage in a futile gesture if such person has actual notice that a person or organization covered by [the ADA] does not intend to comply with its provisions." 42 U.S.C. § 12188(a)(1).

***1. Lowell***

Plaintiff Lowell lacks standing to bring her claims as she has failed to identify an injury in fact that is concrete and particularized and actual or imminent. She has not signed up for a Lyft account, and has never attempted to obtain a ride through the Lyft Platform. Am. Compl. ¶¶ 14, 108. Without a Lyft account, Lowell does not face any alleged actual or imminent harm from Lyft, as she is not in a position to request its services.

Further, Lowell cannot show that she has standing on the ground that she is not required to engage in a "futile gesture" under the ADA. *See* 42 U.S.C. § 12188(a)(1). As explained above, to invoke the futile gesture provision of the ADA, a plaintiff must have *actual notice* of an ADA violation. *Id*. Lowell cannot claim to have such notice based on a *single* conversation she allegedly had with an unnamed friend who on *one* occasion allegedly attempted to connect with a WAV driver in White Plains through the Lyft Platform, but "was told that none were available and received a text message from Lyft advising him to obtain alternative methods of transit." Am. Compl. ¶ 100. Lowell's reliance on this single alleged incident in White Plains to establish actual notice of an ADA violation is particularly suspect given Plaintiffs' allegation that Lowell had notice that at least some WAVs are available through the Lyft Platform. *See id*. ¶ 99. Moreover, Lowell could have signed up for a Lyft account with the touch of a button, in the privacy of her home, with no risk of the kind of humiliation or embarrassment that underlies this provision in the ADA context.[3]

[3] The ADA's legislative history illustrates that the purpose of the futile gesture provision was to avoid subjecting individuals to humiliation in order to bring a claim under the statute. *See* Speech of Hon. Steny Hoyer, 136 Cong. Rec. E1913-01, 1990 WL 80290 (May 22, 1990) ("For example, if a theatre has turned away six people with cerebral palsy and has indicated that it has a policy of turning away such individuals, a person with cerebral palsy can bring suit without first subjecting himself or herself to the humiliation of being turned away by the theatre."). *See also Ramos v. Uber Techs., Inc.*, No. SA-14-CA-502-XR, 2015 WL 758087, at *7 (W.D. Tex. Feb. 20, 2015) (referencing cases where plaintiffs need not have "subject[ed]'" themselves to the

Finally, while the single allegation of Lowell's unnamed friend is insufficient to establish futility in any context, at the very least, the geographic limit of the allegation to White Plains is insufficient to establish Lowell's actual notice of Lyft's alleged failure to provide WAVs in New York City or nationwide. White Plains is a distinct market/location from the City and there are no factual allegations in the Amended Complaint regarding Lowell's knowledge of WAV drivers utilizing the Lyft Platform in the City or anywhere else in the country. For this additional reason, Lowell lacks standing to represent the purported New York City-wide and nationwide classes.

***2. WDOMI***

An entity like WDOMI can establish standing either (1) as the representative of its members ("associational standing"), or (2) in its own right ("organizational standing"). *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 342-44 (1977). For the reasons explained below, WDOMI cannot satisfy the requirements for either associational or organizational standing and its claims against Lyft should likewise be dismissed.

***a. WDOMI Lacks Associational Standing***

To satisfy the requirements of associational standing, WDOMI must establish that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id*. at 343. Further, the association is "bound by the same limitations that bind their members" in bringing the suit. *Penn. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 713 F. Supp. 2d 734, 743-44 (N.D. Ill. 2010) (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 65-66 (1997)); *see*

---

"humiliation of explicit and certain rejection" or "swimming in a polluted river") (citations omitted).

*also Small v. General Nutrition Cos., Inc.*, 388 F. Supp. 2d 83, 98 (E.D.N.Y. 2005) ("[B]ecause associational standing exists only insofar as organization members have standing, associational standing may not be broader or more extensive than the standing of the organization's members"). Here, Plaintiffs have failed to establish that WDOMI's members would have standing to sue in their own right, as required under prong (a), and establishing such standing would require the individual participation of its members, in violation of prong (c). WDOMI further lacks associational standing as it is bound by the same arbitration provision found in the TOS as its members.

First, Plaintiffs have failed to plead any facts establishing the standing of any member of WDOMI to bring suit against Lyft. There is no allegation in the Amended Complaint that any of WDOMI's members have been deterred from using the Lyft Platform, or any factual basis to support any such deterrence. Plaintiffs' allegations regarding WDOMI's members are limited to the conclusory assertion that "one or more members of WDOMI have been or will be injured as a direct result of Defendant's discriminatory policies and practices and would have standing to sue in their own right." *Id*. ¶ 23. This type of barebones formulaic recitation of the requirements for standing is insufficient. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (internal citations omitted) (stating that to survive a Rule 12(b)(1) motion to dismiss, plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue").

Second, the individual participation of WDOMI's members would be necessary to establish standing, in violation of prong (c). This is because Plaintiffs' claims are premised on the futile gesture provision of the ADA, discussed *supra*. As futility is subjective (there are no objective indicia of futility), the court would need to ascertain whether any individual member of WDOMI had actual notice of the alleged ADA violation, was thereby deterred from using Lyft

(as opposed to any other ridesharing platform), has the ability to use the Lyft Platform (including that the member has access to a compliant smartphone and credit card), and would use Lyft but for the alleged discrimination. Establishing these criteria would require an inquiry into the subjective mindset of WDOMI's members.

Finally, WDOMI cannot establish associational standing because "associational standing may not be broader or more extensive than the standing of the organization's members." *Small*, 388 F. Supp. 2d at 98. This means that where "an association's members are bound to arbitrate, so too is the association when it sues in an [associational] capacity." *Penn. Chiropractic Ass'n*, 713 F. Supp. 2d at 744 (citing *Klay v. All Defendants*, 389 F.3d 1191, 1202-03 (11th Cir. 2004)). Here, all of WDOMI's members are bound by the arbitration provision in the TOS, either because they have accessed the Lyft Platform and agreed to the TOS or under the direct benefits estoppel doctrine discussed *supra*, Point I.A. As a result, WDOMI lacks associational standing.

***b. WDOMI Lacks Organizational Standing***

Nor does WDOMI have organizational standing to bring suit. Unlike associational standing, organizational standing is premised on a concrete injury to the organization *itself*, not the organization's members. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982). "It is well-established that an organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III." *National Congress for Puerto Rican Rights v. City of New York*, 75 F. Supp. 2d 154, 164 (S.D.N.Y. 1999) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976)). Instead, WDOMI must establish "a perceptible impairment of [the] organization's activities." *Nnebe v. Daus*, 644 F.3d 147, 157 (2d Cir. 2011). Plaintiffs allege such impairment through (1) diversion of resources to advocate for its members who were allegedly harmed by Lyft and (2)

frustration of its mission. Am. Compl. ¶ 22. Neither of these alleged impairments is sufficient to establish organizational standing here.

In order for diversion of resources to be a basis for organizational standing, Plaintiffs must establish that the resources were diverted from some other type of work performed by the organization. *See, e.g.*, *Doe v. Village of Mamaroneck*, 462 F. Supp. 2d 520, 542 (S.D.N.Y. 2006) (finding organization lacked organizational standing because "NDLON offered no evidence of some other type of work that it does from which it was diverted by virtue of having to come to send representatives to Mamaroneck"). In other words, it is not sufficient merely to allege that Plaintiff WDOMI expended resources in advocating against Lyft. WDOMI must establish that such expenditure was diverted from other types of services provided by the organization, such as counseling services. *See*, *e.g.*, *National Congress for Puerto Rican Rights*, 75 F. Supp. 2d at 165 (finding National Congress lacked organizational standing based on lack of any allegations that it had to divert resources from services such as referrals or counseling in order to advocate against defendant's practices).

Here, the Amended Complaint does not contain any factual allegations regarding the purported diversion of WDOMI's resources, including the uses to which the resources were previously being put and how they were allegedly diverted from those purposes. Plaintiffs merely allege that WDOMI has "expend[ed] resources advocating for its constituents who are harmed by Lyft's discriminatory policies and practices" and then state conclusorily that "WDOMI has suffered injury in the form of diversion of these resources. . . ." Am. Compl. ¶ 22. Further, the only type of work provided by the organization that is mentioned in the Amended Complaint is advocacy work to improve access for disabled residents of Westchester County, *id*.

¶ 21, the precise work WDOMI is allegedly engaged in here. *See id*. ¶ 22 (alleging WDOMI has expended resources "advocating" for its constituents who were allegedly harmed by Lyft).

As to frustration of WDOMI's mission, a core component of its mission as alleged in the Amended Complaint is to "*advocate* for civil rights and a society free of barriers to people with disabilities . . . ." *Id*. ¶ 20 (emphasis added). Plaintiffs cannot establish harm to WDOMI's mission by alleging that the organization expended resources doing just that – "advocating for its constituents," *id* ¶ 22. *See*, *e.g.*, *Village of Mamaroneck*, 462 F. Supp. 2d at 542 (holding that NDLON could not demonstrate an injury in fact based on sending its officers to consult about work "that is part and parcel of its fundamental mission in the Village").

Further, as Plaintiffs are seeking injunctive relief, WDOMI must also prove that "the identified injury in fact presents a real and immediate threat of repeated injury." *Kreisler*, 731 F.3d at 187 (internal quotation omitted). Where the harm allegedly suffered by the organization is diversion of resources, Plaintiff must "show that both anticipated expenditures and ensuing harm to the[ ] organizations' activities are 'certainly impending.'" *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 389 (2d Cir. 2015) (quoting *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1147 (2013)). Citing past expenses incurred is insufficient and "at best demonstrate[s] *past* injury." *Id*. at 388. (emphasis in original) Here, Plaintiffs at most allege past non-specified expenses incurred by WDOMI in advocating for its constituents. *See* Am. Compl. ¶ 22 ("WDOMI itself *has* been injured as a direct result of Defendant's actions and omissions . . . .") (emphasis added); *id.* ("WDOMI *has suffered* injury in the form of diversion of [ ] resources and frustration of its mission.") (emphasis added).

In short, Plaintiffs have not pled that future expenditures and ensuing harm to WDOMI are "certainly impending." *See*, *e.g.*, *Knife Rights, Inc.*, 802 F.3d at 389 (affirming dismissal of

claims brought by organizational plaintiffs seeking injunctive and declaratory relief for lack of standing where they "did not even attempt to" show that future expenditures and ensuing harm to the organizations were certainly impending).

***c. WDOMI Cannot Overcome the Prudential Barriers to Standing***

Finally, even assuming, *arguendo*, that WDOMI can satisfy the Article III standing requirements, WDOMI cannot overcome the judicially-imposed prudential barriers to standing. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975).

"Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Id*. at 500. A plaintiff's claims cannot rest "on the legal rights or interests of third parties," *id*. at 499-500, and "must arguably fall within the zone of interests protected or regulated by the statutory provision . . . invoked in the suit." *Bennett v. Spear*, 520 U.S. 154, 162 (1997). Further, courts in the ADA context have declined standing to organizational plaintiffs where they assert claims duplicative of the individual plaintiffs' claims in the suit. *See*, *e.g.*, *Access 4 All, Inc. v. G&T Consulting Co., LLC*, No. 06-CIV-13736, 2008 WL 851918, at *5 (S.D.N.Y. Mar. 28, 2008) (internal citations omitted) (compiling cases).[4]

[4] The only exception to the prudential standing doctrine is where Congress granted "either expressly or by clear implication" a right of action to persons who otherwise would lack prudential standing. *Warth*, 422 U.S. at 501. That is not the case here. Multiple courts within the Second Circuit have applied the prudential standing doctrine to plaintiffs pursuing claims under Title III of the ADA. *See Small*, 388 F. Supp. 2d at 92-94 (finding the prudential standing doctrine to apply to plaintiffs bringing claims under Title III of the ADA); *see also Access 4 All, Inc. v. G&T Consulting Co., LLC*, No. 06-CIV-13736, 2008 WL 851918, at *5 (S.D.N.Y. Mar. 28, 2008) (applying prudential standing doctrine to organizational plaintiff bringing a claim under Title III); *Access 4 All, Inc. v. Trump International Hotel & Tower Condominium*, 458 F. Supp. 2d 160, 172-73 (S.D.N.Y. 2006) (same); *Disabled in Action of Metropolitan New York v. Trump International Hotel & Tower*, No. 01-CIV-5518, 2003 WL 1751785, at *9-10 (S.D.N.Y. Apr. 2, 2003) (same).

Here, not only are WDOMI's claims entirely duplicative of the claims asserted by Lowell, *compare* Initial Complaint (ECF No. 1) *with* Am. Compl., but WDOMI's claims rest on the legal rights and interests of third parties. WDOMI does not allege that it has suffered "direct discrimination but [ ] only [that it] incurred any potential injuries as a result of discrimination against others." *See Small*, 388 F. Supp. 2d at 93; Am. Compl. ¶¶ 136-38 (alleging discrimination against WDOMI's members, not WDOMI). As Title III's enforcement provision only permits claims of direct discrimination, 42 U.S.C. §12188(a)(1), WDOMI's claims do not fall within the "zone of interests" protected by Title III. *See Bennett*, 520 U.S. at 162. For this reason, and because its claims are duplicative of Lowell's, WDOMI cannot overcome the prudential barriers to standing.

## II. IN THE ALTERNATIVE, THE COURT SHOULD DISMISS ALL CLAIMS FOR FAILURE TO STATE A CLAIM, AND THE CLASS CLAIMS SHOULD BE DISMISSED BECAUSE THE CLASSES ARE NOT ASCERTAINABLE

### A. Plaintiffs Fail To State a Claim Under the ADA, NYSHRL, or NYCHRL

Should the Court determine that it has subject matter jurisdiction over Plaintiffs' claims, the Amended Complaint should still be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

A Rule 12(b)(6) motion "presents a pure legal question, based on allegations contained within the four corners of the complaint. . . ." *Goldberg v. Danaher*, 599 F.3d 181, 183 (2d Cir. 2010). While the court must accept as true all well-pled allegations on a Rule 12(b)(6) motion, and construe the facts and reasonable inferences in the light most favorable to the plaintiff, mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs have the burden to plead factual allegations "enough to raise a right to relief above the speculative level and have enough facts to state a claim for relief that is plausible on its face." *Id*.

### *1. Plaintiffs Fail to State A Claim Under the ADA*

As discussed above, Lyft is an online ride-sharing platform that matches independent contractor drivers with passengers who need rides. Plaintiffs do not – nor could they – allege that Lyft owns or leases any type of vehicle, because it does not do so; the vehicles utilized by Users of the Lyft Platform are owned or leased by the independent contractor drivers themselves. Plaintiffs are in effect asking the Court to order Lyft to restructure its business model. In short, Lyft is a technology company; it is not in the transportation business.

On a motion to dismiss, however, a defendant must accept all of the plaintiff's factual allegations as true. Here, Plaintiffs' Amended Complaint rests on their core, albeit inaccurate, allegation that Lyft is in fact engaged in the business of transportation, akin to a taxi service. Specifically, Plaintiffs allege that Lyft is a "transportation company" that provides a "massive transportation service" for "millions of individuals" (Am. Compl. ¶¶ 24, 81, 37); that Lyft is one of the "emerging leaders" in the "transportation industry" that "are quickly supplanting traditional taxi companies" (*id.* ¶¶ 4, 38); and that Lyft is an "on-demand transportation" service by which customers "can remotely hail a nearby Lyft vehicle [and] select a destination to which he or she wishes to be driven" (*id*. ¶¶ 33, 44). *See also id.* ¶¶ 134, 129, 128 (alleging that Lyft operates a "demand responsive system," provides "specified public transportation services," and is "primarily engaged in the business of transporting people").

Taking all factual allegations pled in the complaint as true solely for purposes of this motion, Plaintiffs cannot state a claim for relief under the ADA because the *only* relief they seek – that the Court order Lyft to provide WAVs – is not available as a matter of law. That is so because private entities primarily engaged in the business of transportation, such as a taxi service or a limousine service, are not required under Title III of the ADA and its implementing

regulations to purchase or lease WAVs. *See* 42 U.S.C. § 12184(b)(3)[5]; 49 C.F.R. § 37.29(b); 49 C.F.R. § 37.103(c); *see also* Preamble -- Transportation for Individuals with Disabilities, Final Rule, 49 C.F.R. Parts 27, 37 and 38, P. 45590 (Fed. Reg. Sept. 6, 1991) ("Under the ADA, private entities primarily engaged in the business of transporting people and providing demand responsive services (the category that includes taxis) are not required to buy accessible automobiles. . . [N]othing in the statute requires an entity to acquire a van; if [the entity] acquires only automobiles, it need never obtain an accessible vehicle"); 49 C.F.R. Pt. 37, App. D ("Under the ADA, no private entity is required to purchase an accessible automobile"). The provision of transportation by such entities via automobiles that are not wheelchair accessible is *not discrimination* under the statute. *See* 42 U.S.C. § 12184(b)(3) (exempting purchase or lease of new "automobile" from definition of "discrimination").

The same is true even if the Court were to find that Lyft is a public accommodation under Title III (which it is not). The ADA expressly exempts private entities that operate a demand responsive system and are primarily engaged in the business of transportation from coverage under the definition of "discrimination" applicable to a public accommodation. *See id*. § 12182(b)(2)(C)(i). Instead, such entities are subject to the section of the ADA discussed above, *id*. § 12184, that applies to private entities primarily engaged in the business of transporting people (and that are not required to provide WAVs, *see id*. § 12184(b)(3)). Accordingly, accepting as true (solely for purposes of this motion) Plaintiffs' factual allegation that Lyft is in

---

[5] 42 U.S.C. § 12184 is entitled "Prohibition of discrimination in specified public transportation services provided by private entities." In turn, "Specified Public Transportation" is defined as "transportation by bus, rail or any other conveyance (other than by aircraft) that provides the general public with general or special service (including charter service) on a regular and continuing basis." 42 U.S.C. § 12181(10).

the transportation business, it would not be required under the ADA to purchase or lease WAVs even if it were found to be a public accommodation (which Lyft is not).

Given the applicable statutory and regulatory scheme (and again taking all factual allegations as true), the Second Circuit has made very clear that the relief Plaintiffs seek in this case is foreclosed under the ADA. *See Noel v. New York City Taxi and Limousine Comm'n*, 687 F.3d 63, 73 (2d Cir. 2012) ("Plaintiffs do not—and cannot—bring [a claim alleging failure to provide meaningful access to taxis for persons with disabilities] against the taxi industry . . . because Title III expressly exempts taxi providers from purchasing or leasing 'accessible automobiles'") (citing 49 C.F.R. § 37.29(b) ("Private entities providing taxi service")); *id*. at 73-74 (noting the "policy choice of the political branches" to "exempt[] the taxi industry from the ADA" and stating that the "exemption compels the conclusion that the ADA, as a whole, does not require the . . . taxi industry to provide accessible taxis"). *See also* 49 C.F.R. Pt. 37, App D ("For purposes of this section [49 C.F.R. § 37.29], other transportation services that involve calling for a car and a driver to take one places. . . are regarded as taxi services").

Indeed, under the applicable statutory and regulatory scheme, even private entities that *do* own or lease vehicles – unlike Lyft, which does *not* own or lease vehicles and is not alleged to do so – are not required under the ADA to provide WAVs. Such entities may choose to provide an entire fleet of vehicles that are not wheelchair accessible. *See Toomer v. City Cab*, 443 F.3d 1191, 1195 (10th Cir. 2006) (internal citation omitted) ("[A] taxi fleet consisting entirely of non-accessible vehicles would be in accord with the ADA"). Congress could not have intended to exempt private entities that *do* own or lease vehicles from providing WAVs, but not entities like Lyft that do *not* own or lease any vehicles. Accordingly, even accepting as true Plaintiffs' inaccurate core factual allegations that Lyft is primarily engaged in the business of

transportation, like a taxi service, Plaintiffs cannot state a claim for relief under the ADA because the *only* relief they seek – provision of WAVs – is unavailable as a matter of law.

### *2. Plaintiffs Fail to State a Claim Under the NYSHRL & the NYCHRL*

The same result holds for Plaintiffs' claim under the NYSHRL. That statute expressly exempts the refusal to retrofit vehicles by installation of hydraulic or other lifts from the definition of "discrimination" under the statute. *See* N.Y. EXEC. LAW § 296(2)(c)(iii). Further, the same legal standard applied above to analyze Title III of the ADA, under which Lyft is not required to provide WAVs even if it were primarily engaged in the business of transportation (which Lyft is not), is applicable here. *See Ortiz v. Westchester Medical Center Health Care Corp.*, No. 15-CIV-5432, 2016 WL 6901314, at *9 (S.D.N.Y. Nov. 18, 2016) ("[T]he same legal standards govern the disability provisions of the ADA . . . and NYSHRL").

Plaintiffs' claim under the NYCHRL similarly fails. While the Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 (2005), provides that application of the NYCHRL is to be evaluated independently of analogous federal and state statutes, *see* Local Law No. 85 [2005] of City of N.Y. § 7, the Second Circuit has also advised that "[i]nterpretations of New York state or federal statutes with similar wording may be used to aid in interpretation of the New York City Human Rights Law." *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (internal quotation omitted). Here, Plaintiffs cannot cite to a single case in which a court has held that under the NYCHRL a private transportation provider is required to provide WAVs, and that is to be expected given that the ADA and the NYSHRL foreclose that relief. In analyzing the issue, the Court should look to the federal and state laws – the ADA and the NYSHRL – which (taking the factual allegations as true solely for purposes of this motion) foreclose the relief that Plaintiffs seek.

In sum, because Plaintiffs cannot state a claim under the ADA, the NYSHRL, or the NYCHRL, the Amended Complaint should be dismissed.

### B. Plaintiffs' Class Claims Should Be Dismissed Because the Purported Classes Are Not Ascertainable

Under Fed. R. Civ. P. 23, class certification requires satisfaction of the implied requirement of ascertainability. *See*, *e.g., Brecher v. Republic of Argentina*, 806 F.3d 22, 24-25 (2d Cir. 2015). This requirement applies to all types of class actions under Rule 23, including injunctive class actions under Rule 23(b)(2), although the latter standard is less precise. *See M.G. v. New York City Dep't of Educ.*, 162 F. Supp. 3d 216, 233 (S.D.N.Y. 2016) ("[T]he Second Circuit recognizes an implied requirement of ascertainability . . . . even under Rule 23(b)(2)") (internal quotations omitted). A class is ascertainable "when defined by objective criteria" so that it is "administratively feasible" to identify its members and determining the class does "not require a mini-hearing on the merits of each case." *Id*. (internal quotation omitted); *see Goldemberg v. Johnson & Johnson Consumer Cos. Inc.*, 317 F.R.D. 374, 398 (S.D.N.Y. 2016) (internal quotation omitted) ("As for the ascertainability of the class an identifiable class exists if its members can be ascertained by reference to objective criteria").

Here, Plaintiffs' patently subjective criterion for defining each of the proposed classes is fatal. The three purported classes in the Amended Complaint are all defined on the basis of futility, which is to say that the classes consist entirely of people who "want" to sign up and "would" sign up but who have *not* signed up for Lyft's services, because they have allegedly been deterred from doing so. *See* Am. Compl. ¶¶ 116-18. Under this formulation (which would exclude actual Lyft Users from the classes), membership is entirely dependent on a purely subjective criterion: that someone "wants" to use Lyft but was allegedly deterred from doing so. Accordingly, it is apparent from the face of the Amended Complaint that the purported classes

cannot satisfy the implied requirement of ascertainability. This is true both as to the injunctive classes and to the extent Plaintiffs seek compensatory damages on behalf of the New York State and New York City classes. *Id.* ¶ 25. In short, the non-ascertainable nature of these futility-based classes dooms them at the threshold. *See John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (explaining that courts may dismiss class claims at the pleading stage when it is facially apparent from the pleadings that there is no ascertainable class).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint with prejudice.[6]

Dated: January 24, 2017

ARNOLD & PORTER

By: /s/ *Sara L. Shudofsky*

Sara L. Shudofsky
Harry K. Fidler
250 West 55th Street
New York, NY 10019-9710
T: (212) 836-7922
F: (212) 836-8689
sara.shudofsky@apks.com
harry.fidler@apks.com

*Attorneys for Defendant Lyft, Inc.*

[6] Dismissal with prejudice is appropriate given Plaintiffs' inability to plead around the arbitration provision in the TOS and the fact that Plaintiffs have already amended the complaint once. *See United States ex. rel Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) ("Leave to amend should . . . generally be denied in instances of futility").