UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

HARRIET LOWELL and WESTCHESTER
DISABLED ON THE MOVE, INC.,
individually and on behalf of all others similarly
situated,

        Plaintiffs,

        v.

LYFT, INC.,

        Defendant.

Case No. 7:17-cv-06251-NSR

## DECLARATION OF HARRIET LOWELL

1. My name is Harriet Lowell. I am over the age of 21 and fully competent to make this declaration.

2. I am a plaintiff in the above-captioned action.

3. I am mobility-impaired and typically use a motorized scooter to maneuver.

4. As with many motorized scooters and wheelchairs, my scooter is not waterproof, and its battery can easily short-circuit in the rain or snow. My assistive device is not designed for travel over snow or dirt-covered surfaces, where it can skid, sink, or otherwise easily get stuck. Consequently, I am often unable to travel even relatively short distances when it is snowing or raining.

5. In order to travel to destinations throughout New York for appointments, daily errands, advocacy, visiting friends, restaurants and museums and other activities, I must use transportation services that can accommodate me and my motorized scooter.

{00290710 2}        1

6.  I would also like to travel out of state to locations like Washington, D.C. and Boston, Massachusetts, but I believe that the lack of accessible transportation in those cities make my travel more difficult. If Lyft provided accessible vehicles nationwide, it would be much easier for me to travel outside of New York.

7.  I have known for a long time that Lyft does not provide services for mobility-impaired individuals who require wheelchairs or motorized scooters. I have been informed of Lyft's widespread discriminatory practices directly from other mobility-impaired individuals who have personally experienced discrimination.

8.  In addition, it is common knowledge among people with disabilities that Lyft does not offer wheelchair accessible vehicles throughout the country. I have attended multiple public meetings where people with disabilities and advocates discussed Lyft's failure to offer wheelchair accessible vehicles. I assisted the city of White Plains in its efforts to ensure that taxicabs in White Plains are accessible. As part of that process, I spoke to numerous other mobility-impaired individuals concerning their experiences.

9.  I particularly remember hearing from a young wheelchair user in White Plains who recounted his embarrassment when his friends were able to take Lyft home at the end of the night out and he had to wait until his mother arrived to pick him up in her wheelchair accessible vehicle.

10. I also read a fair amount about Lyft's failure to offer accessible vehicles. For example, I recall reading *Why the Disabled are Suing Uber and Lyft* in Time Magazine (attached as Exhibit 1). In addition to recounting allegations of discrimination against disabled individuals generally, the article describes the experience of one wheelchair user in Austin, Texas who was left with on the street when her Lyft driver could not fit her wheelchair in his car. I certainly did

not want to be in that position, and imagined that it was even more likely for me because my motorized scooter is larger and more difficult to disassemble than an average wheelchair.

11. I remember being excited when Lyft was first coming to New York, only to learn shortly thereafter that Lyft did not provide services for mobility-impaired individuals like myself.

12. I travel to New York City and back approximately twice a month for various reasons, including monthly healthcare appointments. I would like to travel to New York City more often but, unfortunately, I am limited by inadequate transportation options because Westchester County's ParaTransit service does not extend to New York City, public transportation options between Westchester and New York City are largely inaccessible, and private taxicabs are significantly more expensive than Lyft. I am currently only able to travel to, from, and throughout New York City when my husband is available to drive me in our wheelchair-accessible van.

13. When my husband is unavailable, my ability to travel is significantly reduced. For instance, when my husband was undergoing surgery in New York City, I was unable to visit him. I would have used Lyft's services to visit my husband in the hospital but for my knowledge that Lyft does not offer services to mobility-impaired individuals.

14. Lyft's failure to provide accessible services regularly inconveniences me. For example, whenever I want to visit with friends who live a substantial distance from home, I have to coordinate with my husband so that he can transport me in our wheelchair accessible van. This prevents me from enjoying spontaneous get-togethers and also forces my husband to drive me to and from visits with my girlfriends, causing inconvenience to all.

15. If I had reliable access to Lyft's transportation services, I would travel to, from, and around New York City more often.

16. I have encountered discrimination in all aspects of my life due to my disability. Each instance of discrimination has been a source of humiliation and pain for me.

17. I refrained and continue to refrain from creating a Lyft account or otherwise using Lyft's transportation services because I believe that it would be futile and I do not wish to be further subjected to discrimination.

18. I have been deterred from using Lyft's services on many specific occasions when it would have been convenient for me to use Lyft's services.

19. I continue to be in close contact with the disability rights community, activists, and organizations, and stay up-to-date as to Lyft's accessibility.

20. If Lyft were ADA-compliant and provided reliable access me and my motorized scooter, I would be eager to use its services.

I declare under penalty of perjury that the foregoing is based on my personal knowledge and is true and correct.

Executed on 2/28/2018

*Harriet Lowell*

Harriet Lowell, Plaintiff

# Exhibit 1

# TIME
# Why the Disabled are Suing Uber and Lyft



Uber Bloomberg—Bloomberg via Getty Images

By **JEN WIECZNER/FORTUNE** May 22, 2015

Ride hailing services Uber and Lyft are on the same side for once: They both deny accusations they discriminate against disabled passengers.

The two companies are named as defendants in a smattering lawsuits from California to Texas alleging they violated the Americans with Disabilities Act by failing to make their cars handicapped accessible. In some courts, Uber and Lyft are even named as co-defendants in a single case—putting the rivals, awkwardly, in the same boat.

The complaints paint the car service companies—or at least their drivers—as callous to the disabled. One lawsuit by the National Federation of the Blind of California, for example, says an UberX driver stuffed a blind passenger's guide dog in the trunk, and refused to stop the car to let the animal out. Other drivers allegedly refused to pick up blind customers accompanied by dogs.

Another physically disabled woman, Jennifer McPhail of Austin, says in a lawsuit that a Lyft driver left her on the curb because her wheelchair couldn't fit in the car. The driver then failed to provide alternative transportation.

Meanwhile, other disabled app users are airing their own grievances outside of court. Kristen Parisi, 30-year-old Boston woman who uses a wheelchair, told The Daily Beast that an Uber driver refused to pack her chair into the trunk, for example. So Parisi had to maneuver herself and the chair into the back seat with no assistance, while the driver berated her as an "invalid."

Uber denies any responsibility by saying it doesn't discriminate against the disabled and that it can transport blind and wheelchair-bound passengers. It told *The Daily Beast* that drivers accused of discrimination are usually suspended or fired. Lyft has a similar policy:



### Are You A Rideshare Driver? - Get Cheap Car Rentals

Cheap Car Rentals For Partners. Easy & Fast Booking Process. Get Started Now!

hyrecar.com

> It is Lyft's policy that passengers that use wheelchairs that can safely and securely fit in the trunk of the vehicle or backseat of the car without obstructing the view of the driver should be reasonably accommodated by drivers on the Lyft platform, and drivers should make every reasonable effort to transport the passenger and his or her wheelchair.

Lyft says it is also willing to accommodate service animals. But it recommends that passengers who need them call the driver in advance and let them know–and has a hotline for drivers to call if they have a "medically documented reason" that would prevent them from taking the animal.

Still, the heart of Uber's defense against the discrimination allegations could not only define its identity as a firm, but set a new precedent for how it and other disruptive tech-based businesses are viewed in the eyes of the law.

Uber argues that as a technology company, it is not subject to laws regulating public transit and other transportation providers, such as the ADA, or "required to provide accessible vehicles or accommodations."

Still, the U.S. Justice Department recently intervened in the blind plaintiffs' case to urge that the discrimination accusations be taken seriously. It also requested that the court interpret whether the laws governing other transportation providers should apply to Uber as well.

A decision against Uber could be costly to it and other upstart tech firms that may find themselves classified as belonging to a more traditional industry.

In a Texas case, Uber has already indicated that the cost of making the necessary modifications would be "extraordinary." The plaintiff in that lawsuit said a driver refused him service and that he could not order an accessible vehicle through the app.

"It would have to modify the Uber App, modify its policies and procedures, and provide wheelchair accessible vehicles in numerous cities," according to an October court filing.

Indeed, Uber has recently added the ability to order a wheelchair-accessible vehicle using its app in certain major cities like New York and San Francisco. But it's unclear if or when the option will be available elsewhere.

In the meantime, Eric Lipp, executive director of the Open Doors Organization, which advocates for accessible transportation for disabled passengers, offered this advice in *The Daily Beast*:

> "I think that many in the community do not understand that Uber has nothing against access and the ADA," says Lipp. "The big problem is that until the courts settle whether Uber is a software company or transportation company the disability community will just have to be patient and try to work with Uber, not against them."



TIME "Science of" Collection
The medicine of movement & how to be happy!