**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

HARRIET LOWELL and WESTCHESTER
DISABLED ON THE MOVE, INC., individually
and on behalf of all others similarly situated,

                Plaintiffs,

      v.

LYFT, INC.,

                Defendant.

7:17-CV-06251-NSR

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS**

Sara L. Shudofsky
Harry K. Fidler
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY  10019-9710
T:  (212) 836-7922
F:  (212) 836-8689
sara.shudofsky@apks.com
harry.fidler@apks.com

*Attorneys for Defendant Lyft, Inc.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ..................................................................................................................... 1

I.      THE COURT LACKS SUBJECT MATTER JURISDICTION ............................................ 1

        A. Plaintiffs Are Estopped From Avoiding the Terms of Service Applicable to All of Lyft's
           Users ..................................................................................................................... 1

        B. Both Plaintiffs Lack Standing to Bring A Claim ................................................... 4

II.     IN THE ALTERNATIVE, THE COURT SHOULD DISMISS ALL CLAIMS FOR
        FAILURE TO STATE A CLAIM, AND THE CLASS CLAIMS SHOULD BE
        DISMISSED BECAUSE THE CLASSES ARE NOT ASCERTAINABLE ......................... 6

        A. Plaintiffs Fail to State A Claim Under the ADA ..................................................... 6

        B. Plaintiffs Fail to State A Claim Under the NYSHRL & NYCHRL ......................... 9

        C. The Purported Classes Are Not Ascertainable ..................................................... 10

CONCLUSION ................................................................................................................. 11

# TABLE OF AUTHORITIES

CASES                                                                                    Page(s)

*American Express Co. v. Italian Colors Rest.*,
   133 S. Ct. 2304 (2013) ........................................................................................2

*Brooklyn Ctr. For Indep. of the Disabled v. Bloomberg*,
   290 F.R.D. 409 (S.D.N.Y. 2012) .......................................................................5

*Clark v. Rameker*,
   134 S. Ct. 2242, 2249 (2014) .............................................................................9

*Crawford v. Uber Techs., Inc.*,
   No. 17-02664, 2018 WL 1116725 (N.D. Cal. Mar. 1, 2018) ..............................9

*Innovative Health Sys., Inc. v. City of White Plains*,
   117 F.3d 37 (2d Cir. 1997) .................................................................................6

*John v. Nat'l Sec. Fire & Cas. Co.*,
   501 F.3d 443 (5th Cir. 2007) ............................................................................10

*Kreisler v. Second Ave. Diner Corp.*,
   731 F.3d 184 (2d Cir. 2013) ...............................................................................6

*Loeffler v. Staten Island Univ. Hosp.*,
   582 F.3d 268 (2d Cir. 2009) .............................................................................10

*McKenna, Long & Aldridge LLP v. Ironshore Spec. Ins. Co.*,
   No. 14-cv-6633, 2015 WL 144190 (S.D.N.Y. Jan. 12, 2015) ............................3

*Meyer v. Kalanik*,
   No. 15-9796, 2018 WL 1166641 (S.D.N.Y. Mar. 5, 2018) ................................2

*M.G. v. New York City Dep't of Educ.*,
   162 F. Supp. 3d 216 (S.D.N.Y. 2016) .............................................................10

*Nat'l Fed'n of the Blind of California v. Uber Techs., Inc.*,
   103 F. Supp.3d 1073 (N.D. Cal. 2015) ...........................................................5, 9

*Noel v. New York City Taxi and Limousine Comm'n.*,
   687 F.3d 63 (2d Cir. 2012) ...............................................................................8, 9

*Ortiz v. Westchester Medical Center Health Care Corp.*,
   No. 15-CIV-5432, 2016 WL 6901314 (S.D.N.Y. Nov. 18, 2016) .....................9

*Ramos v. Uber Techs., Inc.*, No. 14-502, 2015 WL 758087
(W.D. Tex. Feb. 20, 2015) ........................................................................9

*Robinson Brog Leinwand Greene Genovese and Gluck P.C. v. John M. O'Quinn
& Associates LLP*, 523 Fed. App'x 761 (2d Cir. 2013) ........................................3, 4

*Small v. General Nutrition Cos., Inc.*,
388 F. Supp. 2d 83 (E.D.N.Y. 2005) ........................................................6

*Toomer v. City Cab*,
443 F.3d 1191 (10th Cir. 2006) ........................................................7

## STATUTES & REGULATIONS

42 U.S.C. § 12182........................................................................................9

42 U.S.C. § 12184........................................................................................8, 9

42 U.S.C. § 12188........................................................................................4, 6

49 C.F.R. § 37.29........................................................................................8

## PRELIMINARY STATEMENT

Nothing in Plaintiffs' opposition brief undermines the bases for Lyft's motion.  While

Plaintiffs strain to argue otherwise, the inescapable bottom line is that they are seeking the

benefits of the services Lyft offers on terms that are different than those provided to every one of

Lyft's Users.  But they cannot obtain those benefits without also being subject to the arbitration

and class action waiver provisions that apply under Lyft's TOS.  Nor have Plaintiffs cured the

deficiencies of their pleading with respect to standing.  Accordingly, for both these reasons the

Court lacks subject matter jurisdiction over this action.

Even if, however, the Court determines that it has subject matter jurisdiction over

Plaintiffs' claims, and taking all of Plaintiffs' factual allegations as true solely for purposes of

Lyft's motion to dismiss, Plaintiffs simply cannot state a claim under the ADA; their arguments

in response to Lyft's moving brief are not supported by the statute, the regulations, the applicable

case law, or logic.  They likewise fail to state a claim under the state or city laws they invoke.

Finally, Plaintiffs barely attempt to address Lyft's argument that the purported classes are not

ascertainable, a deficiency that is fatal to Plaintiffs' class claims.  For all the reasons discussed in

its moving brief and below, the Court should dismiss the Amended Complaint.

## ARGUMENT

### I.    THE COURT LACKS SUBJECT MATTER JURISDICTION

#### A.    Plaintiffs Are Estopped From Avoiding the Terms of Service Applicable to All of Lyft's Users

Plaintiffs concede that all "riders who currently use Lyft have contracts with Lyft" and

that under Lyft's TOS all Users of the Lyft Platform agree to its arbitration and class action

waiver provisions.  *See* Plaintiffs' Memorandum in Opposition to Defendant's Motion to

Dismiss ("Pl. Opp.") at 6, 8.  Plaintiffs also concede, as they must, that non-signatories to

arbitration agreements can be bound to such agreements and that the rationale for doing so is that "one cannot seek a benefit under a contract without accepting all of that contract's terms." *Id*. at 5-6 (internal quotation omitted).

Nonetheless, Plaintiffs argue that they are entitled to reap the benefits provided under Lyft's TOS – a ride from a driver matched through the Lyft Platform – on terms different than those applicable to *every* User of the Lyft Platform.  They argue that they are entitled to do so because: (1) they allegedly have standing to bring an ADA claim based on the futile gesture provision and therefore do not need to agree to Lyft's TOS in order to bring their claims; and (2) they are not "third parties seeking to benefit from a consummated contract between Lyft and another party" and therefore there is no existing enforceable contract against them.  *Id*. at 3-8.

All of Plaintiffs' arguments are baseless and should be rejected.  First, whether or not Plaintiffs have standing to pursue their claims is a question that is entirely separate from whether they are bound by the arbitration and class action waiver provisions of the TOS.  Standing to pursue a claim does not supersede a valid arbitration provision, and the Supreme Court has made clear that arbitration is an adequate remedy as a matter of law.  *See American Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309, 2312 (2013); *Meyer v. Kalanik*, No. 15-9796, 2018 WL 1166641, at *9 (S.D.N.Y. Mar. 5, 2018).[1]  While the alleged futility of Plaintiffs signing up for a Lyft account may put them in the position – for standing purposes – of someone who *did* sign up, Plaintiffs also bear the obligations attendant to being in that position.[2]  Plaintiffs are

---

[1]  Plaintiffs quote *Meyer* to note that court's antipathy toward arbitration provisions, Pl. Opp. at 1, but Plaintiffs fail to mention that the court applied the arbitration provision at issue, because federal courts "are now obliged to enforce" such provisions.  *Meyer*, 2018 WL 1166641, at *2.

[2]  Plaintiffs inexplicably argue that Lyft "should not be heard to make" this argument on reply. Pl. Opp. at 5 n.1.  The argument is at the heart of Lyft's motion to dismiss and was previewed for Plaintiffs as early as Lyft's pre-motion letter to the Court.  *See* ECF # 13.

estopped from avoiding application of the arbitration and class action waiver provisions in the

Lyft TOS because the *benefit* they seek – a ride from a driver matched through the Lyft Platform

– is predicated on acceptance of the Lyft TOS.  Accordingly, even assuming that Plaintiffs can

establish standing in this case without attempting to use Lyft's services, they are still bound by

the arbitration and class action waiver provisions in the TOS.

Second, Plaintiffs' argument that the arbitration and class action waiver provisions cannot

apply to them because they are not "seek[ing] a direct benefit from Lyft's Terms of Service," Pl.

Opp. at 6, is belied by this very lawsuit and the concrete allegations in it.  It is abundantly clear

from the Amended Complaint that Plaintiffs seek the services provided when one signs up for an

account with Lyft.  *See, e.g.,* Am. Compl. ¶¶ 14, 15, 17, 104, 107, 109, 116, 117, 118; *see also*

Declaration of Melvyn R. Tanzman ¶¶ 13, 14, 16.  Indeed, a service provided under the TOS is

the *only* benefit that Lyft can provide to Plaintiffs.

Third, it is plainly not the case that a contract with Lyft is some kind of inchoate

document that does not currently exist and therefore cannot be the basis for application of the

direct benefits estoppel doctrine.  Lyft's TOS, available on the web and applicable to every

single User of the Lyft Platform, is an existing, non-negotiable contract that *all* Lyft Users must

enter into *before* obtaining the benefits of Lyft's services.  *See* Lyft TOS (attached as Ex. B to

Shudofsky Dec.).  The essence of direct benefits estoppel, which Plaintiffs do not and cannot

dispute, is that a non-signatory to an agreement is bound by the obligations of that agreement

when seeking to obtain its benefits.  That is precisely the situation presented here.  *See, e.g.,*

*McKenna, Long & Aldridge LLP v. Ironshore Spec. Ins. Co.*, Nos. 14-cv-6633, 2015 WL

144190, at *9 (S.D.N.Y. Jan. 12, 2015) (noting that under the direct benefits estoppel doctrine a

"nonsignatory directly benefits from an agreement containing an arbitration clause if it enables

3

that party to receive a tangible benefit") (citing *Robinson Brog Leinwand Greene Genovese &*

*Gluck P.C. v. John M. O'Quinn & Assocs., LLP*, 523 Fed. App'x 761, 762-63 (2d Cir. 2013))[3].

Finally, Plaintiffs' argument that Lyft's TOS should be viewed as an "unaccepted offer"

or "an offer awaiting acceptance" proves too much. *See* Pl. Opp. at 5, 8. If the TOS is an offer

of services that went unaccepted or is awaiting acceptance by Plaintiffs, then they should not

now through judicial intervention be able to seek the benefits of accepting that offer, and they

certainly should not be allowed to seek the benefits of accepting it on terms different than those

applicable to *every* User of the Lyft Platform. Since Plaintiffs continue to seek the benefits of

the TOS through this action, they should be required to arbitrate in single, non-class proceedings,

the form of redress available to every Lyft User.

**B.      Both Plaintiffs Lack Standing to Bring A Claim**

The futile gesture provision of the ADA, upon which Plaintiff Lowell relies to establish

standing, applies only if a plaintiff has actual notice of an ADA violation. *See* 42 U.S.C. §

12188(a)(1). Lowell's declaration in response to Lyft's motion to dismiss does not cure the

deficiency of her pleading. Between the Amended Complaint and the declaration, Lowell

alleges only two specific conversations with two unnamed persons in White Plains, in an attempt

to establish actual notice of an alleged nationwide, New York State-wide, and New York City-

wide ADA violation. Am. Compl. ¶ 100; Declaration of Harriet Lowell ("Lowell Decl.") ¶ 9.

Moreover, her conversation with a "young wheelchair user in White Plains" does not include an

allegation that the wheelchair user even attempted to utilize the Lyft Platform to obtain a WAV.

Lowell Decl. ¶ 9. Finally, the article cited by Lowell to support her claim of actual notice, *id.* ¶

---

[3] Plaintiffs attempt to minimize *Robinson Brog* by noting that the case was decided under Texas
law, but they fail to mention that in its decision the Second Circuit expressly stated that "Texas
follows this circuit's precedent on the issue . . . of whether a non-signatory party should be
required to submit its claims to arbitration." *Robinson Brog*, 523 Fed. App'x at 763.

10, is almost three years old and makes reference only to a single alleged incident in Texas in which a driver allegedly failed to accommodate a *foldable* wheelchair user, an issue that is not a part of this case (there is no allegation here that Lyft does not accommodate users of foldable wheelchairs). Accordingly, Lowell again falls short of establishing the actual notice necessary to support her standing claim based on futility.

Plaintiffs have also failed to establish that WDOMI has standing to bring its ADA claim. First, WDOMI has not satisfied the requirements for associational standing. Plaintiffs concede, as they must, that an association does not have standing unless "its members would otherwise have standing to sue in their own right." Pl. Opp. 11. That requirement is simply not met here, where *all* members of WDOMI are bound by the arbitration provision in the TOS, either because they have signed up for a Lyft account and agreed to the TOS or by application of the direct benefits estoppel doctrine. Contrary to Plaintiffs' assertion, it is not enough for WDOMI merely to allege that its members "include people with disabilities," *id*., and none of the cases they cite say otherwise, including *Brooklyn Ctr. For Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409, 416 (S.D.N.Y. 2012), and *Nat'l Fed'n of the Blind of California v. Uber Techs.*, Inc., 103 F. Supp.3d 1073, 1080 (N.D. Cal. 2015), in which the courts expressly found that certain members of the organizations had in fact established standing to sue in their own right (in *Nat'l Fed'n*, the assertion was uncontested). Moreover, while Plaintiffs argue that determining standing would not require the individual participation of WDOMI members, they directly contradict their argument by relying on the submission of three declarations from *individual members* of WDOMI. *See* Pl. Opp. at 11-12.

With respect to organizational standing, although Plaintiffs' brief is filled with mischaracterizations of Lyft's argument, which was focused on the scant allegations in the

5

Amended Complaint concerning the alleged diversion of WDOMI's resources, *see* Def. Mem. at

15-17, Plaintiffs have now submitted the declaration of the Executive Director of WDOMI,

which supplies allegations as to diversion of resources sufficient to support organizational

standing at this pleadings stage of the case.  But that declaration does not cure the standing defect

because WDOMI still cannot overcome the prudential barriers to standing.  While the Second

Circuit has held that Congress eliminated the prudential standing requirements with respect to

Title II, it has not addressed the question with respect to Title III.  *See Innovative Health Sys.,*

*Inc. v. City of White Plains*, 117 F.3d 37, 47 (2d Cir. 1997) (eliminating prudential standing

barriers as to Title II).  Plaintiffs cite to one sentence in *Kreisler v. Second Ave. Diner Corp.*, 731

F.3d 184, 188 (2d Cir. 2013), in which the Court stated in passing that the ADA is not subject to

prudential limitations, based on reference to a Title II case; the question of whether prudential

standing should apply to claims under Title III was not presented or discussed.  Further, unlike

Title II, Title III only permits claims of direct discrimination, *see* 42 U.S.C. §12188(a)(1), and

therefore "the enforcement provision of Title III clearly envisions that plaintiff himself must

currently be suffering or about to suffer discrimination." *Small v. General Nutrition Cos., Inc.*,

388 F. Supp. 2d 83, 92 (E.D.N.Y. 2005).  Because WDOMI does not make a direct claim of

discrimination, its claim does not fall within the enforcement provision of Title III.

II.     **IN THE ALTERNATIVE, THE COURT SHOULD DISMISS ALL CLAIMS FOR
        FAILURE TO STATE A CLAIM, AND THE CLASS CLAIMS SHOULD BE
        DISMISSED BECAUSE THE CLASSES ARE NOT ASCERTAINABLE**

        A.     **Plaintiffs Fail to State A Claim Under the ADA**

        Lyft is an online ride-sharing platform that matches independent contractor drivers with

passengers who need rides.  Plaintiffs do not – nor *could* they – allege that Lyft owns or leases

any vehicles used for ride-sharing.  Lyft is a technology company; it is not in the business of

transportation.  Were this case to proceed in this Court on the merits (which it should not), Lyft

6

will have a range of arguments to assert, including that it is not required under the ADA to make

modifications to its policies that would fundamentally alter the nature of its business.

For purposes of its motion to dismiss, however, Lyft must accept all of Plaintiffs' factual

allegations as true, meaning that it must accept the allegations of the Amended Complaint that

Lyft is primarily engaged in the business of transportation.  In their opposition brief, Plaintiffs do

not dispute this characterization of their pleading; nor do they dispute that private entities

primarily engaged in the business of transportation are *not required* under the ADA to purchase

or lease WAVs.  *See* Pl. Opp. at 17-22.  Instead, they argue that Lyft's motion should be denied

because (1) Plaintiffs "do not seek an order requiring Lyft to purchase WAVs," but only "seek to

compel Lyft to develop a comprehensive policy to avoid discrimination"; and  (2) "Lyft confuses

its [alleged] violation of the ADA with a potential remedy," whereas the "appropriate remedy for

[the alleged] violation is a matter for later proceedings."  *Id*. at 17-18.

As a threshold matter, Plaintiffs should be held for the duration of this case to the

representation in their brief that they do not seek an order in the case compelling Lyft to

purchase or lease WAVs.  As to Plaintiffs' arguments, they are misguided, both as to the statute

and the law within this Circuit.  Most fundamentally, the provision of transportation by private

entities primarily engaged in transportation via automobiles that are not wheelchair accessible

does not constitute *discrimination* under the ADA.  *See*  Def. Mem. at 20-21.  Indeed, "a taxi

fleet consisting entirely of non-accessible vehicles would be in accord with the ADA." *Toomer*

*v. City Cab*, 443 F.3d 1191, 1195 (10th Cir. 2006) (internal citation omitted).  Accordingly, the

distinction Plaintiffs attempt to make between "discrimination" and its "remedy" is entirely

misplaced.  Plaintiffs have not stated a *discrimination* claim, for which relief is available, by an

entity primarily engaged (allegedly) in the transportation business.

Nor can Plaintiffs avoid the Second Circuit's decision in *Noel v. New York City Taxi and Limousine Comm'n.,* 687 F.3d 63 (2d Cir. 2012), which dooms their claim.  In *Noel*, the Circuit considered a claim brought against the Taxi & Limousine Commission ("TLC") under Title II of the ADA for its failure "to provide meaningful access to taxis for person with disabilities." *Id.* at 70.  The claim was based not on an alleged failure of the TLC to purchase or lease WAVs, but on its alleged failure to ensure "meaningful access" by an entity subject to Title III of the ADA. The Circuit rejected the claim, explaining that "[p]laintiffs . . . cannot [ ] bring such a claim against the taxi industry directly under Title III of the ADA (which governs private entities), because Title III expressly exempts taxi providers from purchasing or leasing 'accessible automobiles.'" *Id*. at 73-74 (citing 49 C.F.R. § 37.29(b)).  The Court then repeated and clarified the scope of its holding multiple times:

> Plaintiffs assert their claims under Title II(A), but Title III is instructive nonetheless.  Plaintiffs contend that the TLC violates the ADA because the industry it pervasively regulates fails to afford meaningful access to persons with disabilities.  *But since the taxi industry itself is exempt, there is no underlying violation of the ADA* for the TLC to redress by regulation.  The district court, which has held that the TLC must increase the number of handicap-accessible taxis, *has thus run counter to the policy choice of the political branches, which exempted the taxi industry from the ADA.*
>
> . . .
>
> *The exemption compels the conclusio*n that the ADA, as a whole, does not require the New York City taxi industry to *provide* accessible taxis.

*Id*. (emphasis added).  Accepting the allegations of the Amended Complaint as true solely for purposes of this motion, Lyft would allegedly fall into this same category.  *See* Def. Mem. at 21.

Plaintiffs' argument, moreover, reduces to a conclusion that is illogical.  Under Plaintiffs' interpretation of the discrimination exception under Section 12184(b)(3), an entity primarily engaged in transportation that offers a demand response service is exempt from any requirement to purchase or lease WAVs; the entity, however, would be required to ensure that *someone else*

do so.  That interpretation is illogical and would fly in the face of the statute, the regulations, and

the Circuit's decision in *Noel*.[4]  The Circuit, moreover, made clear in *Noel* that another entity –

the TLC – could not be required under the ADA to ensure the availability of WAVs when the

owners of the vehicles themselves are exempt from any such requirement.  *Id*. at 73-74.[5]  In

short, Plaintiffs cannot state a claim for relief under the ADA.

> **B.      Plaintiffs Fail to State A Claim Under the NYSHRL & NYCHRL**

This Court has previously held that "the same legal standards govern the disability

provisions of the ADA . . . and NYSHRL."  *Ortiz v. Westchester Medical Center Health Care*

*Corp.*, No. 15-CIV-5432, 2016 WL 6901314, at *9 (S.D.N.Y. Nov. 18, 2010) (Román, J.).  Nor

can Plaintiffs cite to a single case to support their assertion that the conduct alleged here could

state a violation of the NYSHRL.  Accordingly, Plaintiffs' NYSHRL claim fails for the same

reasons their ADA claim fails.  Indeed, even a declaration submitted here by Plaintiffs

acknowledges that the NYSHRL goes no further than the ADA's requirements.  *See* Declaration

of Melvyn R. Tanzman, ¶ 8 (stating that despite WDOMI having "met with state legislators to

---

[4]  Plaintiffs rely heavily on *Crawford v. Uber Techs., Inc.*, No. 17-02664, 2018 WL 1116725
(N.D. Cal. Mar. 1, 2018), but that court was not subject to the *Noel* decision, and its reasoning
was wrong for all the reasons discussed above.  Nor can Plaintiffs find support in *Ramos v. Uber,
Techs., Inc.*, No. 14-502, 2015 WL 758087 (W.D. Tex. Feb. 20, 2015), a case also outside the
Second Circuit which did not address whether private entities primarily engaged in transportation
are exempt from any requirement to provide WAVs.

[5]  Plaintiffs' argument with respect to the exemption for public accommodations that are
primarily engaged in the transportation business also makes no sense.  Under Plaintiffs'
interpretation, while Congress provided that discrimination under § 12182(b)(2)(C) includes
conduct by "a private entity which operates a demand response system [ ] which is not subject to
section 12184," Congress also meant to include conduct by a private entity operating a demand
response system which *is* subject to § 12184.  *See* Pl. Opp. at 21.  That interpretation should be
rejected, as it would render the phrase "which is not subject to section 12184" entirely
superfluous.  *See, e.g.*, *Clark v. Rameker*, 134 S. Ct. 2242, 2249 (2014).  Further, Plaintiffs
erroneously state that the court in *Nat'l Fed'n,* 103 F.Supp.3d at 1083-84, "address[ed] this
issue," Pl. Opp. at 22, when in fact it did *not* do so.

educate them regarding the necessity of passing legislation requiring Lyft to provide accessible vehicles," the legislature "ultimately . . . did not require Lyft to provide accessible vehicles").

As to the NYCHRL claim, Plaintiffs still do not cite to a single case in which a court has held that under that statute a private transportation provider is required to provide WAVs.  The Court should look to the statute's federal and state analogs, which foreclose the relief Plaintiffs seek.  *See Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (advising that similar federal and state statutes may be used as aids in interpreting the NYCHRL).

## C.      The Purported Classes Are Not Ascertainable

In their opposing brief, Plaintiffs do not deny that each of the purported classes are defined in the Amended Complaint by a patently subjective criterion – that the class members "want" to sign up and "would" sign up to use Lyft's services, but have not done so.  Nor do they argue that the classes they seek to represent are in fact ascertainable.  Instead, Plaintiffs argue that the Court should wait until the class certification stage to reach this issue and that injunctive classes[6] do not require ascertainability.  Pl. Opp. at 25.  But "the Second Circuit recognizes an implied requirement of ascertainability . . . even under Rule 23(b)(2) [for an injunctive class]." *M.G. v. New York City Dep't of Educ.*, 162 F. Supp. 3d 216, 233 (S.D.N.Y. 2016).  And courts may dismiss class claims at the pleading stage when it is facially apparent from the pleadings, as is the case here, that there is no ascertainable class.  *See John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007).

---

[6]  Plaintiffs should be held to their representation that they do not seek any monetary relief in this case, Pl. Opp. at 12, and if necessary they should be required to amend their pleading, *see* Am. Compl. ¶ 25, solely for purposes of withdrawing any such claim.

## CONCLUSION

For the reasons provided above and in the Memorandum in Support of Defendant's

Motion to Dismiss, the Court should dismiss the Amended Complaint with prejudice.

Dated:  March 30, 2018

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Sara L. Shudofsky*
     Sara L. Shudofsky
     Harry K. Fidler
     250 West 55th Street
     New York, NY  10019-9710
     T:  (212) 836-7922
     F:  (212) 836-8689
     sara.shudofsky@apks.com
     harry.fidler@apks.com

     *Attorneys for Defendant Lyft, Inc.*