UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HARRIET LOWELL and WESTCHESTER
DISABLED ON THE MOVE, INC., individually and
on behalf of all others similarly situated,

Plaintiffs,

-against-

LYFT, INC.,

Defendant.

No. 17-cv-6251 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiffs Harriet Lowell and Westchester Disabled on the Move, Inc. ("WDOMI"), on

behalf of themselves and all others similarly situated, bring this putative class action against

Defendant Lyft, Inc. in their amended complaint filed on December 6, 2017 ("Amended

Complaint," ECF No. 20). Plaintiffs assert claims under Title III of the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12184; New York State Human Rights Law

("NYSHRL"), N.Y. Exec. Law §§ 290 – 97; and New York City Human Rights Law

("NYCHRL"), N.Y. City Admin. Code §§ 8-101 – 31.[1] Presently before the Court is

Defendant's Motion to Dismiss the Amended Complaint pursuant to Federal Rules of Civil

Procedure Rules 12(b)(1) and 12(b)(6) ("Defendant's Motion," ECF No. 31). For the following

reasons, Defendant's motion is GRANTED in part and DENIED in part.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/29/2018

---

[1] Plaintiffs also submitted a motion for the appointment of interim lead counsel, but on March 23, 2018, Plaintiffs withdrew this request without prejudice (ECF No. 30).

# BACKGROUND

## I.    Factual Background

The following facts are derived from the Amended Complaint and the documents appended thereto, and are assumed to be true for the purposes of this motion.

Plaintiff Lowell resides in White Plains, New York and typically uses a motorized scooter to travel. (Am. Compl. ¶¶ 12 – 13.)  To assist her in travel throughout Westchester County and in her bi-monthly trips to New York City, Plaintiff Lowell would like to use Defendant's transportation services. (*Id.* ¶¶ 14, 102.)  Plaintiff WDOMI is a Yonkers, New York nonprofit, run largely by individuals with disabilities, and operates as an independent living center for individuals with disabilities. (*Id.* ¶¶ 18 – 19.)  WDOMI's mission includes the "empower[ing] people with disabilities to control their own lives, advoca[ting] for civil rights and a society free of barriers to people with disabilities" and "ensuring that people with mobility disabilities are able to effectively use the transportation services they require." (*Id.* ¶¶ 20 – 21.)  Members of WDOMI "have been and will be injured" as a result of Defendant's actions, described below. (*Id.* ¶ 22.)

By downloading Defendant's ride-hailing application, a customer can remotely hail a nearby vehicle, select her destination, and pay through a payment method saved in the application. (*Id.* ¶ 33.)  Defendant operates both in White Plains and in Westchester County. (*Id.* ¶¶ 24, 29.)  Unlike New York's Boro Taxi services, or "for hire" livery services, Defendant is not subject to the Taxi and Limousine Commission's ("TLC") rules and regulations of accessibility for disabled individuals. (*Id.* ¶ 35.)  While Defendant requires that its New York City drivers register with the TLC, Defendant is not subject to the TLC's 2014 agreement to

make fifty percent of all taxis operating in New York City wheelchair accessible by 2020. (*Id.* ¶ 36.)

Plaintiffs allege that Defendant "pervasively and systematically" excludes people with mobility disabilities from its convenient transportation services. (*Id.* ¶ 38.) To support this allegation, Plaintiffs note that Defendant does not make wheelchair accessible vehicles ("WAVs") available in Westchester County; individuals who attempt to hail wheelchair accessible rides in that county receive a text message with alternative transportation services. (*Id.* ¶¶ 46, 48.) In areas where WAVs are available, users with mobility disabilities must toggle to the "Access Mode" function in Defendant's smartphone application to be matched with a WAV, and those individuals often experience long wait times. (*Id.* ¶¶ 47, 49.) While there are transportation alternatives to the service offered by Defendant, none are replacements for Defendant's services. New York City's subway is largely impossible for people with disabilities to use and its bus system is limited and "largely inefficient." (*Id.* ¶¶ 41 – 42.) Taxicabs do not offer the same convenience provided by Defendant's service, which includes the ability to pay without using cash or presenting a credit card to the driver.[2] (*Id.* ¶¶ 87 – 88.) Trips around Westchester County are difficult for Plaintiff Lowell because there is limited local paratransit. (*Id.* ¶ 105.)

Plaintiff Lowell learned of Defendant's ongoing discrimination from "friends and acquaintances who have mobility disabilities and have witnessed [Defendant]'s failure to provide equivalent, non-discriminatory service." (*Id.* ¶ 100.) A friend from White Plains told Plaintiff he tried to order an accessible Lyft, was informed that none were available, and received a text

---

[2] New York City taxicabs now offer the Curb application, which enables users to hail and pay for a taxi from their smartphones, much like the service offered by Defendant. Curb: The Taxi App, https://mobileapp.gocurb.com/ (last visited Nov. 21, 2018).

message from Defendant telling him to obtain an alternate method of transit. (*Id.*) Because Defendant does not provide WAVs, Plaintiff Lowell and members of the putative class have been deterred from downloading Defendant's application or trying to access Defendant's services as any attempt would be futile even though access to Defendant's services would improve their lives. (*Id.* ¶¶ 101, 116.) If Plaintiff Lowell had equal access to Defendant's services, she would be able to travel about Westchester County more often. (*Id.* ¶ 105.) Additionally, Plaintiff Lowell would be able to visit New York City on a more frequent basis. (*Id.* ¶ 104.) Currently, she goes to and from New York City approximately twice a month and, because she cannot use Defendant's services, she must rely on her husband to transport her in their WAV. (*Id.* ¶ 102.)

Due to Defendant's failure to provide equal, accessible transportation, Plaintiffs cannot benefit from Defendant's services. Plaintiffs allege that Defendant's actions are in violation of the ADA, NYSHRL and NYCHRL. Plaintiffs request declaratory and injunctive relief under the ADA and compensatory damages in addition to declaratory and injunctive relief under the NYSHRL and NYCHRL. Specifically, Plaintiffs request that the Court require Defendant to develop and implement a remedial plan to ensure full and equal access to its services.

Defendant moves to dismiss Plaintiffs' Amended Complaint due to lack of standing, the existence of an arbitration agreement in Defendant's terms of Service, and Plaintiffs' failure to state a claim.

## LEGAL STANDARD

When a court lacks the statutory or constitutional power to adjudicate a case, it should dismiss the case for lack of subject matter jurisdiction under Rule 12(b)(1). *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011). "A plaintiff asserting subject matter jurisdiction

has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  In assessing whether there is subject matter jurisdiction, the Court must accept as true all material facts alleged in the complaint, *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009), but "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).  Lack of standing may be grounds for dismissal under Rule 12(b)(1). *See Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 560 (S.D.N.Y. 2016).

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.  A complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level' " to move beyond a motion to dismiss. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  In deciding a motion to dismiss, a court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor. *Iqbal*, 556 U.S. at 678.  However, the court is " 'not bound to accept as true a legal conclusion couched as a factual allegation,' " or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Further, a court is generally confined to the facts alleged in the complaint for the purposes of considering a motion to dismiss pursuant to 12(b)(6). *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

## DISCUSSION

### I.  Standing

The Court must first address whether Plaintiffs have standing to bring their Amended Complaint before determining whether Plaintiffs have stated a plausible claim for relief. *See Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 560 (S.D.N.Y. 2016) (noting that courts should consider jurisdictional issues such as standing first in a motion to dismiss analysis). Article III requires federal courts to adjudicate actual cases and controversies. U.S. Const. art. III, § 2, cl. 1. To ensure that there is a case or controversy, the Supreme Court has held that parties before federal courts must have standing to bring their claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff has standing if she has suffered "(1) an injury that is (2) 'fairly traceable to a defendant's allegedly unlawful conduct' and that is (3) 'likely to be redressed by the requested relief.' " *Id.* 560 – 61 (quoting *Allen v. Wright,* 468 U.S. 737, 751 (1984)). For the purposes of standing, an injury must be an injury in fact, meaning "an invasion of a legally

protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not 'conjectural' or 'hypothetical.' " *Id.* at 560 (citations and quotation marks omitted).

Where, as here, standing is challenged at the pleadings stage, a court must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *United States v. Vazquez,* 145 F.3d 74, 81 (2d Cir. 1998) (internal quotation marks omitted). "To survive the motion to dismiss, the pleadings must only 'allege facts that affirmatively and plausibly suggest that [Plaintiffs have] standing to sue.' " *Boelter v. Hearst Commc'n, Inc.*, 192 F. Supp. 3d 427, 437 (S.D.N.Y. 2016) (quoting *Amidax Trading Grp. v. S.W.I.F.T.*, 671 F.3d 140, 145 (2d Cir. 2011)). A plaintiff's "standing allegations need not be crafted with precise detail." *Baur v. Veneman,* 352 F.3d 625, 631 (2d Cir. 2003).

When a claim arises from a civil rights statute, such as the ADA, courts must exercise special care in conducting a standing analysis. "The Supreme Court has instructed courts to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, 'complaints by private persons are the primary method of obtaining compliance with the Act.' " *Fiedler v. Ocean Prop., Ltd.*, 683 F. Supp. 2d 57, 65 (D. Me. 2010) (quoting *Trafficante v. Metro. Life Ins., Co.*, 409 U.S. 205, 209 (1972)); *see also Harty v. Spring Valley Marketplace LLC*, No. 15-CV-8190(NSR), 2017 WL 108062, at *6 (S.D.N.Y. Jan. 9, 2017); *Baker v. N.Y. State Dep't of Envtl. Conservation*, No. 10-CV-1016 (GLS)(RFT), 2012 WL 2374699, at *2 (N.D.N.Y. June 22, 2012).

### A. Plaintiff Lowell

Defendant argues that Plaintiff Lowell lacks standing to bring this action because she failed to identify a concrete injury as she did not sign up for Defendant's application or otherwise attempt to obtain a ride from Defendant. (Def.'s Mot. p. 12.) To plausibly demonstrate the first

element of standing, injury, an individual with a disability is not required to "engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions." 42 U.S.C. § 12188(a)(1). This Circuit has not settled upon a clear definition of "actual notice."[3] *Kreisler v. Second Ave. Diner Corp.*, No. 10-CV-7592(RJS), 2011 WL 4686500, at *2 (S.D.N.Y. Oct. 5, 2011). The majority of cases suggest that "actual knowledge" under the futile gesture analysis comes from the plaintiff personally witnessing the alleged accessibility issue. *See Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133 (9th Cir. 2002); *Perdum v. Forest City Ratner Cos.*, 174 F. Supp. 3d 706, 715 (E.D.N.Y. 2016); *Shariff v. Radamar Meat Corp.*, No. 11-CV-6369(NGG)(RML), 2014 WL 1311563, at *2 (E.D.N.Y. Feb. 14, 2014); *Small v. Gen. Nutrition Cos.*, 388 F. Supp. 2d 83, 88 – 89 (E.D.N.Y. 2005).

In cases where a plaintiff did not personally observe the accessibility issue in the building, courts have generally held that the plaintiff lacked standing. The Eighth Circuit has held that one plaintiff had standing because he entered the relevant building and observed the facility before bringing the lawsuit and that other plaintiffs who did not enter or observe the facility did not have standing. *Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000). A New York court held that a list of ADA violations prepared after the inspection of a building was not sufficient to establish actual knowledge. *Access 4 All, Inc. v. Trump Int'l Hotel and Tower Condo.*, 458 F. Supp. 2d 160, 174 – 75 (S.D.N.Y. 2006). Similarly, a Florida court held that

---

[3] Actual notice is also referred to in case law as "actual knowledge." *See, e.g., Perdum v. Forest City Ratner Cos.*, 174 F. Supp. 3d 706, 714 – 15 (E.D.N.Y. 2016); *Shariff v. Radamar Meat Corp.*, No. 11-CV-6369(NGG)(RML), 2014 WL 1311563, at *2 (E.D.N.Y. Feb. 14, 2014); *Access 4 All, Inc. v. Trump Int'l Hotel and Tower Condo.*, 458 F. Supp. 2d 160. 173 (S.D.N.Y. 2006).

knowledge of accessibility conditions at a building derived from a website was not actual knowledge. *Resnick v. Magical Cruise Co., Ltd.*, 148 F. Supp. 2d 1298 (M.D. Fla. 2001).

The case before the Court is distinct from the cases discussed above in that Plaintiffs' claims are not about access to a building, but access to transportation facilitated through a digital application. "Congress clearly contemplated that 'service establishments' include providers of services which do not require a person to physically enter an actual physical structure." *Nat'l Fed'n of the Blind of Cal. v. Uber Tech., Inc.*, 103 F. Supp. 3d 1073, 1083 (N.D. Cal. 2015) (quoting *Carparts Distrib. Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 13 (1st Cir. 1994)). Unlike accessibility conditions in a building, an individual cannot personally observe the objectionable conditions in Defendant's service without downloading the application, requesting a ride, and being refused. This would require Plaintiffs to engage in a futile gesture, as they had actual knowledge that Lyft did not offer sufficient accessible transportation for those with mobility disabilities. Plaintiffs plausibly allege that they had actual knowledge of the accessibility issues with Defendant's service. Contrary to the Defendant's statement that Plaintiff Lowell's knowledge of Defendant's accessibility issues was based on a conversation with one person, the Amended Complaint alleges that Plaintiff Lowell had heard from multiple people that requesting a ride through Defendant's application was futile for individuals in need of WAVs. (Compl. ¶ 100) (Def.'s Mot. p. 12.) Accordingly, taking a broad view of constitutional standing and drawing all reasonable inferences in favor of Plaintiff Lowell, as required at the motion to dismiss stage, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), Plaintiff Lowell plausibly claimed an injury for the purposes of standing.

Plaintiffs' Amended Complaint also plausibly establishes the second and third elements of standing with respect to Plaintiff Lowell. Her injury, not having equal access to Defendant's

services, is fairly traceable to Defendant and the Court would likely be able to redress this injury by requiring Defendant to comply with accessibility laws. (Compl. p. 28); *See Reed v. 1-800 Flowers.com,* 327 F. Supp. 3d 539, 550 (E.D.N.Y. 2018) (citing cases stating that courts may require defendants to comply with the ADA).

Because Plaintiff Lowell meets each of the requirements for standing, Defendant's motion to dismiss Plaintiff Lowell's claim for lack of standing is denied.

### B. Plaintiff WDOMI

According to Defendant, Plaintiff WDOMI lacks associational or organizational standing to file this action. (Def.'s Mot. pp. 13 – 18.)

### 1. *Associational Standing*

An organization has associational standing if it can show that (1) its members would have standing to sue in their own right; (2) the interests it seeks to protect relate to the organization's purpose; and (3) neither the asserted claim nor the requested relief require the participation of individual members of the lawsuit. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

Plaintiffs' Amended Complaint establishes the first element; its members would have standing to sue in their own right. Members of Plaintiff WDOMI, like Plaintiff Lowell, "rely on compliance by public accommodations, including transportation services, with local, state, and federal [accessibility] disability laws" and have been deterred from using Defendant's transportation services because of Defendant's failure to comply with these laws. (Compl. ¶¶ 31, 116, 120 & 127.) Requiring Defendant to comply with accessibility laws would redress this injury. (*Id.* p. 28); *See Reed v. 1-800-Flowers.com,* 327 F. Supp. 3d 539, 550 (E.D.N.Y. 2018). Thus, because the Amended Complaint contains sufficient facts to support a plausible claim that

members of Plaintiff WDOMI suffered an concrete and particularized injury, fairly traceable to Defendant's conduct and able to be redressed by the Court, the Court is satisfied that they WDOMI members would independently have standing.

Plaintiff WDOMI easily satisfies the second element of associational standing. The interests it seeks to protect through this lawsuit, equal and accessible access to transportation public accommodations, fall squarely within its purpose. "A key component of WDOMI's mission is ensuring that people with mobility disabilities are able to effectively use the transportation services they require." (Compl. ¶ 21.)

However, Plaintiff WDOMI does not establish the third element for its NYSHRL and NYCHRL claims; it fails to plausibly show that neither Plaintiff WDOMI's claim nor the relief requested requires the participation of WDOMI's members. "[W]here the organization seeks a purely legal ruling without requesting that the federal court award individualized relief to its members, the *Hunt* test may be satisfied." *Bano v. Union Carbide Corp.,* 361 F.3d 696, 714 (2d Cir. 2004). In *Hunt*, the Supreme Court found that neither the interstate commerce claim nor the requests for declaratory or injunctive relief required individualized proof and held that both claims were properly resolved "in a group context." *Hunt*, 432 U.S. at 344. Here, unlike the Plaintiffs in *Hunt*, Plaintiffs request compensatory damages in addition to declaratory and injunctive relief for their NYSHRL and NYCHRL claims. (Compl. ¶ 25.) A request for compensatory damages, such as the request in Plaintiffs' Amended Complaint, requires the participation of a group's individual members. *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 651 (2d Cir. 1998).

Accordingly, Plaintiff WDOMI does not have associational standing for its NYSHRL and NYCHRL claims because it fails to satisfy the third prong of the associational standing analysis for those claims.

### 2. *Organizational Standing*

To have organizational standing, an organization must establish that there is (1) an imminent injury "to itself as an organization (rather than to its members) that is 'distinct and palpable' "; (2) the injury is fairly traceable to the defendant's actions; and (3) the court can redress the injury. *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017). For organizational standing, an organization is "just another person—albeit a legal person—seeking to vindicate a right." *N.Y. Civil Liberties Union v. N.Y. City Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012).

Here, Plaintiff WDOMI fails to satisfy the first element, an injury to itself as an organization. Plaintiff WDOMI states that it is injured because it must divert resources to advocate "for its constituents who are harmed by Lyft's discriminatory policies and practices." (Compl. ¶ 22.) This injury is not distinct from the matter before the Court. Rather, Plaintiff WDOMI's stated injury results from WDOMI's efforts to pursue this very lawsuit. In *Havens Realty Corp. v. Coleman*, the Supreme Court held that "concrete and demonstrable injury to an organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests" and that such an injury could be sufficient to establish organizational standing. 455 U.S. 363, 379 (1982). However, lower courts disagree about how broadly *Havens* should be applied.

The circuit courts are split on whether litigation expenses alone is an injury sufficient to support organizational standing. *See Citizens for Responsibility and Ethics in Wash. v. Trump*,

276 F. Supp. 3d 174, 192 (S.D.N.Y. 2017). Some circuit courts hold that the expenditure of resources for litigation is insufficient to confer standing. *People for the Ethical Treatment of Animals v. U.S. Dept. of Agric.*, 797 F.3d 1087, 1093 (D.C. Cir. 2015) ("[A]n organization's diversion of resources to litigation or to investigation in anticipation of litigation is considered a 'self-inflicted' budgetary choice that cannot qualify as an injury in fact for purposes of standing."); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 285 (3d Cir. 2014) (holding that organizations do not satisfy the injury-in-fact requirement of standing by "making expenditures solely for the purpose of litigation"). Other circuit courts adopt a broader interpretation of *Havens* and hold that diversion of resources from core organizational activities to litigation challenging a defendant's conduct is a sufficient injury for organizational standing so long as the injury is concrete. *See N.A.A.C.P. v. City of Kyle*, 626 F.3d 233, 239 (5th Cir. 2010) (holding that an organization's alleged injury, examining developments in local zoning ordinances, was "simply a setback to the organization's abstract social interests" and not a diversion of resources sufficient to show a concrete injury); *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 905 (2d Cir. 1993). In *Ragin*, an organization challenged the use of only white models in advertisements for housing and alleged that it sustained an injury because the defendant's actions forced the organization to identify and counteract the defendant's advertising practices. *Ragin*, 6 F.3d at 901. The Second Circuit agreed and held that the organization had an injury sufficient to support organizational standing. *Id.* at 905.

After *Ragin*, some courts in this Circuit have found standing where a defendant's conduct interferes with or otherwise burdens an organization's ability to pursue its usual activities. *See Centro de la Comunidad Hispana de Locust Valley*, 868 F.3d at 110; *N.Y. Civil Liberties Union*, 684 F.3d at 295. Other courts have extended *Havens* further and held that an organization has

standing when it is forced to "expend resources to prevent some adverse or harmful consequence on a well-defined and particularized class of individuals." *See Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 158 (2d Cir. 2014); *Citizens for Responsibility and Ethics in Wash.*, 276 F. Supp. 3d at 190 (holding that the organization, interested in protecting citizens' rights to be informed of government activity, did not have standing because it made the choice to challenge the defendant's actions and was not attempting to prevent or reverse adverse effects). In *Olsen*, Long Island Housing Services ("LIHS"), along with other plaintiffs, claimed that the defendant discriminated against individuals based on their disabilities in violation of the Fair Housing Act. *Olsen*, 759 F.3d at 143. To determine whether the defendant's actions were discriminatory in violation of the Fair Housing Act, LIHS sent testers to the defendant's facility. *Id.* at 143 – 44. LIHS then submitted administrative complaints, based on information from the testers, to the Department of Housing and Urban Development. *Id.* at 144. These complaints were submitted before the plaintiffs commenced their suit against the defendant in federal court. *Id.* The court held that LIHS's allegations that it expended resources by sending testers to the defendant was a concrete and particularized injury. *Id.* at 158.

Here, Plaintiff WDOMI fails to plausibly allege that it sustained an injury sufficient to support organizational standing. Unlike LIHS in *Olsen*, Plaintiff WDOMI does not allege that Defendant's conduct caused it to expend any resources separate from this litigation or that it was otherwise impeded in its ability to pursue its mission. There is no indication in the Amended Complaint that Defendant WDOMI conducted any sort of investigation or otherwise expended resources because of Defendant's conduct at issue before this action. Plaintiff WDOMI claims that it suffered injury "in the form of diversion of [its] resources and frustration of its mission," but this allegation is conclusory and unsupported by any facts in the Amended Complaint.

(Compl. ¶ 22.) The Amended Complaint does not include any facts, beyond the aforementioned conclusory allegation, to plausibly support that Defendant's conduct interfered WDOMI's ability to pursue its mission or that it was forced to divert resources to prevent an adverse consequence, like LIHS in *Olsen*. Thus, Plaintiff WDOMI fails to establish an injury to itself as an organization, the first element of organizational standing.

Thus, because Plaintiff WDOMI cannot satisfy all of the elements for organizational standing and cannot satisfy all of the elements for associational standing specifically for its NYCHRL and NYSHRL claims, WDOMI only has standing to pursue its ADA claim.

## II. Enforcement of Arbitration Clause

Defendant next argues that the arbitration waiver in its terms of Service ("TOS") applies to Plaintiffs' claims under the direct benefits estoppel doctrine, even though Plaintiffs did not sign up for Defendant's application or agree to the TOS. (Def.'s Mot. p. 8.) Defendant's TOS "explicitly states that the claims subject to arbitration include claims alleging discrimination and claims under the ADA." (*Id.* p. 9.) Non-signatories can be bound to arbitration agreements under five distinct theories: "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel." *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 352 (2d Cir. 1999). Defendant moves to dismiss under the estoppel theory, which states, "A party is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause." *Am. Bureau of Shipping*, 170 F.3d at 353.[4] Benefits may be direct, meaning coming directly from the agreement, or they may

---

[4] Defendant cites to *Robinson Brog Leinwand Greene Genovese & Gluck P.C. v. John M. O'Quinn & Associates, L.L.P.*, which describes the doctrine as follows: "When a non-signatory plaintiff seeks the benefits of a contract that contains an arbitration provision, it is estopped from 'denying its obligation to arbitrate.'" 523 F. App'x 761, 763 (2d Cir. 2013); (Def.'s Mot. p. 9.) However, the majority of Second Circuit opinions, as well as opinions from other circuit courts, describe the requisite benefit under this doctrine as something that the plaintiff has already received, not something she seeks. *Compare Hirsch v. Citibank, N.A.*, 542 F. App'x 35, 37 (2d Cir. 2013); *AICO Int'l, E.C. v. Merrill Lynch & Co.*, 98 F. App'x 44, 46 (2d Cir. 2004); *Specht v. Netscape Commc'ns*

be indirect in that the non-signatory "exploits the contractual relation of parties to the agreement, but does not . . . [assume] the agreement itself." *Boroditskiy v. European Specialties LLC*, 314 F. Supp. 3d 487, 495 (S.D.N.Y. 2018) (quoting *MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001)).

However, Plaintiffs here have not received a benefit from Defendant's TOS; that is the whole problem. Plaintiffs' entire claim is that they are unable to benefit from Defendant's services due to Defendant's failure to accommodate their disabilities. (Compl. ¶¶ 103, 107 & 109.) It seems supremely unjust to hold individuals to an arbitration clause buried in the verbiage of a terms of service of agreement for a service that they did not sign up for, particularly when those individuals have not received any benefits from the agreement, direct or indirect. Courts have upheld arbitration agreements in terms of service contracts because the plaintiffs were presented with the opportunity to review the terms in the form of a hyperlink before signing up for the service. *See Bassett v. Elec. Arts Inc.*, 13-CV-4208(MKB)(SMG), 2015 WL 1298644, at *4 (E.D.N.Y. Feb. 9, 2015); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 – 40 (S.D.N.Y. 2012). Unlike the plaintiffs in those cases, Plaintiffs here did not sign up for Defendant's service and do not allege that they were ever presented with the TOS to review. Requiring Plaintiffs to arbitrate under the TOS would hold them to an arbitration clause in an agreement they neither signed up for nor benefited from, and therefore direct benefits estoppel does not apply.

---

*Corp.*, 206 F.3d 17, 39 (2d Cir. 2002); *MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001); *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999); *Ried v. Doe Run Res. Corp.*, 701 F.3d 840, 846 (8th Cir. 2012); *Pacific Unidata Ltd. v. Avon Prod. Inc.*, 107 F. App'x 754, 755 (9th Cir. 2004); *Bridas S.A.P.I.C. v. Turkmenistan*, 345 F.3d 347, 361 – 62 (5th Cir. 2003); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000), *with Robinson Brog Leinwand Greene Genovese & Gluck P.C.*, 523 F. App'x at 763; *World Omni Fin. Corp. v. Ace Capital Re Inc.*, 64 F. App'x 809, 812 (2d Cir. 2003). Because the majority of Second Circuit opinions support the latter definition and have not been overruled, the Court will proceed under that definition.

Because Plaintiffs have not agreed to Defendant's TOS and are not otherwise estopped from avoiding the arbitration agreement in the TOS, the Court will analyze whether Plaintiffs plausibly establish violations under the ADA, NYSHRL, and NYCHRL.

### III. Plaintiffs' Civil Rights Claims

#### A. Title III ADA

According to Defendant, Plaintiffs fail to state a plausible claim for relief because "the *only* relief they seek—that the Court order Lyft to provide WAVs—is not available as a matter of law." (Def.'s Mot. p. 20.) However, as Plaintiffs acknowledge, the Amended Complaint does not include a specific request that Defendant be required to provide WAVs but does request that the Defendant be required to "develop and implement a remedial plan to ensure full and equal access to its services." (Compl. p. 28) (Pls.' Opp'n pp. 17 – 18.)

Whether the Court has the authority to require Defendant to provide WAVs is irrelevant at this stage. On a motion to dismiss, the Court must only determine whether Plaintiffs stated a claim for relief that is plausible on its face and is obligated to draw all reasonable inferences in Plaintiffs' favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Amended Complaint contains numerous factual allegations surrounding Defendant's failure to provide WAVs. However, Plaintiffs' request for relief is not that the Court require Defendant to provide WAVs but that the Court (1) declare that Defendant's policies and practices violate the ADA; (2) enjoin Defendant from further violations of the ADA; and (3) require that Defendant develop and implement a plan to ensure equal access to its services. (Compl. p. 28.) Drawing all reasonable inferences is Plaintiffs' favor, the Court interprets the allegations surrounding Defendant's deficient WAV offerings as support for Plaintiffs' claim that Defendant violates the ADA by discriminating against people with mobility disabilities and not as a request for relief. A request for injunctive

relief requiring compliance with the ADA, such as Plaintiffs' request for relief, is sufficient to withstand a motion to dismiss. *See Reed v. 1-800-Flowers.com,* 327 F. Supp. 3d 539, 550 – 51 (E.D.N.Y. 2018). Accordingly, the Court finds that Plaintiffs' have requested a form of relief which can be granted.

Defendant does not raise other grounds to dismiss Plaintiffs' Amended Complaint under Rule 12(b)(6). Assuming Defendant also moves to dismiss Plaintiffs' ADA claim for failure to plausibly allege each of the elements of the claim, the Court would still deny the motion to dismiss. Under Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To state a claim for relief under Title III, a plaintiff must allege that (1) she is disabled within the meaning of the ADA; (2) the defendants own, lease, or operate a place of public accommodation; and (3) the defendants discriminated against her by denying her a full and equal opportunity to enjoy the defendant's services. *Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 198 – 99 (S.D.N.Y. 2016) (citing *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008)).

Plaintiffs satisfy each element of an ADA claim based on the face of the Amended Complaint. First, they meet the first element of an ADA claim by plausibly alleging that they are individuals with disabilities within the meaning of the ADA. (Compl. ¶ 127.) Plaintiffs also satisfy the second element for the purposes of this motion to dismiss, that Defendant operates a public accommodation. Defendant disputes that it is a public accommodation in the business of transportation and a covered entity under Title III of the ADA, but Defendant acknowledges that Plaintiffs allege it is a transportation company and that the Court is required to accept Plaintiffs'

allegations as true for the purpose of the motion to dismiss. (Def.'s Mot. p. 2); *See* 42 U.S.C. § 12181(7). The Amended Complaint states that Defendant operates a public accommodation. (Compl. ¶ 132.) If Plaintiffs' statements on the face of the Amended Complaint were not sufficient, the Court would still be unable to grant Defendant's motion to dismiss on the issue of whether Defendant is a public accommodation. It is premature to decide the question of whether a defendant is a public accommodation at the motion to dismiss phase. *Nat'l Fed'n of the Blind of Cal. v. Uber Tech., Inc.*, 103 F. Supp. 3d 1073, 1083 (N.D. Cal. 2015) (denying the defendant's motion to dismiss because more factual development was required to determine whether the defendant, Uber, was a public accommodation under the ADA); *see Ramos v. Uber Tech., Inc.*, No. 14-CA-502(XR), 2015 WL 758087, at *6 (W.D. Tex. Feb. 20, 2015) (denying the defendant's motion to dismiss and holding that the plaintiffs had not failed to prove that Lyft and Uber offer public accommodations under the ADA). Therefore, the Court will consider Defendant to be a covered entity under Title III of the ADA for the purposes of this motion and finds that Plaintiffs have satisfied the second prong of the ADA analysis.

Finally, Plaintiffs state a facially plausible claim that Defendant discriminated against Plaintiffs by denying them a full and equal opportunity to enjoy Defendant's services based on their disabilities. In *Lincoln Cercpac v. Health and Hospital Corp.*, the court granted the defendant's motion to dismiss because the plaintiffs failed to allege that there was a service they were being denied or that they were being denied equal access to a service. 977 F. Supp. 274, 280 (S.D.N.Y. 1997). Unlike the plaintiffs in *Lincoln Cercpac*, Plaintiffs in this case allege that Defendant is denying them equal access to a service, specifically Defendant's transportation services, because of their disabilities. (Compl. ¶¶ 109 – 10, 136, 137.)

Thus, Plaintiffs' ADA claim survives Defendant's motion to dismiss, assuming Defendant also argues that Plaintiffs failed to plead a plausible ADA claim, because the Amended Complaint contains sufficient facts to plausibly support each element of that claim.

### B. NYSHRL

Claims under the NYSHRL are analyzed using the same standards that apply to the ADA. *Kemp v. Metro-North R.R.*, 316 F. App'x 25, 26 (2d Cir. 2009). Accordingly, the three element test articulated in the Court's ADA analysis applies here. *See Rosa*, 175 F. Supp. 3d at 198 – 99. As stated *supra*, for the purposes of this motion, there is no dispute that Plaintiffs are disabled within the meaning of the ADA or that Plaintiffs have plausibly alleged that Defendant is a public accommodation. Additionally, the Amended Complaint contains sufficient facts to plausibly support Plaintiffs' claim that Defendant discriminated against them by denying them a full and equal opportunity to enjoy its ridesharing services. (Compl. ¶¶ 109 – 10, 136, 137.) "Defendant denies individual [sic] who use motorized and other non-folding wheelchairs, including Plaintiff Lowell [and] WDOMI members . . . full and equal enjoyment of Defendant's services." (*Id.* ¶ 137.)

Because Plaintiffs have stated a facially plausible claim for each of the required elements, Defendant's motion to dismiss the NYSHRL claim is denied.

### C. NYCHRL

Courts "must analyze NYCHRL claims separately and independently from any federal and state law claims" and must construe NYCHRL provisions broadly and in favor of the plaintiff. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).

In *Snowden v. Trustees of Columbia University*, the Second Circuit held that the district court properly dismissed a plaintiff's NYCHRL claim after conducting a separate analysis and focusing on the "broad and remedial" aspects of the NYCHRL. 612 F. App'x 7, 10 (2d Cir. 2015).

Under NYCHRL, it is unlawful for any owner of a place or provider of public accommodation to deny an individual full and equal enjoyment, on equal terms and conditions, of accommodations or services based on an individual's disability. N.Y. City Admin Code §§ 8-107(4). Unlike in Westchester County, Defendant offers WAVs in New York City.[5] (Compl. ¶¶ 46 – 49). The issue is, according to Plaintiffs, that there are long wait times for WAVs in New York City for those individuals requiring WAVs because Defendant does not provide enough such vehicles. (*Id.* ¶ 49.) There is no case law to indicate that extended wait times for a public accommodation is a NYCHRL violation. While it is a NYCHRL violation to entirely exclude a person with a disability from accessing a public accommodation, see *All Island Airport Serv., Inc. v. N.Y. State Div. of Human Rights*, 127 A.D.3d 967, 968 (N.Y. App. Div. 2015), that is not the situation before the Court. Defendant offers, albeit in a small number, WAVs in New York City. Analyzing Plaintiffs' NYCHRL claims separately, and construing the provisions broadly, the Court finds that Plaintiffs failed to state a facially plausible claim under the NYCHRL because they did not plausibly allege a NYCHRL violation.

---

[5] By enabling access mode in the Lyft application, users seeking rides in New York City have the option to hail a WAV. Lyft, https://help.lyft.com/hc/en-us/articles/115013081668-Accessible-vehicle-dispatch (last visited Nov. 21, 2018). Courts may take judicial notice of publically available websites when the authenticity is not in dispute. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015); *In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 367–68 (E.D.N.Y. 2010). Parties do not dispute the authenticity of the Lyft application or website. (Def.'s Mot. p. 7); (Compl. ¶ 48 n.2.)

**CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss the Amended Complaint is GRANTED in part and DENIED in part. Defendant's motion to dismiss Plaintiffs' NYCHRL claim is GRANTED and Defendant's motion to dismiss Plaintiff WDOMI's NYSHRL claim is GRANTED. Defendant's motion to dismiss Plaintiffs' ADA claims and Plaintiff Lowell's NYSHRL claim is DENIED. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 31. Defendant shall file its answer on or before December 20, 2018. The parties are directed to appear before this Court for an initial pre-trial conference on January 4, 2019 at 10:00 AM. The parties are also directed to confer, complete, and submit to the Court the attached amended case management plan before the initial pre-trial conference. This constitutes the Court's Opinion and Order.

Dated:    November 29, 2018                   SO ORDERED:
          White Plains, New York

                                               NELSON S. ROMÁN
                                           United States District Judge

-------------------------------------------------------------x

                        Plaintiff(s),

      - against -

                        Defendant(s).

**CIVIL CASE DISCOVERY PLAN
AND SCHEDULING ORDER**

_____ CV _____ (NSR)

-------------------------------------------------------------x

This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by
_____.

4. Amended pleadings may be filed until _____.

5. Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6. First request for production of documents, if any, shall be served no later than
_____.

7. Non-expert depositions shall be completed by _____.

      a. Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

      b. Depositions shall proceed concurrently.

      c. Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8.  Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.  Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)


SO ORDERED.

Dated: White Plains, New York

_____

_____
Nelson S. Román, U.S. District Judge