

1 NORTH BROADWAY, SUITE 900
WHITE PLAINS, NY 10601
Phone: (914) 298-3281
Fax: (845) 562-3492
www.fbfglaw.com

August 23, 2021

BY ECF (REDACTED) AND OVERNIGHT MAIL (UNREDACTED)
Honorable Andrew E. Krause
United States Magistrate Judge
The Hon. Charles L. Brieant, Jr. Federal Building and United States Courthouse
300 Quarropas Street
White Plains, NY 10601

      Re:    *Lowell, et al. v. Lyft, Inc.*, No. 7:17-cv-06251-PMH-AEK (S.D.N.Y.)

Dear Judge Krause,

      We write on behalf of Westchester Disabled on the Move, Inc. ("WDOMI") and Harriet Lowell to seek a pre-motion conference to address several ripe discovery disputes. Defendant Lyft Inc. ("Lyft") refuses to provide corporate representatives to testify regarding several topics designated in Plaintiffs' Rule 30(b)(6) deposition notice. The topics are relevant to this nationwide reform class action concerning Lyft's violations of the Americans with Disability Act ("ADA") and New York State Human Rights Law ("NYSHRL"). Lyft cannot show that preparing its witness on these topics is unduly burdensome.

**Meet & Confer Background**

      Plaintiffs made every effort to comply with Rule 30(b)(6)'s conferral requirement, explaining in detail the scope of their requests over the course of a number of conferrals starting in April 2021. Plaintiffs withdrew certain topics and modified others. Defendant took a far more aggressive approach.

      On April 16, 2021, Plaintiffs served a Rule 30(b)(6) notice, attached as Ex. A. Shortly after serving that notice, Plaintiffs offered to confer about the topics. The parties conducted several conferrals in April, May, and June. While Lyft generally stated that it had some objections, it failed to articulate any of them prior to this month. Defendant began to identify likely Rule 30(b)(6) witnesses on April 26 and May 6. Lyft identified certain preliminary Rule 30(b)(6) witnesses on June 14, 2021 and stated that Lyft would discuss its objections "in more depth" after Plaintiffs provided dates for WDOMI's Rule 30(b)(6) testimony. Defendant identified additional Rule 30(b)(6) witnesses on June 28, without mention of objections to Plaintiff's Rule 30(b)(6) notice. Lyft only articulated the objections upon which it now stands on August 15 (attached as Ex. B) – nearly four months after the notice was served. During additional conferrals on August 12, 2021 and August 19, 2021, Plaintiffs agreed to withdraw certain topics and modify others, and offered to explain all topics in detail so that Defendant could properly prepare its witnesses. During the conferrals, and during the one day of 30(b)(6) testimony Plaintiffs took so far, it became

apparent that Lyft has failed to proffer a properly prepared witness to cover topics about which it did not object.[1]

The parties have now reached impasses with respect to the following topics:

1. Whether Lyft's boilerplate objections have merit or effect.
2. Whether Lyft must proffer a properly prepared witness regarding its wheelchair-accessible vehicle ("WAV")-related programs, pilots and initiatives, including LyftSub.
3. How Lyft assesses the profitability of certain other programs and initiatives.
4. Whether Lyft must testify regarding the value of publicity, branding and related assessments.
5. Whether Lyft must testify regarding the organizational structure of individuals involved in its WAV-related programs during the class period.

**Lyft's Boilerplate Objections Are Without Merit**

Lyft objects to every topic on the grounds that each "fails to describe with reasonable particularity the matters for examination as required by Rule 30(b)(6) of the Federal Rules of Civil Procedure" and that the topic (or portions of the topic) is "vague and ambiguous." Ex. B, *passim*. Lyft's "[b]oilerplate objections are improper." *Leibovitz v. City of New York*, No. 15-546 2017 WL 462515, at *2 (S.D.N.Y. Feb. 3, 2017) (quotation omitted) (collecting cases). Moreover, the noticed topics are easily comprehensible and Plaintiffs have made every effort to confer with Lyft to resolve any conceivable misapprehensions. Notably, Lyft failed to articulate how any specific topic was infirm owing to these boilerplate objections.

**Lyft Must Testify Regarding Its WAV-Related Initiatives,** ▌

Topics nos. 2, 6, 9, 10, and 13 concern Lyft's programs, initiatives, pilots, and efforts to make WAVs available. These initiatives include 

Plaintiffs took one day of 30(b)(6) testimony on August 18, 2021, where Joyce Chan, designated to testify on topics Nos. 6, 9 and 10, was utterly unprepared to discuss ▌ During a conferral the next day, Lyft argued that ▌ was not relevant to any of the topics because ▌ However, Plaintiffs requested

---

[1] On April 5, 2021, Lyft served a Rule 30(b)(6) notice, attached as Ex. C, requesting that WDOMI testify as to 17 topics. Plaintiffs conferred with Lyft in April and May and prepared witnesses to fully testify. WDOMI's 30(b)(6) witnesses completed their testimony over the course of two days.

testimony regarding "WAV-related programs, pilots, and initiatives." Ex. A, Top. No. 6. Oxford Dictionary describes an initiative as a "plan for dealing with a particular problem or achieving a particular purpose." *See* Initiative, Oxford Learner's Dictionary, https://www.oxfordlearnersdictionaries.com/us/definition/english/initiative (last visited Aug. 21, 2021). ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Nonetheless, Plaintiffs offered to revise the topics to specifically include "proposals" or to specifically mention ▆▆▆ Lyft's counsel nonetheless stated that Lyft would not designate any corporate witness to testify regarding ▆▆▆ or any other nationwide efforts besides one unspecified assessment in 2019-2020, even though ▆▆▆▆▆▆▆▆▆▆, on the specious ground that testimony regarding ▆▆▆ was not proportional to the needs of the case.³

▆▆▆ and any similar initiatives that Lyft has not disclosed go to the heart of this case, because Plaintiffs seek an injunction requiring Lyft to expand its WAV services. The parties contest the feasibility of such an expansion, as Lyft argues that it is excused from complying with the ADA because of the expense.⁴ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

---

² Plaintiffs' knowledge of ▆▆▆ is limited by apparently overzealous privilege assertions. Lyft produced over 2,500 pages of privilege log, listing over 25,000 assertedly privileged documents. Plaintiffs believe the vast majority of documents relating to ▆▆▆ have been improperly designated as privileged, but Plaintiffs have not been able to verify this belief because Lyft's privilege logs do not comply with Local Rule 26.2(A)(2)(a) in that they do not describe the "general subject matter" of the allegedly privileged documents. *See* Sample of Lyft's privilege log, attached as Ex. G (describing emails as "Confidential internal communication regarding legal advice" without giving any clue as to the general subject matter). The parties are conferring on this issue.

³ It was improper for Lyft to simply produce a Rule 30(b)(6) deponent who could not testify as to LyftSub rather than move for a protective order. *See, e.g.*, *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, No. 09-3701, 2013 WL 6439069, at *2 (S.D.N.Y. Dec. 9, 2013) ("The weight of the authority holds that a party believing it has received a flawed 30(b)(6) notice may not merely rest upon its objections, but must move for a protective order.").

⁴ This argument is without merit. *See, e.g.*, *Am. Council of Blind of New York, Inc. v. City of New York*, 495 F. Supp. 3d 211 (S.D.N.Y. 2020) (granting summary judgment in an ADA case where cost of complying with the ADA will exceed hundreds of millions of dollars annually); ECF No. 153-3 (declaration stating that defendant will spend $359 million to comply with the summary judgment order); ECF No. 164 (order requiring a hearing to determine whether the expenditure proposed by defendant is sufficient). Moreover, Plaintiffs will show that Lyft would ultimately profit by expanding WAV-service, as Lyft currently minimizes its WAV-related income while inefficiently spending WAV-related moneys.

3

**Lyft Must Testify Regarding How It Assesses**
**The Profitability Of Certain Non-WAV-Related Programs, Pilots, And Initiatives**

Lyft is a multibillion dollar company that was founded in 2012 but has never been profitable. Lyft runs many of its programs – including its core business ride-sharing programs – for long periods of time while they are not profitable – often incurring massive losses. Plaintiffs seek discovery as to how Lyft evaluates profitability over time for non-WAV programs, as that analysis may inform what reasonable modifications are feasible for Lyft to make to serve people with disabilities.

Topic No. 8 sought concerns the manner by which Lyft assesses the profitability of all non-WAV-related programs, pilots, and initiatives. Plaintiffs offered to narrow the topic to include the manner in which Lyft assesses the profitability of programs involving Joyce Chan, Lyft's Rule 30(b)(6) witnesses (Lyft offered this testimony), as well as three apparently non-profitable programs that Plaintiffs believe may be substantially more costly and less remunerative than the WAV program Plaintiffs seek in this litigation: autonomous vehicles ("AVs"), scooters and bikes.

Lyft refused to produce a witness on any of the three programs, arguing that Plaintiffs should be satisfied with Ms. Chan's largely irrelevant testimony. But the programs in which Ms. Chan was involved are all miniscule programs (relative to Lyft's overall budget) that cost less than $5 million annually. These programs are simply not analogous to the cost of the nationwide WAV program Plaintiffs seek or even to Lyft's current poorly-run program that costs approximately $20 million annually. Also, Plaintiffs expect to be able to prove that a true nationwide WAV-program would reach profitability far more quickly than many other Lyft programs, including AVs, scooters, and bikes. It is not burdensome for Lyft to prepare a witness to testify on this topic. *See Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Royal Bank of Scotland Grp. PLC*, No. 11-1383, 2015 WL 13634404, at *5 (D. Conn. Aug. 20, 2015) (ordering party to produce Rule 30(b)(6) witness "because the court has concluded (i) that FHFA's Rule 30(b)(6) topics are relevant and (ii) that the RBS Defendants have not met their burden of showing the discovery is duplicative or showing it would be practically impossible to prepare a witness on the noticed topics . . ."); *Concerned Citizens of Belle Haven v. Belle Haven Club*, 223 F.R.D. 39, 43 (D. Conn. 2004) ("Although the documentation may be voluminous, and different people affiliated with the Club may hold the information, this does not absolve the Club from its responsibility to produce a witness who can provide information within the Club's knowledge or reasonably available to it.").

**Lyft Must Testify Regarding The Value of**
**Publicity, Branding And Related Assessments**

Contrasting itself with Uber, Lyft touts itself as a progressive company that works to combat "inequality" and provide "transportation solutions for the aging, disabled, unhealthy and underprivileged." SEC S-1 Filing, excerpt attached as Ex. E, p. 128. Lyft claims to provide "transportation for all" to help the "[m]illions of people [who] lack access to basic needs because they can't get a ride." See Lyft Webpage, Transportation For All, attached as Ex. F. As just one of many examples, Lyft recently donated $1 million to the ACLU, reaping good press. *See* Neetzan Zimmerman, *Lyft will donate $1M to ACLU after Trump immigration ban*, THE HILL (Jan. 29,

4

2017), https://thehill.com/blogs/blog-briefing-room/news/316729-lyft-will-donate-1-million-to-aclu-after-trump-immigration-ban.

Lyft very likely receives an economic benefit from marketing itself as a champion for equality and for underdogs. Plaintiffs therefore reasonably believe that Lyft would receive a marketing benefit if it made the reasonable accommodations Plaintiffs seek in this lawsuit and provided equal services to disabled people who require WAVs. Plaintiffs seek testimony regarding Lyft's assessments of "the value of the publicity and brand reputation generated by representing itself as a progressive, civic-minded, and/or accessible ridesharing company." Ex. A, Top. No. 8.

Lyft objected that it is impossible to assess the value of publicity and that such testimony is not relevant or proportional. Ex. B., Obj. to Top. No. 8. Nonsense. Although "placing dollar values on publicity is an inexact science", courts recognize the "public relations value of . . . publicity." *A & H Sportswear Co. v. Victoria's Secret Stores, Inc.*, 167 F. Supp. 2d 770, 787 (E.D. Pa. 2001). Tellingly, Lyft has not stated that it does not value publicity. Plaintiffs are entitled to learn how Lyft values publicity so as to better understand the value of the positive publicity Lyft would receive if it served the disabled.

**Lyft Must Testify Regarding The Organizational**
**Structure Of Individuals Involved In Lyft's WAV-Programs During The Class Period**

Plaintiffs requested that Lyft provide testimony regarding "[t]he organizational structure of individuals involved in Lyft's wheelchair-accessible vehicle ("WAV") programs." Ex. A, Top. No. 1. Lyft refuses to provide a witness who can testify regarding the individuals involved in Lyft's WAV programs before 2019. However, Lyft's WAV programs were launched by at least 2017 and the statute of limitations extends to 2013. Plaintiffs are entitled to know who at Lyft was involved in planning, decision-making, and implementation of WAV-programs prior to 2019. "In general, courts allow discovery to extend to events before and after the period of actual liability so as to provide context." *Karinski v. Stamps.com, Inc.*, No. 19-01828, 2020 WL 5084093, at *2 (C.D. Cal. July 21, 2020) (quoting *In re Dockers Roundtrip Airfare Promotion Sales Practices Litig.*, 2010 WL 11515318, at *5 (C.D. Cal. Aug. 1, 2010)). Here, Plaintiffs simply seek testimony during the class period or, more likely, the earliest date that Lyft began considering WAV programs. Lyft has not articulated a colorable reason why early WAV-related decisions are not relevant to this action.

Notably, Lyft demanded that WDOMI provide Rule 30(b)(6) testimony regarding its "organizational structure" without date limitations and without limiting the testimony to WAV-related corporate structure. Ex. C, Top. No. 2. WDOMI complied with that request and provided a witness capable of testifying as to WDOMI's corporate structure dating back to the last millennium.

For the reasons set forth above, Plaintiffs respectfully request that the Court schedule a pre-motion conference at its earliest convenience. We thank the Court for its continued attention to this matter.

Respectfully submitted,

*/s/ Jeremiah Frei-Pearson*
Jeremiah Frei-Pearson
Chantal Khalil
FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
1 North Broadway, Suite 900
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 824-1561
jfrei-pearson@fbfglaw.com
ckhalil@fbfglaw.com

Michael F. Ram (*Pro Hac Vice*)
Morgan and Morgan Complex Litigation Group
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Tel:  415-358-6913
mram@forthepeople.com

*Attorneys for Plaintiffs and the putative classes*

CC:
All counsel of record by ECF (redacted) and email (unredacted)