

FOLGER LEVIN LLP
Attorneys at Law

199 Fremont Street, 20th Floor
San Francisco, California  94105

PHONE 415.625.1050
WEBSITE folgerlevin.com

August 30, 2021

**VIA ECF**

Hon. Andrew E. Krause
United States Magistrate Judge
The Hon. Charles L. Brieant, Jr.
Federal Building and United States Courthouse
300 Quarropas Street
White Plains, NY 10601

      Re:    *Lowell, et al. v. Lyft, Inc.*
                <u>Case No. 7:17-cv-06251-PMH-AEK (S.D.N.Y.)</u>

Dear Magistrate Judge Krause,

We write on behalf of Lyft, Inc. ("Lyft") in response to Plaintiffs' August 23 letter. As detailed below, Plaintiffs, by their 30(b)(6) notice, failed to identify the topics they now seek. Indeed, four of the topics – LyftSub, autonomous vehicles ("AV"), bikes, and scooters – were identified for the first time on August 13 and 18. Lyft cannot be faulted for failing to read Plaintiffs' broadly and generally phrased 30(b)(6) topics to include these specific items. To the contrary, in response to Plaintiffs' 30(b)(6) notice, Lyft acted in good faith to identify seven knowledgeable individuals to testify on 21 separate topics. The Court should deny Plaintiffs' requested relief.

                        **I.**        **Meet and Confer Background**

As the Court is aware, this case has been pending since August 17, 2017. Throughout 2020, Lyft made a substantial document production comprising over 65,000 documents, approximately 55,000 of which were produced *over one year ago*, on or before August 20, 2020. In 2021, Lyft cooperated with Plaintiffs in responding to *ad hoc* requests for additional documents. For example, on March 5, 2021, Lyft produced tens of thousands of lines of data concerning consumer ridesharing nationwide, even though the material was not called for by any previous requests.

Also in 2021, Plaintiffs had the opportunity to sit in on a trial in a case against Lyft pending in the Northern District of California, *ILRC v. Lyft*, No. C 19-01438 WHA (N.D. Cal. 2019), which presents nearly identical issues as this case. Lyft produced the entire case file from that action to Plaintiffs, including Lyft's summary judgment papers, its class certification opposition, its expert reports, and deposition transcripts. In addition, the entire document production from *ILRC* was turned over to Plaintiffs in May.[1]

---

[1] Also in May, Lyft produced its privilege logs. Three months later, on August 20, 2021, Plaintiffs for the first time claimed that Lyft's logs were purportedly deficient. Plaintiffs' claim is unfounded. Ex. 3 at 1. While the logs are voluminous, that is because during the time periods covered by the collection, Lyft was

Hon. Andrew E. Krause
August 30, 2021
Page 2

In addition to producing documents and data, over the past several months, Lyft has attempted to move forward with depositions so that the parties could comply with the discovery cutoff date set by this Court. Lyft took the depositions of Plaintiff Harriet Lowell and her husband in February 2021. Lyft issued a 30(b)(6) notice on WDOMI April 5 but was forced to inquire several times before it was finally able to take the depositions on August 17 and 20.[2] Lyft also attempted to encourage Plaintiffs to schedule the depositions of Lyft witnesses. In emails dating back to January 25, Lyft wrote: "please let us know as soon as possible which depositions from Lyft you would like to take, so that we can begin the scheduling process." **Exhibit 1**. On July 12, Plaintiffs' counsel stated that beginning depositions in July was "a bit early." **Exhibit 2**.

As for Plaintiffs' 30(b)(6) notice to Lyft, Lyft responded to the notice by diligently working to identify the most appropriate – and knowledgeable – designees to testify regarding the discernable topics in Plaintiffs' notice.[3] Lyft's designees include Isabella Gerundio, who has worked on WAV exclusively since she joined the company in early 2019 and oversees the daily operations of Lyft's WAV team, to testify on topics such as WAV costs and revenues, Lyft's efforts to make WAVs available on its platform nationwide, and Lyft's "Access mode" feature; Richard Zhou, who prepared the six data reports produced on March 5, to testify regarding his compilation of those reports and how Lyft tracks its data internally; and Joyce Chan, Vice President of Product Operations and Analytics at Lyft, to testify regarding Lyft's assessment of the profitability of various programs and Lyft's long-term WAV planning, among other things. *See* Pl. Ex. B. Ms. Chan was up first, and testified on August 18.

Five days before Ms. Chan's deposition, counsel for Plaintiffs asked to meet and confer regarding Ms. Chan's testimony. During that conferral on August 13, Plaintiffs for the first time stated that Topic 7 – "The manner by which Lyft assesses the profitability of non-WAV related programs, pilots, and initiatives, including but not limited to key performance indicators and returns on investment, the results of such assessments, and all persons involved in such assessments" – was intended to cover not only non-WAV-related programs, pilots, and initiatives of Lyft's *ridesharing business,* but also AVs, bikes, and scooters. Lyft objected to Plaintiffs' effort to expand discovery in this action into these different lines of business that are wholly unrelated to rideshare, and stated that Ms. Chan, who is a Vice President in Lyft's ridesharing division, would *not* be prepared to testify on AVs, bikes, or scooters. Lyft did, however, agree to have Ms. Chan testify on other ridesharing topics, such as Lux and XL, as requested by Plaintiffs. **Exhibit 3**.

On August 18, Ms. Chan sat for over 8 hours in her deposition. Despite being prepared to testify on a wide range of programs including Lux and XL modes as Plaintiffs had specifically

---

involved in multiple lawsuits and regulatory matters concerning WAV. The logs include all information required by the Local Rules, including the document subject and description of the privilege.

[2] For example, on June 14, Lyft wrote: "Please provide dates the weeks of June 28, July 19 or July 26 when these witnesses are available for depositions via Zoom." Ex. 2 at 6.

[3] The timing of the identification of designees had been previously agreed to. On June 14, Lyft counsel noted: "We have preliminarily identified the following witnesses from Lyft who will testify on the PMK topics you circulated (**subject to certain objections**). We reserve the right to supplement or modify this list, including the specific topics to be handled by each witness. In addition, please be advised that, **based on the overbreadth of your topics, individuals identified may not address the entire subject matter**. After we hear about your witnesses' availability we can begin identifying dates for these initial depositions, **and discuss our objections in more depth**." Ex. 2 at 6.

*requested*, Ms. Chan was not asked a single question about the manner in which Lyft assesses the profitability of either Lux or XL. Plaintiffs did, however, for the first time raise the subject of "LyftSub" – an idea that a former Lyft employee (not executive), Chris Wu, proposed in 2018, but was never approved or implemented.

## II. Plaintiffs Failed To Identify Topics With Reasonable Particularity

By their letter, Plaintiffs assert that Lyft has wrongly refused to prepare designees on four topics – LyftSub, AVs, bikes, and scooters. However, Plaintiffs are not entitled to witnesses on these topics, because they were never identified with reasonable particularity. *See Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002) (deposition should not be compelled where deposition notice not reasonable particularized); *Seliger v. Breitbart News Network, Ltd. Liab. Co.*, 2021 U.S. Dist. LEXIS 33325, at *2-3 (S.D.N.Y. Feb. 22, 2021) (in assessing "reasonable particularity" courts should consider (1) the nature of the topics; (2) whether the descriptions of the topics include examples of questions and clarifying information such as references to specific named policies, documents, incidents, and the like; and (3) whether a reasonable person reading the notice would understand how to prepare for the deposition).[4]

### A. Lyft Need Not Identify A Designee To Testify Regarding "LyftSub"

"LyftSub" was a proposal in 2018 that failed to make it beyond a PowerPoint presentation. Plaintiffs nonetheless claim that such an idea nonetheless constitutes a "WAV-related program, pilot or initiative" under their Topic 6 on which Ms. Chan should have been prepared to testify. The Court should reject Plaintiffs' argument for at least three reasons.

First, Plaintiffs claim that five of their 30(b)(6) topics require a designee on ideas such as LyftSub that were never approved or implemented. A plain reading of those topics demonstrate that they do not:

- **Topic 2**: The *costs associated with* Lyft's initiatives to make WAVs available throughout the country, including but not limited to driver incentives, driver bonuses, purchasing WAVs, leasing WAVs, partnerships, and marketing.
- **Topic 6**: The *manner* by which Lyft *assesses the profitability* of WAV-related programs, pilots, and initiatives, including but not limited to key performance indicators and returns on investment, the results of such assessments, and all persons involved in such assessments.[5]
- **Topic 9**: Lyft's decisions regarding whether to implement a nationwide approach to providing WAV services, or a regional patchwork of approaches.
- **Topic 10**: Financial analyses relating to Lyft's decision-making and efforts to make WAV services available regionally and/or nationwide, including but not limited to driver incentives,

---

[4] Plaintiffs assert that Lyft's failure to seek a protective order was procedurally invalid. However, Lyft did not know until August 13 and 18, respectively, that Plaintiffs' notice implicated AVs, bikes, and scooters, or "LyftSub," which terms do not appear in Plaintiffs' notice. Lyft requests that the Court treat this letter as leave to file a motion for a protective order, if so required.

[5] Referring to Topic 6, Plaintiffs' letter states that they "requested testimony regarding 'WAV-related programs, pilots, and initiatives," omitting the critical clause "The manner by which Lyft assesses the profitability of WAV related…," which narrows the topic considerably.

    all persons and entities involved in performing such analyses, and all recipients of such analyses.
- **Topic 13**: All persons involved in developing, approving, implementing, and tracking Lyft's WAV related programs, initiatives, and pilots.

None of these topics can be read to encompass "LyftSub", which was a proposal to run a two- or three-city pilot that was never approved or implemented.[6]

Second, the burden of preparing a corporate witness on a topic so far removed from any plausible claim at issue is disproportionate to the needs of this case. LyftSub was a proposal to create a subsidiary involved in WAV. Employees involved in developing the proposal have left Lyft or no longer work in WAV. The concept of creating a wholly separate business or subsidiary has nothing whatsoever to do with any plausible theory Plaintiffs could advance for liability under Title III of the ADA. *See Dominguez v. Taco Bell Corp.*, 2020 U.S. Dist. LEXIS 105811, at *9 (S.D.N.Y. June 17, 2020) ("A plain reading of this text requires a place of public accommodation … in certain situations, to modify its 'policies, practices or procedures' so that its goods and services are available to disabled persons. The text does not require the entity to modify the goods or services it provides.") (citing *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1115 (9th Cir. 2000)); *Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 73 (2d Cir. 2012) (noting Title III expressly exempts private entities from purchasing or leasing "accessible automobiles");[7] *Armstrong Pump, Inc. v. Hartman*, No. 10-CV-446S, 2016 U.S. Dist. LEXIS 172207, at *10-11 (W.D.N.Y. Dec. 13, 2016) (discussing proportionality).

Third, Plaintiffs do not need a corporate designee. They noticed the depositions of Christopher Wu and Don Lee. Mr. Wu, the former employee who was a proponent of LyftSub, is scheduled to testify on September 14, and can speak to it in his individual capacity. Likewise, Mr. Lee, copied on the email attached to Plaintiffs' letter as Exhibit D, will also be deposed.

    **B.**    **AV, Bikes, And Scooters Were Never Identified And Are Not Related To The Present Dispute**

Plaintiffs' Topic 7 is "The *manner by which* Lyft assesses the profitability of non-WAV-related programs, pilots, and initiatives, including but not limited to key performance indicators and returns on investment, the results of such assessments, and all persons involved in such assessments." Plaintiffs claim that – despite this being a case about Lyft's ridesharing platform – Lyft should prepare a corporate designee on entirely separate lines of business, including AVs, bikes, and scooters.

---

[6] On August 18, Plaintiffs seemed taken aback to learn that LyftSub had never been approved, because they failed to review documents produced to them from the ILRC case in May. Plaintiffs admitted they had not reviewed the documents as of August 25, when they alerted Lyft to a technical problem with downloading the files that were originally sent to them on May 21. **Exhibit 4**.

[7] This standard under ADA Title III is categorically different from that applied in the case arising under Title II of the ADA, cited by Plaintiffs at footnote 4 of their letter (*Am. Council of Blind of New York, Inc. v. City of New York*, 495 F. Supp. 3d 211 (S.D.N.Y. 2020)) (addressing accessibility of New York City's signalized crosswalks to blind and low-vision pedestrians). Title II applies to public, not private, entities, and ensures public access to government benefits for individuals with disabilities.

To read Topic 7 as requiring a representative on non-ridesharing lines of Lyft's business is not proper. *Seliger*, 2021 U.S. Dist. LEXIS 33325, at *3 ("it is disfavored to frame notices of deposition topics in an open-ended manner, such as using language like "including but not limited to."); *Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002) (same). Lyft made a reasonable effort to identify a competent witness, Ms. Chan, who was prepared to provide testimony on assessing profitability of various non-WAV ridesharing programs at the company (including Lux and XL, topics Plaintiffs did not bother asking about).

Furthermore, AVs, bikes, and scooters are irrelevant. This is a case about consumer ridesharing, not bikes, scooters, and self-driving cars. Lyft should not be compelled to prepare a corporate designee on these areas, mentioned for the first time more than four years after this case was filed and four months after the deposition notice was served. If Plaintiffs' position is that these lines of business lose money (though why that matters is not clear), their expert witness can rely on Lyft's corporate filings and testify accordingly.

### C.  Valuation Of "Branding" Not An Appropriate Topic For 30(b)(6) Designee

Plaintiffs' Topic Number 8 is: "The manner by which Lyft assesses the value of the publicity and brand reputation generated by representing itself as a progressive, civic-minded, and/or accessible ridesharing company, the results of such assessments, and all persons involved in such assessments." As a threshold matter, there is no evidence that Lyft takes any steps to assess the value of being known as a progressive company, nor would it know how to prepare a witness on the topic. *Seliger*, 2021 U.S. Dist. LEXIS 33325, at *2-3 (in assessing 30(b)(6) topics, courts look to whether a reasonable person reading the notice would understand how to prepare for the deposition). Moreover, Plaintiffs have failed to articulate how this topic is related to the legal claims at issue in this case. Brand valuation has nothing to do with whether providing WAV service is a reasonable modification to a policy, practice, or procedure of Lyft. *See* 42 U.S.C. § 12182(b)(2)(A)(ii). Furthermore, if Plaintiffs believe that the remunerative effect of positive marketing is so significant, they can present an expert witness to testify on the topic. Forcing Lyft to designate and prepare a witness to testify on it is improper.

### D.  Lyft Need Not Identify A Designee Regarding Five Years Of Organizational Structure

Topic No. 1 seeks "The organizational structure of individuals involved in Lyft's wheelchair accessible vehicle ("WAV") programs." Plaintiffs did not seek a designee to testify regarding the historical organizational structures, from 2017 to 2021, and the Court should reject their effort to expand this topic now. Ms. Gerundio is prepared to testify on the organizational structure as it exists today and can also testify as to any organizational structure dating back to 2019, when she first joined Lyft.

### III.  Conclusion

Lyft is confident that the seven competent witnesses it has identified can fully cover all topics that are reasonably related to any issues genuinely in dispute in this litigation. Lyft respectfully

requests that the Court deny Plaintiffs' demand that Lyft prepare additional 30(b)(6) designees.

Sincerely,

Marie Jonas

Enclosures

1124172.5