

FOLGER LEVIN LLP
Attorneys at Law

199 Fremont Street, 20th Floor
San Francisco, California  94105

PHONE 415.625.1050
WEBSITE folgerlevin.com

December 6, 2021

**VIA ECF**

Hon. Andrew E. Krause
United States Magistrate Judge
The Hon. Charles L. Brieant, Jr.
Federal Building and United States Courthouse
300 Quarropas Street
White Plains, NY 10601

     Re:   *Lowell, et al. v. Lyft, Inc.*
               Case No. 7:17-cv-06251-PMH-AEK (S.D.N.Y.)

Dear Magistrate Judge Krause,

On behalf of defendant Lyft, Inc., we submit this letter under Local Civil Rule 37.2 and your Honor's individual rules of practice, to seek a ruling on two discovery issues that the parties have not been able to resolve on their own. First, Plaintiffs violated this Court's September 27 order requiring the identification of "very likely" putative class declarants. Instead of identifying a subset of approximately 84 putative class members who are "very likely" to submit declarations, Plaintiffs instead produced on October 27 and November 3 undifferentiated lists of approximately 232 putative class and other witnesses. To remedy the violation, Lyft requests that it be allowed to take the depositions of putative class members who actually submit declarations in support of Plaintiffs' Motion for Class Certification and be provided with any signed witness declarations and statements. Second, Lyft asks that the Court enforce the fact deposition cutoff date as to Plaintiffs, who failed to properly and timely serve Lyft's former Chief Operating Officer.

### I.    THE PARTIES HAVE MET AND CONFERRED

The parties have met and conferred in writing and in person regarding both subjects. Attached hereto as Exhibit 1 is an email dated December 2, 2021, regarding Plaintiffs' violation of the September 27 order. Attached hereto as Exhibit 2 is an email chain detailing Plaintiffs' efforts to subpoena a third party witness, Lyft's former COO Jon McNeill, for deposition. Exhibit 3 is a copy of the subpoena that a process server apparently taped to the door of Mr. McNeill's home on December 1. Because the email chain attached as Exhibit 2 covers a number of issues, we have outlined in red those portions that pertain to Mr. McNeill. In addition to their correspondence, the parties conferred by telephone on December 3, 2021.

### II.    DISCUSSION

**A.    Based On Plaintiffs' Violation Of The September 27 Order, The Court Should Allow Lyft To Take Additional Depositions After Service Of Plaintiffs' Motion for Class Certification.**

At the September 27 conference, this Court considered the parties' detailed arguments

Magistrate Judge Krause
December 6, 2021
Page 2

regarding the timing of depositions of putative class members. *See* 9/27/2021 Transcript [Dkt. 150]. Lyft argued for efficiency, and asked that it be allowed to select deponents from among those putative class members who actually submit declarations in support of class certification. Plaintiffs disagreed, arguing that the same deadline for completing depositions should apply to both parties. *Id.*, at 6-8. While acknowledging the efficiency of Lyft's proposal, the Court agreed with Plaintiffs, and asked if Plaintiffs could identify some "subset" of the approximately 84 putative class members identified in their Third Amended Response to Lyft's Interrogatory No. 20 [Dkt. 119-1] who were likely to submit declarations. *See* 9/27/2021 Transcript [Dkt. 150] at 30. Plaintiffs' counsel responded they could do so, stating: "we could provide a list of people about whom we are reasonably certain . . . will provide testimony and that list would not include all of the 84 people previously identified." *Id.*, at 31.

Based on Plaintiffs' representations, the Court ruled that Plaintiffs should provide Lyft with "a **subset** of the list of potential declarants . . . who are **most likely or very likely** to serve as declarants" by October 25, and Lyft should choose from that subset to take depositions before the fact deposition cutoff date. *Id.*, at 97, 103 (emphasis added).

Plaintiffs apparently had no plan to comply with the Court's ruling. Less than one week after the September 27 conference, on October 1-3, Plaintiffs attended the Abilities Expo[1] in Edison, New Jersey, and set up a booth, for the ostensible purpose of identifying and collecting statements from potential class members and other witnesses. On October 25, instead of providing a list of a subset of the 84 putative class member declarants who were at issue at the September 27 hearing, Plaintiffs served a list of 149 "potential declarants" that appeared to include both putative class and non-class witnesses. Exhibit 4. Just two days later, on October 27, Plaintiffs served a supplemented list of **232** total "potential declarants." Exhibit 5.

Then, on November 3, Plaintiffs served three lists: (1) a list of **132** names labeled "Plaintiffs' Disclosed List of Potential Declarants (Class Members Only)" (hereinafter the "Nov 3 Class Declarants List"), (2) Supplemental Initial Disclosures attaching a 30-page list of individuals likely to have discoverable information that Plaintiffs may use in support of their claims, and (3) Plaintiffs' Second Supplemental Response to Lyft's Interrogatory No. 1. Exhibit 6. *Importantly*, **none of the 84 putative class members discussed at the September 27 hearing are among the 132 individuals identified in the Nov 3 Class Declarants List**. The Nov 3 Class Declarants List, moreover, does not purport to identify "very likely" declarants.

Because the December 1 cutoff date for fact depositions was fast approaching (*see* Sixth Amended Civil Case Discovery Plan and Scheduling Order [Dkt. 153]), Lyft selected six individuals for deposition based on Plaintiffs' November 3 disclosures. Three individuals - Katie Horsham, Jeff Payne, and Daniel Winterbottom - were selected from the Nov 3 Class Declarants List. The other three - John Harris, Peter Ruprecht, and Lucia Pons - were among those whose names were disclosed to Lyft for the first time on October 25 or 27, and identified by Plaintiffs as non-putative class declarants. Plaintiffs agreed to accept service for just two of the six witnesses identified by Lyft (Mr. Winterbottom and Mr. Ruprecht).

---

[1] The Abilities Expo, which took place at the New Jersey Convention and Expo Center from October 1-3, 2021, featured new products, including mobility products, for individuals with disabilities and senior citizens. *See* https://www.eventcrazy.com/Edison-NJ/events/details/51850-Abilities-Expo-New-York-Metro (last visited December 3, 2021).

Magistrate Judge Krause
December 6, 2021
Page 3

Lyft proceeded by attempting to serve and/or to contact the other four witnesses. What it learned as a result is that *none of the three putative "class declarants" Lyft chose for deposition are class members as defined in Plaintiffs' pleading*. See Am. Compl. [Dkt. 20], ¶¶ 116-118 (defining the class as those individuals who "want to, but have been deterred from signing up for Lyft's transportation network"). First, Lyft obtained the attached declaration from Mr. Payne (Exhibit 7), who was startled to learn that he was identified as a putative class declarant because he does not use a wheelchair for mobility and has never heard of this lawsuit. Second, Mr. Winterbottom admitted at his deposition that he downloaded the Lyft app and accepted the Terms of Service (which requires arbitration of all claims). Exhibit 8 (Winterbottom Draft Tr., at 17:9-24). Third, Ms. Horsham testified at her deposition that she does not know how Lyft works, does not know anyone who uses Lyft (or Uber), and she had never spoken with anyone about Lyft until she attended the Abilities Expo. Exhibit 9 (Horsham Draft Tr., at 18:3-21, 21:11-23:16).

Lyft also obtained a declaration from John Harris (Exhibit 10), who Plaintiffs identified as a "potential declarant" on October 25 and 27. As Mr. Harris's declaration shows, in addition to attending the Abilities Expo, Plaintiffs' counsel has apparently been reaching out to third parties in an effort to identify other witnesses. Mr. Harris met with Plaintiffs' counsel on November 2 (approximately one week *after* being identified to Lyft as a "potential declarant") to discuss a possible declaration. Mr. Harris ultimately refused to have his Chief Marketing Officer sign a declaration because it was factually inaccurate.

The declarations and deposition testimonies obtained by Lyft thus demonstrate that Plaintiffs made no effort to comply with this Court's ruling of September 27 or with Rule 26. That Plaintiffs ignored their obligation to comply with the Court's September 27 ruling is obvious: rather than trimming their list, they apparently seized on the September 27 ruling as an invitation to supplement their witness lists on the eve of the cutoff date for fact depositions, and headed to the Abilities Expo to identify additional witnesses and declarants.

The result is that more than four years after this lawsuit was filed and with just one month remaining before the fact deposition cutoff date (a date that has been extended numerous times), Plaintiffs identified 232 witnesses, the majority of whom had not been disclosed before October 27. And Plaintiffs are apparently not finished: on November 18, with less than two weeks remaining before the fact deposition cutoff, Plaintiffs disclosed two more witnesses (Exhibit 11), and on November 26, stated that they intend to continue supplementing their list of witnesses as "additional information becomes available." See Exhibit 2, 11/26/2021 email from J. Frei-Pearson.

By their conduct, Plaintiffs have wasted the Court's time, Lyft's time, and the time of the witnesses who were required to provide depositions or declarations. While the Court may wish to impose additional sanction on Plaintiffs for their conduct, the remedy Lyft seeks is narrowly tailored to achieve its objectives of gathering information concerning late-disclosed witnesses, including putative absent class members, while at the same time allowing this case to move forward to class certification, summary judgment, and if necessary, trial.

*First*, Lyft should be allowed to take at least five additional depositions of putative class members (with the total number of depositions to be confirmed at a later date), and be allowed to select the deponents from those individuals who actually submit declarations in support of Plaintiffs' Motion for Class Certification. *See, e.g., Frisbie v. Feast Am. Diners, LLC*, No. 17-CV-6270-FPG-MJP, 2020 U.S. Dist. LEXIS 81451, at *9 (W.D.N.Y. May 7, 2020) (allowing defendants to exceed the limit of 10 depositions in a collective FLSA action); *Vasquez v.*

*Leprino Foods Co.*, No. 1:17-cv-00796-AWI-BAM, 2019 U.S. Dist. LEXIS 165801, at *11 (E.D. Cal. Sep. 25, 2019) (granting leave to exceed ten deposition limit in light of declarations submitted in opposition to class certification). Waiting until the actual declarations are submitted makes sense, so that Lyft is not wasting the witnesses' time when the chosen witnesses may never submit a declaration. Moreover, as the recent deposition of Ms. Horsham showed, the depositions are needed for Lyft to oppose class certification. Absent her deposition, Lyft would not have known that the first time she talked to anyone about Lyft was at the Abilities Expo. Lyft should be permitted to take such limited discovery to test Plaintiffs' implicit representation that such individuals fit the class definition and otherwise support Rule 23 factors. The scheduling order should be modified to allow Lyft to take this additional discovery.

*Second*, Lyft understands that Plaintiffs have collected, and are continuing to collect, signed statements from third party witnesses, including absent putative class members, for use in this litigation. The Court should require Plaintiffs to produce, without delay, *all* signed witness statements, declarations, and/or other factual documents, such as petitions, in their possession pursuant to Rule 26, as Plaintiffs cannot make a showing that these document should be protected as attorney work product.[2] *See, e.g., Diaz v. Devlin*, 327 F.R.D. 26, 30–32 (D. Mass. 2018) (following the majority view that "attorney prepared affidavits comprised of [third party witness's] factual statements are not protected by the work-product doctrine); *FDIC v. Arrillaga-Torrens*, 212 F. Supp. 3d 312, 367-68, 370 (D.P.R. 2016) (trial is intended to "be less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest extent"; ordering affidavit to be disclosed in compliance with Rule 26 disclosure obligations); *Ford Motor Co. v. Edgewood Properties, Inc.*, 257 F.R.D. 418, 422–423 (D.N.J. 2009) (that counsel prepared the affidavit does not protect it from disclosure). The decisions in this district are consistent with Lyft's requested relief. For example, *Inst. For the Dev. Of Earth Awareness v. People for the Ethical Treatment of Animals ("IDEA"),* 272 F.R.D. 124, 125 (S.D.N.Y. 2010), involved a request for production of draft affidavits in a case where the final affidavits had been filed and the existence of these non-party witnesses had been timely disclosed. As the court in *IDEA* observed, even if a document constitutes work product, it may be ordered produced upon showing of "substantial need." *Id.*; *see also Lujan v. Cabana Mgmt.*, 284 F.R.D. 50, 60-61 (E.D.N.Y. 2012) (same; refusing to strike affidavits prepared shortly before their public filing); *Stokes v. City of N.Y.,* 2006 U.S. Dist. LEXIS 50480, *7 (E.D.N.Y., July 24, 2006) (where plaintiff had an opportunity to depose the witness, she could not demonstrate "substantial need"). Here, in a case that has been pending for over four years, Plaintiffs waited until the eve of the fact deposition cutoff to identify these witnesses and obtain their declarations. For over four years, Lyft had no knowledge of these witnesses. It has no way now of obtaining the information in the statements without taking their depositions, and even when depositions are taken, the witnesses are disclaiming any knowledge of the statements based on coaching by counsel.[3] *See* Ex. 8 (Winterbottom Draft Tr.) at 18:17-20:15; Ex. 9 (Horsham Draft Tr.) at 19:17-28:4.

---

[2] Lyft does not believe that an attorney-client relationship was formed between plaintiffs' counsel and absent putative class members they met at the Abilities Expo, as such a relationship does not arise until after a class is certified. *See Dodona I, LLC v. Goldman, Sachs & Co.*, 300 F.R.D. 182, 187 (S.D.N.Y. 2014). Moreover, signed factual statements are not confidential communications transmitted for the purpose of obtaining legal advice.

[3] The Court may also order production of the statements as a sanction. *See Scantibodies Lab., Inc. v. Church & Dwight Co.*, No. 14cv2275 (JGK) (DF), 2016 U.S. Dist. LEXIS 154396, at *60-61 (S.D.N.Y. Nov. 4, 2016) ("the court has broad discretion to determine

The Court should order the limited relief Lyft seeks so that Lyft can prepare its defenses.

### B. Plaintiffs Should Not Be Permitted to Take Additional Fact Depositions Based On The December 1 Cutoff Date.

At the parties' conferral, Plaintiffs stated that they saw nothing wrong with their conduct, and that if Lyft were to be allowed to take depositions after service of Plaintiffs' motion in February, they, too, should be allowed to take depositions through February. The Court should reject this false equivalency.[4] Moreover, Plaintiffs have taken more than their fair share of depositions and deposition time. To date, Plaintiffs have deposed 12 former and current Lyft employees for a combined witness time of approximately 85 hours, whereas Lyft has deposed 7 individuals for a combined time of under 25 hours.[5]

The only deposition Plaintiffs have sought but have been unable to take is the deposition of Lyft's former COO, Jon McNeill. Mr. McNeill left Lyft in approximately July 2019. He lives in Massachusetts, and is independently represented by counsel. Plaintiffs purported to serve him on the deposition cutoff date, December 1, by taping the deposition subpoena to the door of his home. Under District of Massachusetts law, this does not constitute valid service. *Humphrey v. Town of Spencer*, 2016 U.S. Dist. LEXIS 36256, *2 (D. Mass., March 21, 2016).

The Court should declare Plaintiffs to be done with depositions. Such a ruling would be useful to Mr. McNeill who, if he were ever validly served in compliance with Rule 45, intends to move to quash the subpoena in Massachusetts based on the deposition cutoff date and the apex doctrine. *See, e.g., Harapeti v. CBS TV Stations Inc.*, 2021 U.S. Dist. LEXIS 167117, *8-9 (S.D.N.Y., September 2, 2021) (quashing the subpoena of a former senior executive because the subpoenaing party could not demonstrate that the witness had unique, personal knowledge of the claims at issue).

Lyft will be prepared to address these issues at the conference on December 13, 2021.

---

the type of sanction to impose upon a party, based on all the facts of the case…to ensure that a party will not benefit from its failure to comply with a court order.")

[4] Based on the parties' meet and confer, Lyft anticipates that Plaintiffs will once again claim that Lyft failed to make a timely production of documents by pointing to, among other things, Lyft's alleged failure to produce the documents from the ILRC lawsuit until August 27, 2021. As the Court knows, those documents were made available to Plaintiffs twice in May and June, but Plaintiffs apparently failed to properly download them. Plaintiffs need to stop blaming Lyft for their own error. Plaintiffs may also raise Lyft's recent production of documents it identified in the course of its court-ordered review of its privilege log. To the extent Plaintiffs intend to claim prejudice from this or any other purported "late production," they should identify which late-produced document revealed what relevant information that was not previously disclosed to them in Lyft's over 265,000 pages of documents.

[5] The total number of individuals deposed include those who were deposed in their individual and corporate capacities. The total number of hours include all hours from the start of the deposition until the end, without regard for breaks. The start and end times are estimated for a number of recent depositions where the final transcripts were unavailable.

Respectfully submitted,

Jiyun Cameron Lee

cc: All Counsel via ECF

1137593.5