UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

HARRIET LOWELL and WESTCHESTER DISABLED ON THE MOVE, INC., individually and on behalf of all others similarly situated,

                Plaintiffs,

      v.

LYFT, INC.,

                Defendant.

Case No. 7:17-cv-06251-PMH-AEK

**BRIEF FOR AMICUS CURIAE,
<u>PARALYZED VETERANS OF AMERICA</u>**

**TABLE OF CONTENTS**

FEDERAL RULE OF CIVIL PROCEDURE RULE 7.1 DISCLOSURE STATEMENT ............ 1

INTEREST OF THE AMICUS CURIAE ................................................................................. 1

PRELIMINARY STATEMENT ............................................................................................... 2

ARGUMENT ............................................................................................................................. 3

    I.      The ADA in Historical Context and How it Applies to Lyft. ................................ 3

    II.     The Classes Undoubtedly Satisfy Rule 23's Numerosity Requirement. ................ 4

           A.      The No-Access Regions Class is Sufficiently Numerous. .......................... 6

           B.      The "Some Access" Class is Sufficiently Numerous. ................................. 6

           C.      The New York City Class is Sufficiently Numerous. ................................. 7

           D.      The New York State Class Satisfies Numerosity. ...................................... 8

           E.      The Westchester County Class is Sufficiently Numerous. ......................... 9

CONCLUSION ........................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Lowell v. Lyft, Inc.*,
   352 F. Supp. 3d 248 (S.D.N.Y. 2018) ............................................................................... 10

*Robinson v. New York City Transit Auth.*,
   No. 19-CV-01404 (AT) (BCM), 2020 WL 5884055 (S.D.N.Y. Aug. 31, 2020) ................ 5

*In re Term Commodities Cotton Futures Litig.*,
   No. 12-CV-5126 (ALC)(KNF), 2022 WL 485005 (S.D.N.Y. Feb. 17, 2022) .................... 5

**STATUTES AND RULES**

Americans with Disabilities Act of 1990 ................................................................................ *passim*

The Rehabilitation Act of 1973 ........................................................................................................ 3

Fed. R. Civ. P. 7.1 ............................................................................................................................ 1

Fed. R. Civ. P. 23 ..................................................................................................................... 4, 5, 8

**OTHER AUTHORITIES**

Accessible NYC 2019 Annual Report .............................................................................................. 7

Brad E. Dicianno, MD, et al., "The Voice of the Consumer: A Survey of Veterans
   and Other Users of Assistive Technology," MILITARY MEDICINE, 183, 11/12:
   e518, 2018 .......................................................................................................................... 5, 8

Jonathan Vespa, "*Those Who Served: America's Veterans From World War II to
   the War on Terror*," U.S. CENSUS BUREAU (June 2, 2020) ................................................ 8

Lyft's 2021 Environmental, Social, and Corporate Governance Report ....................................... 10

National Veterans Wheelchair Games ............................................................................................. 7

*New York City's Department of Veterans' Services Launches Citywide Survey of
   NYC Veteran Population* (Mar. 18, 2021) ............................................................................ 7

New York State Division of Veterans' Services, 2020 Annual Report ........................................... 8

*Overview of the ADA*, Paralyzed Veterans of America .................................................................. 3

Tina Bellon and Akanksha Rana, "*Lyft posts adjusted profit ahead of target, but
   warns of driver shortage, Delta threat*," Aug. 3, 2021, REUTERS ...................................... 10

Westchester County Veterans Service Agency - Contact Us Webpage ..........................................9

**FEDERAL RULE OF CIVIL PROCEDURE**
**RULE 7.1 DISCLOSURE STATEMENT**

*Amicus* Paralyzed Veterans of America ("PVA") is a nonprofit corporation. PVA has no parent corporation and no publicly held corporation owns more than 10 percent of its stock.

**INTEREST OF THE AMICUS CURIAE**

Paralyzed Veterans of America is a national, congressionally-chartered veterans service organization headquartered in Washington, D.C. PVA was founded in 1946 with a mission to serve the thousands of veterans in this country who have experienced spinal cord injury or disorder ("SCI/D"). PVA has nearly 16,000 members. Each member is an armed forces veteran living with SCI/D, and the majority would benefit from wheelchair-accessible vehicles ("WAVs") for transportation. PVA works to improve the quality of life for veterans and all people with SCI/D through its medical services, benefits, and legal advocacy. PVA also advocates for quality health care, research addressing SCI/D, and civil rights and accessibility—including accessible transportation—to maximize independence for the disabled veterans it serves.

PVA was founded by World War II veterans who suffered an SCI/D. Since its founding, PVA has advocated tirelessly to empower our nation's disabled heroes to regain what they fought for: freedom and independence. A large part of this freedom and independence is the ability to travel. As companies such as Lyft, Inc. ("Lyft"), become a staple means for the average American to travel, for them to exclude power wheelchair and scooters users, as well as those who are unable to transfer from manual wheelchairs, is to leave disabled veterans behind. As a nationwide group of veterans who almost exclusively rely on wheelchairs and other mobility devices for transportation, PVA has a unique perspective to inform the Court as it decides this important case. PVA is also intimately familiar with the Americans with Disabilities Act (the "ADA") having been involved in the Act's passage. PVA respectfully submits that, for the reasons set forth below and

in Plaintiffs' papers, the Court should certify the classes and move this case expeditiously towards trial.

## PRELIMINARY STATEMENT

The Americans with Disabilities Act of 1990 (the "ADA") is a civil rights law that prohibits discrimination against individuals with disabilities. The law aims to ensure that people with disabilities receive equal opportunity in American public life—including in transportation. The law mandates that a person with disabilities be treated with the same dignity and respect as any other American. Paralyzed Veterans of America knows this firsthand: PVA helped lead the charge for passage of this legislation. Since its passage, the ADA has enabled countless accomplishments and victories for all Americans—including PVA's nearly 16,000 American heroes living with SCI/D. The ADA is widely regarded as the nation's most comprehensive law protecting people with disabilities ever enacted. Paralyzed Veterans of America has consistently advocated to enforce the law and rebuff efforts to weaken it.

PVA now submits this *amicus* brief to emphasize the importance of accessible transportation for those living with mobility-affecting disabilities. Transportation access is a central civil rights issue. Access to transportation means access to jobs, education, political participation, and community—the fabric of American life. The classes who Plaintiffs seek to certify include thousands of our nation's heroes, each of whom made life-changing sacrifices for this country. Lyft's lawless discrimination harms all people who use non-foldable wheelchairs and scooters. As specifically addressed by PVA below, those people number in the thousands. The classes that Plaintiffs seek to certify well exceed the numerosity requirements to certify a class under the Federal Rules.

PVA respectfully submits that this Court should certify Plaintiffs' proposed classes.

**ARGUMENT**

**I.      The ADA in Historical Context and How it Applies to Lyft.**

The disability rights movement began as early as the 1970s, when people with disabilities staged "sit-ins" in federal office buildings to force the implementation of the Rehabilitation Act of 1973. Those sit-ins were followed by acts of civil disobedience, in which people with disabilities chained themselves to buses to illustrate the public transportation systems' inaccessibility. Disability advocates—including veterans of our nation's armed forces—crawled hand-over-hand up the steps of the U.S. Capitol to show how people with disabilities were excluded from the halls of power. These and countless other acts of determination, advocacy, and coalition building culminated in the signing of the ADA by President George H.W. Bush.

Paralyzed Veterans of America was an active participant in the fight to pass the ADA. Testifying in support of the legislation before Congress, Peter Addesso, a Veteran Affairs hospital liaison for PVA, spoke of the barriers he encountered upon returning home from service in Vietnam with a spinal cord injury. When he went to use a public swimming pool, the parks commissioner barred him from the facility and said: "It's not my fault you went to Vietnam and got crippled." When he tried to dine at a local restaurant, the restaurant asked Mr. Addesso to leave because he presented a "fire hazard."[1]

The ADA was enacted to ensure that people with disabilities have the same rights and opportunities as everyone else. Title III of the ADA prohibits discrimination against individuals with disabilities in all areas of public life, including jobs, schools, and—as relevant here—in transportation. Specifically, the ADA prohibits discrimination against persons with disabilities in

---

[1] *Overview of the ADA*, Paralyzed Veterans of America (https://pva.org/wp-content/uploads/2021/10/overview-of-ada_2.pdf).

3

places of public accommodation. Examples of public accommodations include hotels, restaurants, retail merchants, doctor's offices, golf courses, schools, health clubs, sports stadiums, movie theaters, and so on. The ADA creates minimum standards for accessibility and requires public accommodations to make reasonable modifications to remove barriers to accessibility such that people with disabilities enjoy equal access.

Lyft operates throughout the United States, and is an important means of transportation for people who do not use power wheelchairs and scooters. But its baseline policy with respect to power wheelchair and scooter users and those who are unable to transfer into non-WAVs? They are not welcome. In fact, Lyft entirely excludes these users throughout the nation, except in a few limited metropolitan areas where regulators have demanded accessibility. Even in those limited metropolitan areas where regulators have forced Lyft's hand, the company does only the bare minimum necessary to avoid regulatory sanction. Indeed, Lyft's own employee in charge of this aspect of its business stated that the company is "incentivized to keep [wheelchair-accessible] programs as small as possible while meeting regulatory requirements" and that Lyft "*will do as little as possible unless forced*" to serve people who use wheelchairs. (ECF No. 199-1 at 183:9-14.) As discussed below, Lyft's exclusionary policies violate the ADA and severely burden PVA's thousands of members.

## II. The Classes Undoubtedly Satisfy Rule 23's Numerosity Requirement.

PVA supports Plaintiff's motion for class certification in full and urges the Court to grant class certification. As *amicus*, PVA takes this opportunity to provide information uniquely in its

possession that may assist the Court on the specific issue of why the proposed classes are undoubtedly numerous enough to be certified under the Federal Rules.[2]

Plaintiffs apparently seek to certify five classes of individuals who require wheelchair-accessible transportation, and who reside in or visit the following locations: (1) areas where Lyft provides no wheelchair-accessible service at all ("the No-Access Class"); (2) areas where Lyft provides some wheelchair-accessible service as required by local regulators, aside from New York City ("the Some-Access Class"); and (3) New York City, where proactive regulators have forced Lyft to provide wheelchair-accessible service but where Lyft still falls short in meeting its obligations; (4) New York State; and (5) Westchester County, New York.

Lyft apparently intends to argue that the proposed classes which Plaintiffs will represent are not sufficiently numerous to certify. But Lyft is demonstrably incorrect. To obtain class certification, Plaintiffs must demonstrate only that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). And "***numerosity is presumed for classes larger than forty members***." *In re Term Commodities Cotton Futures Litigation*, No. 12-CV-5126 (ALC)(KNF), 2022 WL 485005, at *3 (S.D.N.Y. Feb. 17, 2022).

A total of 3.6 million Americans use wheelchairs—including over 250,000 veterans.[3] Indeed, PVA membership alone includes nearly 16,000 veterans with SCI/D. The men and women who require WAVs as a result of their service to our country are legion. For Lyft to claim that Plaintiffs' proposed classes number fewer than forty individuals borders on the offensive. Lyft's

---

[2] Aside from numerosity, there is ample reason to grant Plaintiffs' motion, as class certification can be "easily resolved" when, as here, plaintiffs seek uniform injunctive relief to remedy a defendant's uniform discriminatory policies (here, the exclusion of wheelchair users from the Lyft service). *See Robinson v. New York City Transit Auth.*, No. 19-CV-01404 (AT) (BCM), 2020 WL 5884055, at *13-*14 (S.D.N.Y. Aug. 31, 2020), *report and recommendation adopted*, 2020 WL 5814189 (S.D.N.Y. Sept. 30, 2020).

[3] Brad E. Dicianno, MD, et al., "The Voice of the Consumer: A Survey of Veterans and Other Users of Assistive Technology," MILITARY MEDICINE, 183, 11/12:e518, 2018 (https://tinyurl.com/surveyofveterans).

insufficient numerosity argument should rejected.  PVA addresses each of the classes separately below.

### A.     The No-Access Regions Class is Sufficiently Numerous.

Lyft refuses to allow wheelchair-accessible service in 96% of the regions in which it operates.  These regions are home to hundreds of thousands, if not millions, of wheelchair and scooters users who require access to wheelchair-accessible transportation.  Indeed, PVA's membership alone would satisfy numerosity in these regions.  PVA has nearly 16,000 members.  ***Many thousands*** of those members do not live in the limited metropolitan regions for which regulators have required Lyft to provide some accessible options.  For example, the PVA-Lone Star Chapter in Garland, TX, near San Antonio, and the PVA-Texas Chapter in Crosby, TX, near Houston, together have nearly 950 members.

Needless to say, 950 is higher than 40.  Those class members are only those who belong to PVA—a mere fraction of the total population of Americans who reside in or visit regions in which Lyft offers absolutely no WAV service.  PVA's members are frequently deterred from downloading the Lyft app because it is commonly known that Lyft refuses to serve wheelchair and scooter users who cannot independently transfer.  But those veterans with disabilities ***could*** use Lyft if it were accessible to them.  Lyft is discriminating against thousands and thousands of people—including thousands of American veterans who sacrificed and were seriously injured in service to this country.

### B.     The "Some Access" Class is Sufficiently Numerous.

Also sufficiently numerous is the class of individuals who reside in or visit the regions for which Lyft offers some limited WAV service, as required by local regulators.  Lyft provides some

wheelchair-accessible service in the following cities (excluding New York City): Boston, Chicago, Dallas, Los Angeles, Philadelphia, Phoenix, Portland, and San Francisco.

Again, even if the class were limited to only PVA members (and it is not), the class would be sufficiently numerous to certify. These chapters near these areas collectively serve hundreds of disabled veterans. Again, this is well over 40 and therefore presumptively numerous enough to certify as a class. And that is just PVA alone. There are certainly hundreds if not many thousands of other class members who live in these major metropolitan regions, who are not PVA members but do rely on wheelchair-accessible transportation.

As just one example of how Lyft's discriminatory conduct affects hundreds of class members, consider the PVA-organized National Wheelchair Games, with an average of 550 competitors.[4] In 2022, this event is scheduled to be held in Tempe, Arizona—just outside of Phoenix. PVA members should have the same opportunities as non-disabled Americans to travel throughout Phoenix with their families when visiting this city. But because Lyft's services in Phoenix do not reasonably compare to the services it provides to people who do not rely on wheelchairs or scooters, PVA members will inevitably suffer from Lyft's discrimination.

C.   **The New York City Class is Sufficiently Numerous.**

New York City is home to 210,000 veterans.[5] Since approximately 1.4% of veterans use wheelchairs, about 2,940 veterans in New York City use wheelchairs. In total, approximately 100,000 New York City residents, veterans and non-veterans, use wheelchairs.[6] Even looking

---

[4] *See* National Veterans Wheelchair Games (last visited March 26, 2022) (https://wheelchairgames.org/wp-content/uploads/2021/10/2022-Games-Partner-Packet.pdf).

[5] *See New York City's Department of Veterans' Services Launches Citywide Survey of NYC Veteran Population* (Mar. 18, 2021) (https://www1.nyc.gov/assets/veterans/downloads/pdf/news/PressRelease-VeteranSurvey-20210121.pdf).

[6] *See* Accessible NYC 2019 Annual Report, at 20 & n.3 (https://www1.nyc.gov/assets/mopd/downloads/pdf/accessible-nyc-2019.pdf).

7

only at New York City veterans with disabilities, they exceed the number at which numerosity is presumed to be sufficient.

Organizations such as PVA also hold events in New York City, which bring numerous disabled individuals to visit New York City; they each require transportation options that Lyft denies them. For example, PVA co-hosted the 2021 National Veterans Wheelchair Games in New York City. Hundreds of people attend these games—both the PVA members and their caregivers to cheer on their loved ones. These PVA members need wheelchair-accessible transportation. And their family members require the ability to travel with their loved ones. Lyft's discriminatory practices deny these class members—including hundreds of PVA members and their families—access to the fundamental right of free movement. This violates the ADA. Numerosity is no barrier to certifying this class.

### D. The New York State Class Satisfies Numerosity.

PVA has almost 410 members in New York state, a sufficient number to satisfy the numerosity requirement of Rule 23. Those numbers also represent but a fraction of the individuals who would be class members. According to the New York State Governor's office, the state of New York is home to at least 718,000 veterans.[7] Nationwide, approximately 1.4% of veterans rely on wheelchairs for mobility.[8] Thus, there are likely to be approximately 10,000 veterans living in New York State who require wheelchairs for mobility. That does not include the many more non-veteran New York residents and visitors who also rely on wheelchair-accessible transportation.

---

[7] New York State Division of Veterans' Services, 2020 Annual Report (last visited Mar. 23, 2022) (https://veterans.ny.gov/sites/default/files/annual_report_2020.pdf).

[8] There are 250,000 veterans in the United States who use wheelchairs out of approximately 18 million veterans total. Jonathan Vespa, "*Those Who Served: America's Veterans From World War II to the War on Terror*," U.S. CENSUS BUREAU, June 2, 2020 (https://www.census.gov/library/publications/2020/demo/acs-43 html); Brad E. Dicianno, MD, et al., "The Voice of the Consumer: A Survey of Veterans and Other Users of Assistive Technology," MILITARY MEDICINE, 183, 11/12:e518, 2018 (https://tinyurl.com/surveyofveterans).

Lyft's suggestion that *fewer than 40 people in the entire State of New York*[9] requiring wheelchair-accessible vehicles is simply wrong.

### E. The Westchester County Class is Sufficiently Numerous.

According to the County's Veterans Service Agency, there are approximately 100,000 veterans living in Westchester, the fifth largest population in the state.[10] As discussed above, approximately 1.4% of all veterans rely on wheelchairs for mobility. There are therefore approximately 1,400 veterans in Westchester County alone who are within the proposed class. PVA has nearly 410 members in New York state each of whom could also be within the class as someone who visits Westchester. And those are only the PVA members. Numerous non-veteran individuals who rely on wheelchairs would also fall within the class definition.

Moreover, Westchester is home to the world-renowned Burke Rehabilitation Hospital, where Westchester residents and people from neighboring states come to receive top-notch rehabilitation care. Many of these patients include wheelchair-users because of Burke's specialization in rehabilitation, a service which many people with SCI/D need. In fact, so many wheelchair users need Burke's services that Burke even offers support groups for these people— such as the Spinal Cord Injury Support Group. In 2020, Burke's Spinal Cord program assisted 203 patients. From just Burke alone, there are at least 40 wheelchair users who qualify for Plaintiffs' proposed Westchester class in Westchester on a regular basis. In light of all the foregoing, numerosity is no barrier to certifying the Westchester class.

---

[9] Excluding New York City and Westchester County.

[10] Westchester County Veterans Service Agency - Contact Us (last visited Mar. 25, 2022) (https://perma.cc/ZP2J-ZYLJ).

**CONCLUSION**

Lyft has repeatedly made implausible arguments to this Court in seeking to evade its ADA obligations. In moving to dismiss, Lyft argued that it was "not in the transportation business." This was absurd—Lyft's self-proclaimed mission is to provide the "world's best *transportation*"[11] and the company boasts over 17 million riders.[12] When Lyft tried to argue that its arbitration bound people *who had never used the app*, the Court rejected that argument as "supremely unjust." *Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 260 (S.D.N.Y. 2018).

Lyft's latest unjust argument is consistent with its overall plan to treat people who use power wheelchairs or scooters as an afterthought, or those who cannot independently transfer, as if they do not exist. The ADA demands more. And the thousands of veterans who sacrificed for this country deserve more. They deserve the same transportation options that Lyft offers to the rest of the general public. When Lyft scoffs at the idea of providing wheelchair-accessible service to these veterans, it contravenes our national commitment to equality—a commitment for which PVA's thousands of members sacrificed so much. And it violates the ADA.

---

[11] Lyft's 2021 Environmental, Social, and Corporate Governance Report - Lyft Blog (last visited Mar. 25, 2022) (https://www.lyft.com/blog/posts/lyfts-2021-esg-report).

[12] Tina Bellon and Akanksha Rana, "*Lyft posts adjusted profit ahead of target, but warns of driver shortage, Delta threat*," Aug. 3, 2021, REUTERS (https://www.reuters.com/technology/lyft-posts-adjusted-profit-three-months-ahead-target-rides-rebound-2021-08-03/).

The Court should grant Plaintiffs' motion for class certification.

Dated: March 30, 2022                                  Respectfully submitted,

                                                       */s/ Aaron J. Marks*
                                                       Aaron J. Marks
                                                       **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                                       88 Pine Street, 14th Floor
                                                       New York, NY 10005
                                                       Phone: (212) 838-7797
                                                       Email: amarks@cohenmilstein.com

                                                       *Counsel for Amicus Curiae Paralyzed Veterans of America*

## CERTIFICATE OF SERVICE

I certify that on March 30, 2022, I caused the foregoing to be filed through this Court's CM/ECF system, which will serve a notice of electronic filing on all registered users, including all counsel of record in this case.

<em>/s/ Aaron J. Marks</em>