**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HARRIET LOWELL and WESTCHESTER
DISABLED ON THE MOVE, INC.,
individually and on behalf of all others similarly
situated,

                              Plaintiffs,

          v.

LYFT, INC.,

                          Defendant.

Case No. 7:17-cv-06251-PMH-AEK

**REPLY IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.      Introduction ............................................................................................................ 1

II.     Lyft's Merits Arguments Are Premature And Wrong. .......................................... 2

III.    Plaintiffs And Class Representatives Have Standing. ........................................... 5

        A.      Ms. Lowell Has Standing. ........................................................................... 7

        B.      Westchester Disabled On The Move Has Standing. .................................... 9

        C.      Ms. Scudieri And Mr. Burr Have Standing. .............................................. 11

IV.     Plaintiffs' Class Definitions Are Proper. ............................................................ 12

V.      Each Class Satisfies Rule 23(a)'s Requirements. ............................................... 17

        A.      Each Class Is Sufficiently Numerous. ....................................................... 17

                1.      Statistical Evidence Satisfies Numerosity. ..................................... 18

                2.      Class Members' Declarations Also Satisfy Numerosity. ................ 19

        B.      Plaintiffs Easily Meet The Second Circuit's
                Low Threshold For Commonality And Lyft's
                Commonality Argument Ignores Second Circuit Law. .............................. 21

        C.      Typicality Is Satisfied. ............................................................................... 23

        D.      Defendant's Adequacy Concerns Are Not Well-Taken. ............................ 24

VI.     Conclusion ........................................................................................................... 25

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Access Living, Access Living of Metro. Chicago v. Uber Techs., Inc.*,
   958 F.3d 604 (7th Cir. 2020) ............................................................................... 9, 14

*Adkins v. Morgan Stanley*,
   307 F.R.D. 119 (S.D.N.Y. 2015) ............................................................................. 24

*Allen v. Ollie's Bargain Outlet, Inc.*,
   37 F.4th 890 (3d Cir. 2022) ....................................................................................... 21

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................... 25

*American Council of Blind of N.Y., Inc. v. City of N.Y.*,
   495 F. Supp. 3d 211 (S.D.N.Y. 2020) ....................................................................... 2

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ..................................................................................................... 3

*Bartlett v. N.Y. State Bd. of Law Examiners*,
   226 F.3d 69 (2d Cir. 2000) ......................................................................................... 2

*Bloom v. City of San Diego*,
   No. 17-02324, 2021 WL 8053533 (S.D. Cal. June 8, 2021) ................................... 21

*Bowens v. Atl. Maint. Corp.*,
   546 F. Supp. 2d 55 (E.D.N.Y. 2008) ....................................................................... 11

*Brecher v. Republic of Argentina*,
   806 F.3d 22 (2d Cir. 2015) ....................................................................................... 12

*Bronx Indep. Living Servs. v. Metro. Transportation Auth.*,
   No. 16-5023, 2021 WL 1177740 (S.D.N.Y. Mar. 29, 2021) ..................................... 9

*Brooklyn Ctr. for Indep. of the Disabled ("BCID") v. Bloomberg*,
   290 F.R.D. 409 (S.D.N.Y. 2012) ......................................................................... 9, 23

*Calcano v. Swarovski N. Am. Ltd.*,
   36 F.4th 68 (2d Cir. 2022) ....................................................................................... 16

*Castillo v. John Gore Org., Inc.*,
   No. 19-388, 2019 WL 6033088 (E.D.N.Y. Nov. 14, 2019) ..................................... 14

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007) .................................................................................................. 5

*Chen-Oster v. Goldman, Sachs & Co.*,
   No. 10-6950, 2022 WL 814074 (S.D.N.Y. Mar. 17, 2022) ..................................................... 12

*Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*,
   765 F.3d 1205 (10th Cir. 2014) ............................................................................................ 21

*Crawford v. Uber Techs., Inc.*,
   No. 17-02664, 2018 WL 1116725 (N.D. Cal. Mar. 1, 2018) .................................................. 13

*C.R. Educ. & Enf't Ctr. v. Hosp. Properties Tr.*,
   867 F.3d 1093 (9th Cir. 2017) .............................................................................................. 21

*Decastro v. City of N.Y.*,
   No. 16-3850, 2020 WL 4932778 (S.D.N.Y. Aug. 24, 2020) ................................................... 11

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) ..................................................................................... 12, 14, 15

*Disability Advocs., Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*,
   675 F.3d 149 (2d Cir. 2012) .................................................................................................. 9

*D.S. ex rel. S.S. v. New York City Dep't of Educ.*,
   255 F.R.D. 59 (E.D.N.Y. 2008) ............................................................................................ 24

*Duran v. Henkel of Am., Inc.*,
   450 F. Supp. 3d 337 (S.D.N.Y. 2020) ................................................................................... 16

*Elisa W. v. City of N.Y.*,
   No. 15-5273, 2021 WL 4027013 (S.D.N.Y. Sept. 3,2021) ..................................................... 24

*Feltzin v. Triangle Properties #1, LLC*,
   No. 14-5131, 2016 WL 11599264 (E.D.N.Y. Dec. 15, 2016) .................................................. 14

*Fishon v. Peloton Interactive, Inc.*,
   No. 19-11711, 2022 WL 179771, (S.D.N.Y. Jan. 19, 2022) ................................................... 25

*Floyd v. City of N.Y.*,
   283 F.R.D. 153 (S.D.N.Y. 2012) ............................................................................................. 1

*Fort Worth Empls.*,
   862 F.Supp.2d ..................................................................................................................... 11

*Harty v. Koutsourades*,
   No. 20-2779, 2021 WL 1299495 (S.D.N.Y. Apr. 7, 2021) ..................................................... 16

*Harty v. W. Point Realty, Inc.*,
   28 F.4th 435 (2d Cir. 2022) ................................................................................................ 6, 19

*Houser v. Pritzker*,
   28 F. Supp. 3d 222 (S.D.N.Y. 2014) ......................................................................................... 3

*Hummel v. St. Joseph Cty. Bd. Of Comm'rs*,
   817 F.3d 1010 (7th Cir. 2016) ................................................................................................... 9

*Hunt v. Wash. State Apple Advert. Comm'n*,
   432 U.S. 333 (1977) ................................................................................................................... 9

*In re Initial Public Offerings Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006) ........................................................................................................ 3

*In re Petrobras*,
   862 F.3d 250 (2d Cir. 2017) .................................................................................................... 12

*In re Pfizer Inc. Sec. Litig.*,
   282 F.R.D. 38 (S.D.N.Y. 2012) .............................................................................................. 24

*Jackson-Bey v. Hanslmaier*,
   115 F.3d 1091 (2d Cir. 1997) .................................................................................................. 16

*Keene Corp. v. U.S.*,
   508 U.S. 200 (1993) ................................................................................................................... 8

*Kempner v. Town of Greenwich*,
   249 F.R.D. 15 (D. Conn. 2008) .............................................................................................. 15

*Kinney v. Yerusalim*,
   9 F.3d 1067 (3d Cir.1993) ......................................................................................................... 2

*Kommer v. Bayer Consumer Health*,
   710 F. App'x 43 (2d Cir. 2018) .............................................................................................. 11

*Kreisler v. Second Ave. Diner Corp.*,
   731 F.3d 184 (2d Cir. 2013) ......................................................................................... 5, 6, 8, 14

*Lovely H. v. Eggleston*,
   235 F.R.D. 248 (S.D.N.Y. 2006) .............................................................................................. 3

*Lowell v. Lyft, Inc.*,
   352 F. Supp. 3d 248 (S.D.N.Y. 2018) ..................................................... 5, 6, 7, 9

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) .................................................................. 15

*Mental Hygiene Legal Serv. v. Cuomo*,
   609 F. App'x 693 (2d Cir. 2015) ............................................................ 9

*Moeller v. Taco Bell Corp.*,
   220 F.R.D. 604 (N.D.N.Y. 2004) ........................................................... 23

*Namisnak v. Uber Techs., Inc.*,
   971 F.3d 1088 (9th Cir. 2020) ............................................................. 6, 7

*Namisnak v. Uber Techs., Inc.*,
   444 F. Supp. 3d 1136 (N.D. Cal. 2020) .................................................. 13

*Noble v. 93 University Place Corp.*,
   224 F.R.D. 330 (S.D.N.Y. 2004) ............................................................ 11

*Noel v. N.Y.C. Taxi & Limousine Comm'n*,
   687 F.3d 63 (2d Cir. 2012) ................................................................ 2, 13

*N.Y. Bankers Ass'n, Inc. v. City of N.Y.*,
   No. 13-7212, 2014 WL 4435427 (S.D.N.Y. Sept. 9, 2014) ......................... 8

*Parsons v. Ryan*,
   289 F.R.D. 513 (D. Ariz. 2013) ............................................................ 21

*PBA Local No. 38 v. Woodbridge Police Dep't*,
   134 F.R.D. 96 (D.N.J. 1991) ................................................................ 13

*Peterson v. Alaska Commc'ns Sys. Grp., Inc.*,
   328 F.R.D. 255 (D. Alaska 2018) .......................................................... 11

*PGA Tour, Inc. v. Martin*,
   532 U.S. 661 (2001) ........................................................................... 1

*Platform Real Est. Inc. v. United States Sec. & Exch. Comm'n*,
   No. 19-2575, 2020 WL 4482632 (S.D.N.Y. Aug. 3, 2020) ......................... 16

*Raymond v. New York State Dep't of Corr. & Cmty. Supervision*,
   No. 20-1380, 2022 WL 97327 (N.D.N.Y. Jan. 11, 2022) ........................... 16

*Ret. Sys.*,
    707 F.3d 144 (2d Cir. 2013) ............................................................................... 2

*Robinson v. New York City Transit Auth.*
    No. 19-01404, 2020 WL 5884055 ........................................................ 12, 14, 15, 23

*Sierra Club v. SCM Corp.*,
    747 F.2d 99 (2d Cir. 1984) ............................................................................... 9

*Shalto v. SFL Pizza Corp.*,
    No. 19-1687, 2020 WL 3960506 (E.D.N.Y. July 13, 2020) ...................................... 6

*Small v. Gen. Nutrition Companies, Inc.*,
    388 F. Supp. 2d 83 (E.D.N.Y. 2005) .................................................................. 6

*Staron v. McDonald's Corp.*,
    51 F.3d 353 (2d Cir. 1995) ............................................................................... 2

*Sutton v. 626 Emmut Properties, Ltd.*,
    No. 18-90, 2019 WL 3531564 (S.D.N.Y. Aug. 2, 2019) .......................................... 6

*Vahidallah v. Professional Examination Service*,
    No. 03-1800, 2005 WL 8173028 (S.D. Cal. June 24, 2005) ..................................... 2

*Walker v. Long Island R.R., Inc.*,
    No. 79-5429, 1982 WL 180 (S.D.N.Y. Jan. 13, 1982) ........................................... 25

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...................................................................................... 21

*Westchester Indep. Living Ctr., Inc. ("WILC") v. SUNY Purchase Coll.*,
    331 F.R.D. 279 331 F.R.D. ........................................................................*Passim*

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008) ............................................................................. 7

## Statutes

42 U.S.C. § 12182 ................................................................................................ 1

42 U.S.C. § 12184 ................................................................................................ 1

42 U.S.C. § 12188 ........................................................................................ 6, 7, 14

**<u>Regulations</u>**

49 C.F.R. § 37.29(b) ................................................................................................................ 13

# I.     <u>Introduction</u>

Lyft[1] treats *all* people with disabilities within each of the proposed Classes uniformly. For example, Lyft refuses to permit any WAV service whatsoever to all people with disabilities in the Westchester County Class, the Non-Access Region Class, and the New York State Other Than NYC Class. Class actions were invented to resolve disputes where a defendant treats an entire class in the same manner and Rule 23(b)(2) "was designed to cover 'actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.'" *Floyd v. City of N.Y.*, 283 F.R.D. 153, 162 (S.D.N.Y. 2012) (emphasis and citation removed). Nonetheless, Lyft stretches and distorts the facts and law to make a hodgepodge of arguments against certification. None of Lyft's arguments are compelling.

Lyft's Opposition ("Opp") accuses Plaintiffs of misleading the Court because "Lyft is a private company that is subject to different standards" under the ADA than governmental institutions. Opp at 1. While differences exist between Titles II and III of the ADA, Lyft cites no authority to support its claim that courts adjudicate class certification or reasonable modifications differently under Titles II and III, likely because no such cases exist.[2] Rather, the Supreme Court, the Second Circuit, and all courts rely upon interpretations of Title II and Title III interchangeably. *See, e.g.*, *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 677 (2001) ("It would therefore appear that Title III of the ADA, by its plain terms, prohibits petitioner from denying Martin equal access to its

---

[1] This memorandum adopts the abbreviations used in Plaintiffs' opening memorandum ("Mot.").

[2] Lyft deceptively reframes and narrows this action to falsely assert that the crux of Plaintiffs' claims is Lyft's failure to purchase WAVs and make reasonable modifications. But Lyft ignores many applicable discrimination prohibitions under 42 U.S.C. § 12182 and § 12184 such as, *inter alia*, denying people with disabilities the opportunity to participate, imposing eligibility criteria, and failing to remove barriers to access.

tours on the basis of his disability.").[3] Lyft's failure to mention this controlling precedent is telling.

Lyft's misstatements are not limited to the law. Lyft makes many factual assertions that are simply untrue. For example, Lyft asserts that "some [declarants] use foldable wheelchairs and do not need a WAV." Opp at 7 (citing Daly, Brown, Matesky, Skehan depositions). The assertion that any declarant does not need a WAV is false.[4] *See also* Frei-Pearson Decl. at 3 (identifying **37** different instances where Lyft's Opposition misrepresents the record).

Nonetheless, even if this Court credits each of Lyft's falsehoods, Plaintiffs' motion should still be granted. As detailed in Plaintiffs' motion and below, each proposed Class satisfies all of the class certification requirements, and Plaintiffs respectfully request that the Court certify each Class.

## II. Lyft's Merits Arguments Are Premature And Wrong.

As Your Honor explained, "'a district court has the obligation to assure that a class certification motion does not become a pretext for a partial trial of the merits, and thus should not

---

[3] *See, e.g.*, *Mary Jo C. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144, 159 n.6 (2d Cir. 2013) ("Courts have read the requirements of Title II and Title III as being consistent with each other"); *Bartlett v. N.Y. State Bd. of Law Examiners*, 226 F.3d 69, 78 n.2 (2d Cir. 2000) ("title II and title III of the ADA impose largely the same requirements"); *Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 73 (2d Cir. 2012) (using Title III to analyze Title II's requirements); *Staron v. McDonald's Corp.*, 51 F.3d 353, 356 (2d Cir. 1995) (citing ADA cases against private and public entities to evaluate an accommodation's reasonableness); *Kinney v. Yerusalim*, 9 F.3d 1067, 1073 n.6 (3d Cir.1993) (ADA's legislative history indicates that Titles II and III are to be read consistently); *American Council of Blind of N.Y., Inc. v. City of N.Y.*, 495 F. Supp. 3d 211, 250 n.16 (S.D.N.Y. 2020) (relying on ADA Title III cases to evaluate a requested alteration under Title II); *Vahidallah v. Professional Examination Service*, No. 03-1800, 2005 WL 8173028, at *5 (S.D. Cal. June 24, 2005) ("[T]he requirements for establishing a claim under Title II and Title III of the ADA are functionally similar.").).

[4] *See* Skehan Dep. Tr. 74:16-75:20 (Frei-Pearson Decl., Ex. 1) ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Daly Dep. Tr. 46:11-20 (Frei-Pearson Decl., Ex. 2) (explaining that he needs a WAV); Matesky Dep. Tr. 39:8-11 (Frei-Pearson Decl., Ex. 3) (same).

assess any aspect of the merits unrelated to a Rule 23 requirement.'" ECF No. 264 at 7-8

(quoting *Houser v. Pritzker*, 28 F. Supp. 3d 222, 244 (S.D.N.Y. 2014)); *accord, e.g., Amgen Inc.*

*v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("an evaluation of the probable

outcome on the merits is not properly part of the certification decision.'"); *In re Initial Public*

*Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) (a judge "should not assess any aspect of the

merits unrelated to a Rule 23 requirement"). Rather, "in considering a motion for class

certification, a court must assume the truthfulness of the Plaintiffs' allegations." *Lovely H. v.*

*Eggleston*, 235 F.R.D. 248, 255 (S.D.N.Y. 2006). Notwithstanding their irrelevance here, Lyft's

merits arguments are baseless and can be resolved on a class-wide basis.

    *First*, Lyft argues that Plaintiffs do not sufficiently demonstrate how Lyft could offer WAV

service throughout Westchester, claiming that different performance levels in different areas

eviscerates the potential for effective WAV service. Opp at 45-46. Lyft does not implement any

standard service restrictions based on performance metrics,[5] but rather operates in a manner that

its proffered expert described as ████████ in numerous parts of the country, including much of

Westchester.[6] That WAV service metrics vary between and within regions is no different than

Lyft's current standard service and does not excuse Lyft's refusal to provide WAV service.

---

[5] *See* Rysman Dep. Tr. 71:16-21 ("Lyft is not preventing riders and drivers from using the app in markets that have say ████████████████████████████ and [] those sort of metrics."), 145:16-146:1 ("Q: Are you aware of any instance where Lyft chose not to expand standard-service mode offerings into a new region because that region did not have sufficient population density? A: No, I'm not. [] I understand Lyft's app to operate almost everywhere.").

[6] Plaintiffs acknowledge the same fact that Lyft's employees acknowledged when they expanded standard service across New York State: while "service may be spottier in the state's rural areas" and "wait times will likely be longer[,]" Plaintiffs only request that people with disabilities receive the same treatment as able-bodied people, namely that "users will be able to summon a ride 'anywhere throughout the entire state.'" Jon Campbell, *Lyft To Launch Statewide In New York On June 29*, DEMOCRAT & CHRONICLE (June 8, 2017), https://www.democratandchronicle.com/story/news/politics/albany/2017/06/08/lyft-launch-statewide-june-29/102633650/.

*Second*, Lyft contends that Plaintiffs do not offer sufficient evidence of WAV supply in Westchester. Opp at 45-46. This is a strawman argument. Lyft does not currently make any decisions about whether to offer standard service based on vehicle supply.[7] Moreover, Lyft's evidence demonstrates that more than ███ drivers a month attempted to offer WAV rides through Lyft in Westchester in 2020, which is larger than the per-month total of any Access Region Other than NYC.[8] Mot. at 10, 25. Indeed, in 2020, the monthly average of the number of drivers who attempted to drive their WAVs in Access mode in Westchester[9] was greater than the number of Standard mode drivers in ███ of the 331 Lyft regions with Standard mode service. *Id.*[10] And, in

---

[7] Transcript of Proceedings of Bench Trial, *ILRC v. Lyft, Inc.*, No. 19- 01438, ECF No. 195 (N.D. Cal. June 3, 2021), at 268:3-6 (testimony from Lyft's business performance manager for global operations that Lyft "operate[s] in the entire state of Wyoming. You are free to open the app there and request a ride, but our supply in Wyoming . . . is extremely limited.").

[8] Defendant's claim that the data it produced in this litigation, which were created by and authenticated under oath by Richard Zhou, Lyft's 30(b)(6) witness, are an "unauthenticated spreadsheet" is ridiculous. Opp at 46; *see* Zhou Dep. Tr., 220:3-8 (confirming that he put the driver supply data into the Supply 2021-02-26.xlsx spreadsheet for this litigation). Mr. Zhou's statement in his declaration, made under the penalty of perjury, that he was not shown the spreadsheet "Supply 2021-02-26" during his deposition is false. *See* Zhou Dep. Tr. 6:10-12 (identifying Exhibit 4 of Mr. Zhou's deposition as "Highly Confidential – Subject to Protective Order – Supply 2021-02-26.xlsx"), 207:18-228:6 (describing same spreadsheet). Lyft's expert also used and relied upon this spreadsheet. Lyft's Rebuttal Expert Report, at 18, 58.

[9] There is a sufficient supply of WAVs outside of Westchester, as well. Although Lyft's drivers can only register their cars as WAVs in fewer than 10 regions, Lyft's data shows that WAV drivers attempted to drive in Access mode in ███ non-Access Regions in 2019 and ███ non-Access Regions in 2020. *See* Frei-Pearson Decl. at ¶7; Supply 2021-02-26 (Ex. 4). In 2019, WAV drivers attempted to drive in Access mode in non-Access Regions ███ times and, in 2020, WAV drivers attempted to drive in Access mode in non-Access Regions ███ times. *Id.* These drivers were unable to offer rides in Access mode due to Lyft's WAV ban. *Id.* Mr. Elegudin projected that Lyft would need 885 WAVs to provide WAV service in all non-Access Regions. *Id.* In 2019 and 2020, the total number of attempts to drive in Access mode was higher in non-Access Regions than in Access Regions. *Id.* In 2020, ███ different non-Access Regions had a higher per-month average attempts to drive a WAV on Access mode than each Access Region other than NYC. *Id.*

[10] Lyft's claim regarding driver hours, Opp at 46, is misguided. Common sense dictates that drivers would not spend long attempting to provide rides on Access Mode in an area where they are actively precluded from doing so.

in January 2021, ███ WAV drivers attempted to offer rides in Access Mode in Westchester.

Lyft's argument that no reasonable modifications will allow it to serve people with disabilities is patently wrong. Nevertheless, whether Lyft can refuse to offer WAV service based on pretexts not considered for its standard service is an issue to be resolved on a classwide basis.

## III.   Plaintiffs And Class Representatives Have Standing.

Lyft's argument that Plaintiffs lack standing reflects Lyft's "heads I win, tails you lose" treatment of people with disabilities. After arguing that Plaintiffs could not seek redress in this Court because they *would* download Lyft and therefore be subject to its arbitration clause, *e.g.*, ECF No. 32 at 8-11, Lyft now argues that Plaintiffs lack standing because they *have not* downloaded Lyft. Opp at 24-27, 29, 32-33. This Court already rejected Lyft's baseless standing arguments, and it must do so again because Plaintiffs demonstrate past and future injuries that can be addressed by Lyft offering equal access to WAVs. *See Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 255-59 (S.D.N.Y. 2018) (holding that "Lowell meets each of the requirements for standing" and WDOMI "has standing to pursue its ADA claim."). Defendant provides no reason to disturb these holdings.

To "establish Article III standing in a class action, it is not required that each named plaintiff must have a claim against each named defendant. Rather, for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action analysis." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007) (citation omitted). "To satisfy constitutional standing requirements, a plaintiff must prove: (1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision." *Kreisler v. Second Ave. Diner Corp.*,

731 F.3d 184, 187 (2d Cir. 2013). In the ADA context, the Second Circuit finds standing (and thus an injury in fact) where "a plaintiff can (1) show past injury under the ADA, (2) raise a reasonable inference that the discriminatory treatment will continue, and (3) raise a reasonable inference that the plaintiff intended to return to the subject location." *Westchester Indep. Living Ctr., Inc. ("WILC") v. SUNY Purchase Coll.*, 331 F.R.D. 279 (S.D.N.Y. 2019), 331 F.R.D. at 295.

Defendant's contention that the ADA requires a plaintiff to show they "encountered barriers before filings her complaint" is incorrect. Opp at 24. Defendant quotes *Small v. Gen. Nutrition Co.* for this proposition, but *Small* subsequently explains that "plaintiffs need not engage in the 'futile gesture' of visiting a building containing known barriers that the owner has no intention of remedying." 388 F. Supp. 2d 83, 86-87 (E.D.N.Y. 2005). Plaintiffs' actual knowledge that Lyft does not provide WAV service is sufficient to constitute an injury-in-fact pursuant to the ADA's futile gesture doctrine.[11] To establish injury-in-fact, a plaintiff need not download an app when they have actual knowledge that it will not serve them. *See Lowell*, 352 F. Supp. 3d at 255-56 (collecting cases); *Namisnak v. Uber Techs.*, 971 F.3d 1088, 1093 (9th Cir. 2020) ("requiring a plaintiff to download the Uber App is exactly the futile gesture that need not be taken to support a showing of injury in fact"). In any event, Lyft cannot deny that it refused to serve Ms. Lowell and WDOMI members before they filed their complaint. Additionally, each class representative shows a concrete intention to use WAVs on Lyft should they become available.[12]

---

[11] *See, e.g.*, 42 U.S.C. § 12188(a)(1) ("Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions."); *Kreisler*, 731 F.3d at 188 (holding that "deterrence constitutes an injury under the ADA"); 189 ("Kreisler need not personally encounter each ADA violation [] to seek its removal"; holding that plaintiff established standing without encountering any of the alleged barriers).

[12] *See Kreisler*, 731 F.3d at 188 (plaintiff established standing for ADA claim where he had knowledge of the barrier to diner and would access to enter the diner in the future were the barrier removed); *Sutton v. 626 Emmut Properties, Ltd.*, No. 18-90, 2019 WL 3531564, at *2

Plaintiffs also demonstrate a causal connection between their injury and Lyft's refusal to provide WAV service. This injury is likely to be redressed by requiring Lyft to comply with the ADA. *See, e.g.*, *Namisnak*, 971 F.3d at 1094. The same outcome is warranted here. Plaintiffs' requested injunction will require Lyft to comply with the ADA, NYSHRL, and NYCHRL, which would allow Plaintiffs and the classes equal access to Lyft. The harms experienced by Plaintiffs can be redressed by Lyft offering service in Westchester County, the non-Access Regions, and by making the proposed reasonable modifications in the Access Regions.[13]

### A.    Ms. Lowell Has Standing.

Ms. Lowell explained that, prior to filing this lawsuit, she heard from friends and acquaintances who have mobility disabilities and have witnessed Lyft's failure to provide equivalent, non-discriminatory service, including her friend in White Plains who tried to order an accessible Lyft and was refused service by Lyft. 352 F. Supp. 3d at 256; Lowell Decl., ¶¶ 8-18. Ms. Lowell's actual knowledge of Lyft's discrimination is sufficient to constitute an injury-in-fact pursuant to the ADA's futile gesture doctrine. *See, e.g.*, 42 U.S.C. § 12188(a)(1) ("Nothing in this

---

(S.D.N.Y. Aug. 2, 2019) (Oetken, J.) (finding standing for ADA claim where plaintiff had not accessed the non-complaint restaurant, but lived near the restaurant and stated he would visit the establishment if it were accessible); *Shalto v. SFL Pizza Corp.*, No. 19-1687, 2020 WL 3960506, at *1-2 (E.D.N.Y. July 13, 2020) (plaintiff had standing for ADA claim where he was deterred by a step at the restaurant's entrance and alleged that he patronizes businesses in the area twice a month). Defendant's reliance on *Harty v. West Point Realty* does not change this analysis. In *Harty*, the court held that the plaintiff did not suffer an injury because he "does not allege that he viewed West Point Realty's website with the intention of visiting the Holiday Inn run by West Point Realty; he merely contends that the website itself was not in compliance with the ADA when he viewed it." 28 F.4th 435, 438-40 (2d Cir. 2022). Conversely, Plaintiffs and proposed class representatives intend to use Lyft once Lyft provides the opportunity.

[13] Defendant's reliance on *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP* does not warrant a different conclusion. Opp at 26-27. In *W.R. Huff*, the investment advisory plaintiff had no redressable injury because it "brought this suit on behalf of its clients," who suffered monetary losses, "not itself." 549 F.3d 100, 110 (2d Cir. 2008). Here, Plaintiffs are seeking a remedy for themselves and for similarly situated individuals who seek WAV service.

section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions."); *Kreisler*, 731 F.3d at 188 (holding that "deterrence constitutes an injury under the ADA") Additionally, Ms. Lowell has identified errands, appointments, and travel plans in Westchester, NYC, and Boston, MA, where she would use Lyft. Lowell Decl. ¶¶ 8-18. She is in close proximity to Lyft because Lyft serves all interested able-bodied smartphone users in White Plains and across Westchester. Lowell Decl. ¶¶ 8-18; Transcript of February 22, 2021 Deposition of Harriet Lowell ("Lowell Dep. Tr."), Ex. 5 to Frei-Pearson Decl., 110:24-112:1.

Defendant claims that Ms. Lowell cannot establish standing for the two Access Region classes because Lyft currently offers WAVs in the Access Regions, but Ms. Lowell has not downloaded Lyft to evaluate the service. Opp at 24-25. However, "standing is adjudged from the time the Complaint is filed[.]" *N.Y. Bankers Ass'n, Inc. v. City of N.Y.*, No. 13-7212, 2014 WL 4435427, at *9 (S.D.N.Y. Sept. 9, 2014) (citing *Keene Corp. v. U.S.*, 508 U.S. 200, 207 (1993) (noting that it is a "longstanding principle that the jurisdiction of the Court depends upon the state of things at the time [] the action [is] brought")). Lyft did not offer WAVs in many of the Access Regions when the Complaint was filed and Lyft's WAV service in NYC at the time of the complaint is but a shadow of its current service.[14] If Ms. Lowell attempted to request a WAV through Lyft in NYC at the time of filing the complaint, it would have been a futile gesture.

---

[14] In a study conducted approximately nine months after Ms. Lowell filed the complaint, Lyft's WAV service was described as "non-functional for wheelchair users." Left Behind – New York's For-Hire Vehicle Industry Continues To Exclude People With Disabilities, NEW YORK LAWYERS FOR THE PUBLIC INTEREST (May 2018), https://www.nylpi.org/wp-content/uploads/2018/05/Left-Behind-Report.pdf. Moreover, Ms. Lowell requires a WAV to get to NYC – it would be impractical for her husband to drive her to NYC in the family WAV and then use Lyft WAVs to travel around the city before driving back home in the family WAV.

Second, Defendant falsely claims that Ms. Lowell has not sufficiently established an intention to use Lyft in the Access Regions in the future. Opp at 26. Ms. Lowell demonstrated her intention to use Lyft WAVs in Boston MA, on multiple occasions. Lowell Decl. ¶¶ 8-18; Lowell Dep. Tr. 118:4-119:9. "That she cannot go further and identify the exact dates on which she will need a WAV does not render her allegation too speculative or indefinite to establish an injury. There is 'at least a substantial risk that such harm will occur.'" *Access Living*, 958 F.3d at 613 (quoting *Hummel v. St. Joseph Cty. Bd. Of Comm'rs*, 817 F.3d 1010, 1019 (7th Cir. 2016)). Ms. Lowell's stated intention is sufficient to establish standing.

### B.    Westchester Disabled On The Move Has Standing.

"An organization has associational standing if it can show that (1) its members would have standing to sue in their own right; (2) the interests it seeks to protect relate to the organization's purpose; and (3) neither the asserted claim nor the requested relief require the participation of individual members of the lawsuit." *Lowell*, 352 F. Supp. 3d at 256-57 (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). "To establish associational standing '[w]here an association is not a traditional voluntary membership organization, its constituents must nevertheless possess sufficient 'indicia of membership.'" *WILC*, 331 F.R.D. at 296 (quoting *Mental Hygiene Legal Serv. v. Cuomo*, 609 F. App'x 693, 695 (2d Cir. 2015)). Courts routinely find that independent living centers such as WDOMI have associational standing to represent people with disabilities.[15]

---

[15] *See, e.g.*, *Bronx Indep. Living Servs. v. Metro. Transportation Auth.*, No. 16-5023, 2021 WL 1177740, at *12 (S.D.N.Y. Mar. 29, 2021) ("[The plaintiff] is an independent living center that provides services and advocacy for persons with disabilities and disabled individuals make up more than half of its leadership and staff.  Courts in this District have found similar centers have sufficient indicia of membership to support associational standing."); *WILC*, 331 F.R.D. at 297 (holding that the plaintiff has associational standing because "WILC is staffed, directed, and driven by the individuals with disabilities that it seeks to serve"); *Brooklyn Ctr. for Indep. of the*

Defendant takes an overly restrictive view of the word "member" to claim that WDOMI cannot meet the associational standing requirement. Opp at 29. The specific nomenclature does not change the fact that WDOMI satisfies the "indicia of membership" standard required of similar organizations. WDOMI is staffed, directed, and driven by the individuals with disabilities that it seeks to serve, including wheelchair-users.[16] Defendant falsely claims that "WDOMI offers no evidence of any specific 'member' who claims to have been injured by Lyft's conduct." Opp at 29. Mr. Tanzman described the experiences of ███ members who could not access Lyft in his deposition[17], and specifically noted that he could provide more examples if Lyft wished, *see* Tanzman Dep. Tr. 154:18-22 (Frei-Pearson Decl., Ex. 6); Frei-Pearson Decl. at ¶6. and Plaintiffs submitted the declarations of Ed Sperling, Jesse Sahagun, John Strothenke, Khalida Sidiqi, and Marcus Blacknall, each of whom is a WDOMI member who has not downloaded the Lyft app and is denied WAV service by Lyft.[18]

WDOMI's constituents routinely travel in Westchester and many of them require WAVs. Samuels Decl., ¶¶ 10-13. A successful remedy in this action would drastically improve the lives of many of WDOMI's constituents by offering them the freedom and spontaneity that Lyft offers to its users who do not require a WAV. Samuels Decl., ¶¶ 10-13. WDOMI's decision to serve as

---

*Disabled ("BCID") v. Bloomberg*, 290 F.R.D. 409, 417 (S.D.N.Y. 2012) ("CIDNY is a 'service provider[ ] managed and directed by persons with disabilities for the purpose of serving persons with disabilities'" and thus "has sufficient 'indicia of membership' to 'function effectively as a membership organization' for the purposes of associational standing.") (quoting *Disability Advocs., Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 157 (2d Cir. 2012)). In *Sierra Club v. SCM Corp.*, the Second Circuit found that an organization would have standing by showing "one or more of its members . . . would be affected" by the alleged harm. 747 F.2d 99, 107 (2d Cir. 1984).

[16] Tanzman Decl., Ex. 7 to Frei-Pearson Decl., at ¶¶ 2-4; Frei-Pearson Decl. at ¶6; Samuels Decl., ¶¶ 9-13.

[17] *See* Tanzman Dep. Tr. 139:21-158:16.

[18] ECF No. 286-2 at 1-9, 45-47; *see also* Samuels Decl., ¶¶ 9-12.

10

a Plaintiff in this litigation was "based upon the real-life experiences and complaints of our consumer members." Tanzman Dep. Tr. at 86:10-17. WDOMI establishes associational standing.

### C.    Ms. Scudieri And Mr. Burr Have Standing.

Defendant's attempt to distinguish the standing analysis between a named plaintiff and a class representative is baseless. Defendant's sole cited authority for this proposition, *Kommer v. Bayer Consumer Health*, 710 F. App'x 43, 44 (2d Cir. 2018), draws no such a distinction and does not support Defendant's flawed interpretation. The truth is that class representatives that are not named plaintiffs are fully able to represent classes. *Peterson v. Alaska Commc'ns Sys. Grp., Inc.*, 328 F.R.D. 255, 268 (D. Alaska 2018) (appointing class representatives not named in complaint); *Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 343 n.97 (S.D.N.Y. 2004) (same).[19]

Ms. Scudieri, a resident of Decatur, Texas who works in Dallas, Texas, knew of Lyft's unequal WAV service because they never advertised that they had WAVs in Dallas and do not offer WAVs in Decatur. Scudieri Dep. Tr. 13:12-23 (Frei-Pearson Decl., Ex. 8). Also, it is common knowledge among Ms. Scudieri's peers in the disabled community that Lyft's WAV service is deficient. Scudieri Decl. ¶ 6. Ms. Scudieri would use Lyft's WAV offerings for commuting, traveling to doctor's appointments, and to travel to nearby Austin. Scudieri Dep. Tr. 39:25-40:15.

Mr. Burr learned of Lyft's unequal WAV services prior to joining this lawsuit through news articles, news reports, conversations with other people with disabilities. Burr Dep. Tr. 14:7-17, 18:11-21, 19:10-20:1, 34:21-35:2 (Frei-Pearson Decl., Ex. 9). Mr. Burr seeks to request WAVs

---

[19] None of Defendant's cited cases are procedurally analogous. *See Decastro v. City of N.Y.*, No. 16-3850, 2020 WL 4932778 (S.D.N.Y. Aug. 24, 2020) (considering a motion for leave to amend the complaint following decisions on class certification and summary judgment); *Fort Worth Empls.*, 862 F.Supp.2d at 328-330 (allowing the plaintiff to substitute a new class representative and plaintiff at the class certification stage and performing a standing analysis of the proposed plaintiff); *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 76 (E.D.N.Y. 2008) (performing no analysis of a distinction between class representatives and a named plaintiff).

through Lyft in NYC to visit his brother, attend appointments, travel for work, and go out for leisure. Burr Decl. ¶ 9. However, due to Lyft's deficient WAV service in NYC, he does not currently use Lyft. *Id.* Ms. Scudieri and Mr. Burr each establish that they have standing to pursue claims in this action.

## IV.     <u>Plaintiffs' Class Definitions Are Proper.</u>

Plaintiffs' class definitions are consistent with precedent in the Second Circuit and nationwide.[20] *See also* Frei-Pearson Decl., Ex. 10 (listing 30 ADA cases where courts certified classes with similar definitions). Rather than distinguish Plaintiffs' extensive case law, Defendant challenges Plaintiffs' class definitions by blatantly distorting Plaintiffs' claims and making standing arguments that are contrary by controlling precedent. Opp at 33-38. Furthermore, Defendant's argument that each class member must prove individual standing "has been foreclosed by the law of the Circuit." *Chen-Oster v. Goldman, Sachs & Co.*, No. 10-6950, 2022 WL 814074, at *19 (S.D.N.Y. Mar. 17, 2022) (Torres, J.). Courts "in this Circuit 'do not require that each member of a class submit evidence of personal standing. Instead, the class must be defined in such a way that anyone within it would have standing.'" *Id.* at *19 (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263-64 (2d Cir. 2006)); *see also Denney*, 443 F.3d at 264 ("Once it is

---

[20] Defendant relies upon *In re Petrobras Sec.* and *Brecher v. Republic of Argentina* to claim that class definitions are overbroad because they must include "objective criteria" that can establish "membership with definite bounds," but fails to mention that those actions concern Rule 23(b)(3) classes – *not* (b)(2) injunctive relief classes. Opp at 33 n.13; *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017) (ascertainability applies "separate from Rule 23(b)(3)'s requirements of predominance and superiority"); *Brecher v. Republic of Argentina*, 806 F.3d 22 (2d Cir. 2015) (solely considering Rule 23(b)(3) class). As explained at length in Plaintiffs' motion, it is unclear whether ascertainability applies to Rule 23(b)(2) class and, to the extent it is, its requirements are far "less stringent" because "a chief objective of this rule is to provide broad injunctive relief to large and amorphous classes not capable of certification under Rule 23(b)(3)." *Robinson*, 2020 WL 5884055, at *8; Mot. At § b(5). Conversely, as explained in Plaintiffs' motion and herein, the breadth of Plaintiffs' class definitions is consistent with those certified in Rule 23(b)(2) cases.

ascertained that there is a named plaintiff with the requisite standing, however, there is no requirement that the members of the class also proffer such evidence.") (quoting *PBA Local No. 38 v. Woodbridge Police Dep't*, 134 F.R.D. 96, 100 (D.N.J. 1991)). The proper standard is whether individuals who meet the class definition (*i.e.*, require WAVs and are denied equal access to Lyft's transportation service) are capable of having standing on that basis, which is satisfied here.

    *First*, Lyft asserts that Plaintiffs and class members could not have been injured because Lyft is not obligated to offer "equal access" to people with disabilities. Opp at 33-34 (citing *Noel v. New York City Taxi & Limousine Comm'n*, 687 F.3d 63, 73 (2d Cir. 2012)). Lyft's "fixation on [its] alleged non-obligation to provide 'equivalent service' is misplaced" because, as the *Namisnak* court explained, Defendant exclusively relies on *Noel* but *Noel* only considered a narrow sub-section of the ADA, namely, whether taxi companies are required to purchase or lease WAVs. *Namisnak v. Uber*, 444 F. Supp. 3d 1136, 1143 (N.D. Cal. 2020); *Noel*, 687 F.3d at 73 ("Title III expressly exempts taxi providers from purchasing or leasing 'accessible automobiles.'") (quoting 49 C.F.R. § 37.29(b)). Plaintiffs here are not demanding that Lyft (which argues to regulators that it is not a taxi company) purchase or lease WAVs, but rather identify a litany of discriminatory policies and potential modifications. Thus, Lyft's "'fixation on whether WAVs are specifically required by statute is unavailing in light of the broad language of the ADA.'" *Namisnak*, 444 F. Supp. 3d at 1143 (quoting *Crawford*, 2018 WL 1116725, at *4). "'A covered entity under Section 12184 is subject not just to the narrow requirements associated with the purchase of new vehicles, but the statute's broader anti-discrimination mandate.'" *Id.* (citation omitted).

    *Second*, Lyft's claim that a plaintiff must "personally encounter" the barrier to access to

establish standing is bereft of support. Opp at 34-35.[21] As the Second Circuit has unequivocally explained, a plaintiff "need not personally encounter each ADA violation [] to seek its removal" given the "ADA's mandate that disabled individuals need not 'engage in a futile gesture if such a person has actual notice that [the private entity] does not intend to comply with [ADA] provisions.'" *Kreisler*, 731 F.3d at 189 (quoting 42 U.S.C. § 12188(a)(1)).

*Third*, Lyft asserts that each member of the defined classes must prove they considered using Lyft *prior to this litigation* or they cannot claim to be deterred from using Lyft. Opp at 35. But Defendant cites no precedent requiring every putative class member be deterred *before the case was filed* to have Article III standing, and Plaintiffs are unable to locate any such case.[22] "It is well-settled, for standing purposes, that a class member 'need not be capable of sustaining a valid cause of action under applicable [] law,' so long as she or he 'can show that there is a possibility that defendant's conduct may have a future effect.'" *Robinson*, 2020 WL 5884055, at *10 (quoting *Denney*, 443 F.3d at 264-65) (collecting cases).

---

[21] Defendant wholly misrepresents *Feltzin v. Triangle Properties #1, LLC* and *Access Living of Metro. Chicago v. Uber Techs., Inc.* In *Feltzin*, the sentence prior to that quoted by Lyft explains that "[b]ecause plaintiff has not attempted to allege a deterrence-based injury, the Court focuses its inquiry on the former category," *i.e.*, "direct injury from personally encountering disability-based discrimination." No. 14-5131, 2016 WL 11599264, *4 (E.D.N.Y. Dec. 15, 2016). Similarly, the *Access Living* court explicitly explained that, *because Uber offered WAVs in Chicago*, the plaintiff had to plead "individualized needs and circumstances, including where [she] lives, what time of day she orders a WAV, where she wishes to travel to, and the like." 958 F.3d 604, 614-15 (7th Cir. 2020)) (distinguishing facts from instances where "as a categorical matter, [Uber] refuses to offer its ridesharing service to users of motorized wheelchairs").

[22] Lyft's reliance on *Castillo v. John Gore Org., Inc.* is puzzling. In *Castillo*, the plaintiff alleged that she was deterred from visiting a concert venue after seeing the defendant's policy prohibiting outside food, but the venue's website stated that it "is accessible to all patrons" and provided contact information for individuals with accessibility needs, which the plaintiff never contacted. No. 19-388, 2019 WL 6033088, at *5 (E.D.N.Y. Nov. 14, 2019). Lyft does not make any analogous factual claims here. *TransUnion LLC v. Ramirez* is also inapt because there the plaintiffs failed to demonstrate that the misleading information in the internal credit files itself constitutes a concrete harm. Here, Lyft's discrimination harms all people with disabilities.

"Courts within the Second Circuit have frequently certified classes similar to the proposed class here in breadth, including classes in which not all members have yet been – or necessarily will be – injured by each component of the allegedly unconstitutional customs, policies, or practices alleged." *Robinson*, 2020 WL 5884055, at *10. Indeed, an "injury-in-fact may simply be the fear or anxiety of future harm." *Denney*, 443 F.2d at 264.[23] *Marisol A. v. Giuliani* is particularly instructive. There, the Second Circuit affirmed class certification, even though "no single specific legal claim identified by the plaintiffs affects every member of the class" and class member suffered "differing harms" requiring different remedies because "'[c]ivil rights cases seeking broad declaratory or injunctive relief for a large and amorphous class . . . fall squarely into the category" of 23(b)(2) actions.'" 126 F.3d 372, 377-78 (2d Cir. 1997) (citation omitted).[24]

*Fourth*, Defendant selectively quotes several class members to claim that they have insufficient knowledge of Lyft's barriers to allege knowledge. In truth, virtually all of the witnesses testified that they heard either that Lyft was unreliable or that it does not provide WAV services, and therefore directly undercut Lyft's claim.[25]

*Fifth*, Lyft falsely claims that some class member testimony "mak[es] it clear that they will

---

[23] The *Robinson* court explained that, in that case, "class members *who have not yet attempted to vacate the default judgments against them (and who may not even know that such judgments exist)* nonetheless face an 'increased risk,' directly traceable to defendants' challenged customs, policies, and practices, they will be unable to vacate those judgments in the future." 2020 WL 5884055, at *10 (emphasis added). Similarly, in *Denney*, class members who received bad tax advice from defendants but had not been audited "still run the risk of being assessed a penalty" and thus had standing. 443 F.2d at 265.

[24] *Kempner v. Town of Greenwich* is inapplicable because the plaintiff sought damages, which necessitates that class members be ascertainable. 249 F.R.D. 15, 17-18 (D. Conn. 2008).

[25] *See, e.g.*, Daly Dep. Tr. 28: 2-13; Fields Dep. Tr. (Frei-Pearson Decl., Ex. 11) 48:13-49:13; McGreevy Dep. Tr. (Frei-Pearson Decl., Ex. 12) 32:4-13; McLeod Dep. Tr. (Frei-Pearson Decl., Ex. 13) 15:12-16:1; Mohammed Dep. Tr. (Frei-Pearson Decl., Ex. 14) 14:7-15:16; Page Dep. Tr. (Frei-Pearson Decl., Ex. 15) 22:15-23:6; Richardson Dep. Tr. (Frei-Pearson Decl., Ex. 16) 34:12-35:4; Romano Dep. Tr. (Frei-Pearson Decl., Ex. 17) 35:23-36:6

not use [] Lyft." Opp at 36-37. This time, Lyft claims that because class members will not use Lyft

because they own WAVs (as if no able-bodied people who own cars also use Lyft), use Uber (as

if Uber users do not also use Lyft), or have limited financial means – despite their explicit sworn

statements stating how and when they would use Lyft.[26] Of course, selectively quoting and

distorting testimony to support its narrative does not make Lyft's claims true.[27]

---

[26] *See, e.g.*, Daly Dep. Tr. 40:23-41:6; Matesky Dep. Tr. 46:22-47:12; McGreevy Decl. ¶8 (ECF
No. 286-7 at 73); Page Dep. Tr. 29:18-23; Presley Dep. Tr. (Frei-Pearson Decl., Ex. 18) 22:16-
20; Scudieri Dep. Tr. 74:5-22; Warum Dep. Tr. (Frei-Pearson Decl., Ex. 19) 23:5-12; Burr Dep.
Tr. 69:24-70:18; Kerper Dep. Tr. (Frei-Pearson Decl., Ex. 20) 41:22-42:2; Romano Dep. Tr.
42:11-22. Lyft further twists testimony to falsely assert that some class members could not
articulate concrete circumstances when they would use Lyft. *See, e.g.*, Fields Decl. ¶8
(describing a time when he would have used Lyft to travel to the Saints Center, but could not
find a ride); Mohammed Dep. Tr. 62: 10-20; Page Dep. Tr. 29:18-23 (expressing desire to use
Lyft to "hang[] out with friends, go[] to the park"); Pinchev Decl. ¶8 (describing desire to use
Lyft to travel to the airport); Kerper Dep. Tr. 18:4-12 (describing desire to take Lyft's WAV
service to the airport); Warum Dep. Tr. 23:5-12 ("For example, if my son had a doctor's
appointment that I could not attend, it would be super helpful if Lyft did have [WAVs] so my
wife would be able to take him to his appointments using Lyft, because she is not able to
physically pick him up and put him into the car herself."). Virtually every declarant testifies to
being able to afford to use Lyft and the Court should infer that almost everyone can do so, as the
average Lyft ride is approximately $15.00. Chan Dep. Tr. 230:21-231:9.

[27] *Calcano v. Swarovski N. Am. Ltd.*, where visually impaired plaintiffs sued stores under the
ADA for failing to carry braille gift cards, is unavailing. There, the court held that the plaintiffs
had insufficient standing because their alleged injuries were simply too implausible to be
legitimate. 36 F.4th 68, 77 (2d Cir. 2022). For instance, one plaintiff asserted that he would
return to a Kohl's that did not exist, and another claimed that he wanted to go back to Banana
Republic for its food. *Id.* Conversely, here, Plaintiffs and class members describe their desire to
use Lyft, including the particular circumstances of how they would use its WAV services. *Harty
v. Koutsourades* in inapplicable for similar reasons. No. 20-2779, 2021 WL 1299495 (S.D.N.Y.
Apr. 7, 2021) (explaining that repeat ADA "tester" plaintiff did not show desire to re-visit travel
website and did not allege details about future travel plans). In *Duran v. Henkel of Am., Inc.*, the
plaintiff conceded that there was no imminent risk of harm because he would not repurchase the
product as it exists. 450 F. Supp. 3d 337, 356 (S.D.N.Y. 2020). Here, the ADA's futile gesture
doctrine does not obligate Plaintiffs and class members to attempt to use Lyft, though their desire
to use Lyft remains ongoing. *Platform Real Est. Inc. v. U.S. Sec. & Exch. Comm'n* is likewise
inapposite. The imminence requirement there was specific to the standard for preempting a
threatened government enforcement action, which the court held did not exist at that time. No.
19-2575, 2020 WL 4482632, at *4 (S.D.N.Y. Aug. 3, 2020). Here, standing is not dependent on
a third party's potential future actions. Lyft appears to misunderstand the holding in *Raymond v.
New York State Dep't of Corr. & Cmty. Supervision*, which is analogous to the circumstances

16

**V.    Each Class Satisfies Rule 23(a)'s Requirements.**

    **A.    Each Class Is Sufficiently Numerous.**

Lyft disputes numerosity by (i) claiming that U.S. Census Bureau data for population estimates constitutes "simplistic analysis;" (ii) ignoring binding Second Circuit authority to argue that class members must proffer facts sufficient to be a plaintiff; and (iii) raising picayune issues about sworn testimony from class members who are denied service by Lyft. Each of Lyft's arguments are wrong. First, courts routinely rely on U.S. Census Bureau data for population estimates, and Lyft's own expert does too. Second, a class definition need only be defined so that class members are capable of standing. Third, Plaintiffs submitted declarations satisfy numerosity. Lyft's squabbles relating to these declarations are without merit, as are all of Lyft's arguments. *See, e.g.*, *WILC*, 331 F.R.D. at 288-89 (repudiating arguments similar to those Lyft makes here).

Here, Plaintiffs show that the number of individuals within the proposed class definitions is easily sufficient to meet the Second Circuit's relaxed numerosity standard for 23(b)(2) classes. Moreover, even if this Court disregards all statistical evidence, overwhelming case law, and common sense to hold that only the persons who submitted declarations count for numerosity purposes, and wholly accepts each of Lyft's legally and factually infirm arguments attacking certain declarations, there remain at least 180 individual declarants with standing, which plainly

---

and class allegations here. Opp at 37 n.16. As Lyft argues here, the *Raymond* defendant argued that the class definition was too broad because it included members who had not applied or been denied access to the discriminatory program, but rather had injuries that rendered the need to apply to the program futile. No. 20-1380, 2022 WL 97327, at *9 (N.D.N.Y. Jan. 11, 2022) (citing *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997)). Much like Lyft's established policies here, due to the defendant's clear policies in *Raymond*, "all members of the proposed class are denied access to a program from which non-disabled people can benefit. That is a past and present injury under the ADA and Rehabilitation Act." *Id.*

satisfies numerosity.  Frei-Pearson Decl. at ¶5.[28]

### 1.    Statistical Evidence Satisfies Numerosity.

Use of census data or other statistical data is sufficient to demonstrate numerosity in the Second Circuit. *See* Mot. at 30-31, n.67 (collecting cases using census data to find numerosity). In *WILC*, Judge Seibel relied upon reasonable population estimates to find numerosity. 331 F.R.D. at 288-89. Reasonable estimates based on population data warrant a similar outcome here.

Should this Court agree with Defendant's infirm argument that extrapolation from census data is uniquely improper here, Defendant's proffered expert also establishes numerosity in Westchester. Dr. Rysman estimates that approximately 1.1% of the population are WAV users, relying upon the U.S. Census Bureau's data (the same data Plaintiffs use to make their commonly accepted extrapolations). Defendant's Expert Report, ¶¶ 58-59. Dr. Rysman predicted that in Westchester, there are twelve WAV users per ZIP Code. *Id.* ¶ 69. With 79 ZIP Codes in Westchester, this predicts at least 948 WAV users in Westchester.[29] Considering that approximately 36% of Americans use ridesharing, the Westchester Class includes at least 341 individuals.[30] Even if 95% of these WAV users downloaded Lyft (despite its refusal to serve them), numerosity would still be satisfied. Dr. Rysman's estimates for Westchester also establish numerosity for New York State. Dr. Rysman's estimate of approximately 100,000 WAV users in

---

[28] Amicus briefs from organizations like Paralyzed Veterans of America, United Spinal Association, and the National Center for Independent Living, which represent millions of people with disabilities nationwide, further underscore that Lyft's numerosity arguments are wrong. ECF Nos. 223-225.

[29] Zip Code Boundaries, WESTCHESTER COUNTY GIS, https://gis.westchestergov.com/datasets/wcgis::zip-code-boundaries/about (last visited August 17, 2022).

[30] Jingjing Jiang, More Americans are using ride-hailing apps, PEW RESEARCH CENTER (Jan. 4, 2019), https://www.pewresearch.org/fact-tank/2019/01/04/more-americans-are-using-ride-hailing-apps/ (finding that 36% of adults use a ride-hailing service)

NYC easily establishes numerosity for the NYC Class. *Id.* ¶ 58. And it defies credulity for Lyft to dispute numerosity for the larger classes.

### 2.    Class Members' Declarations Also Satisfy Numerosity.

While unnecessary to carry their burden, Plaintiffs submitted declarations of hundreds of individual class members to further support numerosity.[31] The declarations, alone, also establish numerosity. Defendant does not present any substantive arguments to the contrary. Instead, Defendant attempts to muddy the waters by wrongly maligning a portion of class members.

Lyft's factual arguments about the class members are troublingly misleading. For example, Lyft claims that Sandy Demopoulous is not a class member because she "uses a motorized scooter only 'sometimes,' and explicitly struck out language indicating she had 'been deterred from using Lyft's services on many specific occasions.'" Opp at 40. But Ms. Demopoulous testified, "I cannot transfer to a vehicle that is not wheelchair-accessible," "I wanted to go to the White Plains Galleria but I couldn't get a ride. I wish I could have used Lyft," and "If Lyft provide reliable access to [WAVs], I would be eager to use Lyft[.]." ECF No. 286-2 at 35-37.[32] Ms. Demopoulous establishes that she is a class member.[33]

Virtually all of Lyft's complaints regarding class members' declarations are without merit. Without explanation as to the relevance, Lyft complains that the declarations of three WDOMI members are infirm because they were sworn to years ago and submitted in opposition to Lyft's

---

[31] Defendant's argument that class members' standing is at issue is wrong. *See infra* at § III.

[32] Similarly, Lyft complains that Lenore Lupie's statement that she seeks to take a Lyft home from a doctor's appointment is not sufficiently specific, Opp at 41, even though Ms. Lupie states that she lives in Westchester, requires a WAV, and seeks to use Lyft to go to her doctors. Frei-Pearson Decl. Ex. 2 at 41-43. Nothing more is necessary to establish that she is a class member.

[33] Again, Defendant only refers to case law that identifies the standard for a plaintiff, not a class member. *See W. Point Realty*, 28 F.4th at 442-44.

motion to dismiss but offers no rationale as to why the date to which they were sworn to matters. Opp at 41. Defendant offers no plausible explanation for why Mr. Burr's use of Uber affects his ability to be a class member or why Mr. Matesky, who routinely travels to and within Westchester and requires WAVs, is not a class member because he uses his own vehicle to travel.[34] Opp at 41. Marcus Blacknall, Kevin Lange, Khalida Sidiqi, and Brian Hill each testified that they require WAVs and travel in Westchester.  *See* ECF No. 286-2 at 14-16, 30-32, 37-39, 45-47. Nothing more is necessary to establish that they are class members.  Nonetheless, Messrs. Blacknell, and Sidiqi, and Skehan have submitted updated declarations affirming that they will use Lyft as soon as it stops refusing to serve people with disabilities.  *See* Fre-Pearson Decl. Exs. 21-23.[35]

Therefore, if this Court declines to follow common practice and consider the statistical data, the declarations prove that there are at least 13 individuals who require WAVs in Westchester County and are unable to use Lyft. Of course, the Court, following established precent and its own common sense, can and should infer that there are numerous additional class members beyond those who signed declarations. *See, e.g.*, *WILC*, 331 F.R.D. at 288.

Defendant does not bother to dispute that Plaintiffs satisfy the numerosity standard for the Access Regions and Non-Access Regions Classes by submitting 70 and 176 class member declarations for those respective regions. Rather, outside of Westchester, Defendant attacks that a total of 16 class members, who submitted declarations stating that either they or their minor children (who are class members) require the use of WAVs and are denied equal service by Lyft, cannot be class members because they sometimes use a foldable wheelchair when they do not have

[34] Surely this Court can take Judicial Notice of the fact that Your Honor may have a car and also sometimes Uber or Lyft, or certainly knows hundreds of people that fall into this category.

[35] Lyft's only non-frivolous attack on the declarants is its identification of three Westchester declarants who downloaded Lyft and thus, even though Lyft refuses to serve them, may be subject to arbitration.  Opp at 41.

access to a WAV, use Uber, or did not affirmative state that they have the financial resources to pay for a Lyft. Opp at 42. Defendant's objections to 16 out of 246 declarations is perplexing. While the objections themselves are nothing more than conclusory statements devoid of legal reasoning, even if the Court were to accept these unfounded attacks and ignore each of these 16 declarations, the remaining *unchallenged* declarations easily prove numerosity.

**B.**    **Plaintiffs Easily Meet The Second Circuit's Low Threshold For Commonality And Lyft's Commonality Argument Ignores Second Circuit Law.**

Lyft inexplicably fails to address the well-established principle that "'[w]hen the plaintiff class seeks to enjoin a practice or policy, rather than individualized relief, commonality is assumed.'" Mot. at 42-43 (quoting *WILC*, 331 F.R.D. at 292). This is because commonality is satisfied where the defendant's challenged acts and omissions are not specific to a particular plaintiff – even where variations exist in how class members are denied access and some class members are not denied access. *See, e.g.*, *WILC*, 331 F.R.D. at 292 (collecting cases). Instead, Defendant improperly manufactures a legal standard that conflates evaluating commonality and the merits of Plaintiffs' claims, arguing that to satisfy commonality Plaintiffs must prove their proposed modification are effective and reasonable in cost. Opp 44-49. Defendant's argument is contrary to extensive case law, including its own citations.[36]

---

[36] Lyft cites cases that are inapposite because, unlike here, the plaintiffs in Lyft's cited cases did not allege systematic and classwide discriminatory policies. *See* Opp 44-47. In *Allen v. Ollie's Bargain Outlet, Inc.*, the court denied commonality because the plaintiffs did not present "evidence of a centralized store blueprint" such that the court "cannot say claims against those types of access barriers in interior paths of travel can be productively litigated together." 37 F.4th 890, 903 (3d Cir. 2022). The *Allen* court contrasted the allegations with *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216-17 (10th Cir. 2014), where the court found that a common design in all 231 stores raised common question. *Id.* Contrary to *Allen* and akin to *Colorado Cross*, Plaintiffs here allege specific, common corporate policies across each of the Classes. *C.R. Educ. & Enf't Ctr. v. Hosp. Properties Tr.* is also inapt. There, the Ninth Circuit affirmed "that HPT did not have a policy regarding how its eligible independent contractors had to comply with the ADA." 867 F.3d 1093, 1104 (9th Cir. 2017). In

Plaintiffs propose injunctive relief and modifications to remedy classwide policies on a classwide basis. Whether the relief will be effective is a merits issue that should not be resolved at this stage. *See supra* at 3. Lyft's uniform, centralized policies across each Class, and Plaintiffs' uniform reasonable modifications, create common issues. Mot. at 41-46. In the Non-Access Region Class, one common question is whether Lyft's policy of categorical blocking WAVs deprives people with disabilities the opportunity to participate in Lyft's services. Whether Lyft's unique requirement that people with disabilities enable a hidden toggle to view WAV options alongside standard options constitutes a barrier to access in the Access Regions is also a common question. Commonality is readily satisfied for each Class because the answers to these questions will drive the litigation's resolution and any potential remedy. *See, e.g.*, *WILC*, 331 F.R.D. 292.

---

*Bloom v. City of San Diego*, the court found commonality and certified a broader (b)(2) class of individuals challenging an ordinance that prohibited individuals from parking vehicles used as shelter on public streets overnight – despite "some factual differences" regarding enforcement. No. 17-02324, 2021 WL 8053533, at *5, 9 (S.D. Cal. June 8, 2021) ("In a civil rights suit such as this one . . . commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members. [I]ndividual factual differences among class members pose no obstacle to commonality."). The court did not find commonality as to the disability subclass because the ordinance did not include a systematic policy against people with disabilities; as a result, "[w]hether Plaintiffs were denied public parking because of their disability would require a factual analysis in each particular case." *Id.* at *11. Similarly, the *Dukes* plaintiffs sought to certify of a nationwide class of Wal-Mart employees alleging gender discrimination. 564 U.S. 338. The plaintiffs did not satisfy commonality because Wal-Mart did not use a uniform "testing procedure or other companywide evaluation" to make pay and promotion decisions, but rather gave managers discretion. *Id.* at 353-59. The Supreme Court clarified that instances where there is "a generalized policy of discrimination" would be amenable to certification. *Id.* Thus, none of Lyft's cited cases discuss – let alone support – Lyft's assertion that Plaintiffs must demonstrate the viability of their proposed relief to satisfy commonality. Rather, they uniformly explain that commonality is satisfied when a defendant implements a policy that has a discriminatory effect. *See also, e.g.*, *Parsons v. Ryan*, 289 F.R.D. 513, 524 (D. Ariz. 2013), *aff'd*, 754 F.3d 657 (9th Cir. 2014) ("Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate.").

### C.    <u>Typicality Is Satisfied.</u>

Lyft also invents a new standard for typicality that is unsupported by case law. Lyft claims that because Plaintiffs cannot assert the same reasonable modification for all regions, Plaintiffs cannot establish typicality.  Opp at 49. Every aspect of this argument is incorrect.

Lyft dubiously asserts that Plaintiffs' requested modifications may not apply uniformly across all Lyft regions. Here, Lyft's refusal to provide adequate WAV services has harmed all class members and there is nothing unique about Lyft's treatment of the class representatives. Concretely, Lyft's refusal to serve Ms. Lowell is exactly the same as its refusal to serve all absent class members. *See Robinson*, 2020 WL 5884055, at *13 (finding typicality where class representatives and plaintiffs would suffer injury from a "'unitary course of conduct by a single system.'") (quoting *BCID*, 290 F.R.D. at 419).

The relatively minor factual differences concerning ride times between municipalities do not change the fact that Lyft's general practice in each municipality is to provide inadequate WAV service. *See, e.g.*, *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, at 610-11 (N.D.N.Y. 2004) (finding typicality among a nationwide class bringing suit against stores in different municipalities with different features, as "[t]he effect of these alleged barriers and policies is the same for the named plaintiffs as for the class. The named plaintiffs challenge these barriers under the same statutes and remedial theories as the class."); *WILC*, 331 F.R.D. at 294 ("'While these exclusions were effectuated in a variety of ways . . . defendants' general practices and course of conduct and the harms suffered by class and subclass members satisfy the typicality requirement for purposes of

class certification.'") (quoting *D.S.*, 255 F.R.D. at 71-72).[37] Here, the class members' injury arises from precisely the same course of action and typicality is plainly established.

Even assuming *arguendo* that Lyft's new typicality standard were supported by law (it is not), Lyft offers no support for its claim that Plaintiffs' reasonable modifications cannot apply across regions beyond making the merits argument that population density (and therefore ride density and regional driver numbers) differs across regions. Opp at 49. Although Lyft provides lower quality service in less dense population areas, Lyft treats able-bodied people in the same manner across all regions. Plaintiffs present a multitude of reasonable modifications that are applicable to every Lyft region, accounting for size or ride density. *See e.g.*, Plaintiffs' Expert Rebuttal at 8-9, Table 1. While Lyft disputes the effectiveness of Plaintiffs' suggested modifications, no individualized factual determinations are necessary in this case.

### D.    Defendant's Adequacy Concerns Are Not Well-Taken.

Courts are properly "'wary of [defendants'] efforts to defeat representation of a class on grounds of inadequacy' where, as here, the effect of an inadequacy finding would be to 'eliminate any class representation.'" *Adkins v. Morgan Stanley*, 307 F.R.D. 119, 140 (S.D.N.Y. 2015) (alterations in original) (citations omitted and collecting cases).[38] Nonetheless, Lyft argues that the class representatives are not adequate to represent the class because Lyft's standard service levels presently vary across its regions, and WAV service levels will as well. Opp at 50-52.

But the class representatives simply seek the opportunity to request WAVs nationwide and

---

[37] Lyft's reliance on *Elisa W. v. City of N.Y.* is inapposite, as it concerned a situation in which the class representatives' claims *arose* from individualized sets of circumstances. No. 15-5273, 2021 WL 4027013, at *11 (S.D.N.Y. Sept. 3,2021) ("it is not possible to determine what caused a permanency delay . . . without evaluating all of the other contributing facts and influences.").

[38] "[P]ermitting defendants to police the adequacy of class representatives and their counsel is like 'permitting a fox to take charge of the chicken's house.'" *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 47 (S.D.N.Y. 2012) (citation omitted).

that Lyft treat WAV service like its standard service in each respective region. Lyft ignores the fact that it discriminates (i) by refusing to provide *any* service to people with disabilities in non-Access Regions; (ii) by using the toggle and implementing other identical discriminatory policies in all of the Access Regions Other Than NYC; and (iii) by intentionally suppressing service in NYC. The same discriminatory animus is reflected in Lyft's refusal to serve people with disabilities at all in the non-Access Regions, and its decision to provide the bare minimum level of service necessary to mollify regulators in the Access Regions. As that animus manifests differently, each Class seeks slightly different relief. However, the relief sought does not conflict. All relief sought would force Lyft to provide WAV service everywhere it operates and would benefit *all* class members.  Lyft's adequacy argument is a red herring.[39]

## VI.    **Conclusion**

Plaintiffs respectfully request that the Court grant Plaintiffs' motion, certify Plaintiffs' proposed Classes, appoint Plaintiffs, Mr. Burr, and Ms. Scudieri as class representatives, and Plaintiffs' counsel as class counsel, and grant further relief as the Court deems just and proper.


Dated: August 26, 2022


*s/ Jeremiah Frei-Pearson*

---

[39] Lyft's adequacy section cites just three cases involving class certification. Opp 50-52. In *Amchem Prods. v. Windsor*, 521 U.S. 591, 625-26 (1997), the Supreme Court noted that "[n]o settlement class called to our attention is as sprawling as this one," and decertified a (b)(3) settlement class because the named plaintiffs represented one class (not five, as here) and the class members had extremely divergent financial interests in the litigation. In *Fishon v. Peloton Interactive, Inc.*, No. 19-11711, 2022 WL 179771, (S.D.N.Y. Jan. 19, 2022), another (b)(3) case, the inadequate named plaintiff engaged in serious "misconduct", including "repeatedly impersonat[ing] an attorney" and providing arguably "perjurious" testimony. 2022 WL 179771 at * 11. Finally, in *Walker v. Long Island R.R., Inc.*, No. 79-5429, 1982 WL 180 (S.D.N.Y. Jan. 13, 1982), after certifying a class, the court dismissed a related complaint brought by a class member.  None of these cases support Lyft's adequacy arguments.

Jeremiah Frei-Pearson
Chantal Khalil
Joshua Cottle
**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**
1 North Broadway, Suite 900
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 824-1561
jfrei-pearson@fbfglaw.com
ckhalil@fbfglaw.com
achan@fbfglaw.com
jcottle@fbfglaw.com

Michael F. Ram (*Pro Hac Vice*)
**MORGAN AND MORGAN
COMPLEX LITIGATION GROUP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Tel:  415-358-6913
mram@forthepeople.com

Michael T. Hellmann (*Pro Hac Vice*)
**ADA COMPLIANCE SERVICE**
27 Fieldstone Drive, Suite 209
Hartsdale, NY 10530
adatty@aol.com
Tel. 646-662-1335
Fax. (914) 682-8518

*Attorneys for Plaintiffs
and the Putative Classes*