UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HARRIET LOWELL, et al.,

                         Plaintiffs,

         -against-

LYFT, INC.,

                         Defendant.

**OPINION & ORDER**

17-CV-06251 (PMH)

PHILIP M. HALPERN, United States District Judge:

Before the Court is Magistrate Judge Andrew E. Krause's December 22, 2022 Report and Recommendation ("Report") recommending that the Court grant in part and deny in part the motion for class certification filed by Harriet Lowell ("Lowell") and Westchester Disabled on the Move, Inc. ("WDOMI," and together, "Plaintiffs"), and certify three proposed classes.[1] (Doc. 340, "R&R").

Objections to the Report, pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), were due on January 5, 2023. On December 23, 2022, Lyft, Inc. ("Defendant") sought, and the Court granted, an extension of time to file objections. (Docs. 341, 342). Defendant filed its objections on January 19, 2023 (Doc. 350, "Obj.") and, after an additional extension was granted, Plaintiff's response thereto was filed on February 16, 2023 (Doc. 358, "Resp."; *see also* Docs. 359-361).[2] The Court also permitted the filing of a brief by Amici Curiae, Association of

---

[1] By Order dated January 25, 2019, Judge Nelson S. Román—to whom this case was assigned prior to its reassignment to this Court on April 3, 2020—referred this case to the assigned Magistrate Judge for general pretrial purposes. (Doc. 55). On March 14, 2022, this Court entered an Amended Order referring the class certification motion specifically to Magistrate Judge Krause. (Doc. 200).

[2] Plaintiff filed a request to seal in connection with its response to Defendant's objections. (Doc. 357). The Court grants the request such that the redacted documents filed on the public docket (Docs. 358, 359) will remain the publicly-filed versions and the unredacted versions (Docs. 360, 361) will remain under seal.

Programs for Rural Independent Living, the National Council on Independent Living, Paralyzed Veterans of America, and United Spinal Association, which was filed on February 23, 2023. (Doc. 362).

The Court, in reviewing a magistrate judge's report and recommendation, "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Parties may object to a report and recommendation "[w]ithin fourteen days after being served with a copy . . . ." *Id.* "A party that objects to a report and recommendation must point out the specific portions of the report and recommendation to which they object." *J.P.T. Auto., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 659 F. Supp. 2d 350, 352 (E.D.N.Y. 2009). If a party timely objects to the findings or recommendations of the magistrate judge, the court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38 (2d Cir. 1997) (quoting 28 U.S.C. § 636(b)(1)). If a party fails to object to a particular portion of a report and recommendation, further review thereof is generally precluded. *Clemmons v. Lee*, No. 13-CV-04969, 2022 WL 255737, at *1 (S.D.N.Y. Jan. 27, 2022) (citing *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002)). The district court "may adopt those portions of the report to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Id.* (internal citation omitted).

## ANALYSIS

Defendant challenges Magistrate Judge Krause's findings and recommendations concerning Plaintiffs' standing as to their claims regarding the Non-Access Regions[3] and the Rule

---

[3] Unless otherwise indicated, capitalized terms have the same meanings ascribed to them in the Report.

23 requirements for class certification, urging this Court to reject the Report and enter judgment in its favor based on Plaintiffs' failure to establish Article III standing. Underscoring each of Defendant's specific objections, as framed by Defendant, are two alleged general errors permeating the Report: (1) "accepting the false equivalence" proffered by Plaintiffs between access to a feature in the app with access to transportation (Obj. at 3-5); and (2) presuming that the act of discrimination in this case is the failure to provide WAV service (Obj. at 5-7). The Court disagrees with each of Defendant's depictions of the Report.

As to the first issue, Magistrate Judge Krause did not conflate access to the app with access to transportation. He simply recognized that drivers cannot offer WAV services without Defendant first making that option available in the Non-Access Regions. Whether the categorical preclusion, because of Defendant's policies, practices, and procedures, of WAV service in Non-Access Regions violates the ADA goes to the merits of Plaintiffs' claim and is simply an inappropriate inquiry on this motion for class certification.

As to the second issue, Magistrate Judge Krause clearly identified Plaintiffs' allegations of discrimination, quoting from the operative pleading: "violation of Title III of the ADA, which prohibits discrimination 'on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce' . . . [and] that '[b]y failing to make reasonable modifications to its policies, practices, and procedures to make [WAVs] available with equivalent reliability and similar wait times as inaccessible vehicles, Defendant denies users of motorized and other non-folding wheelchairs, including Plaintiff . . . Lowell, WDOMI members, and class members, full and equal enjoyment of Defendant's transportation service in violation of Title III of the ADA.'" (R&R 35-36 (quoting Am. Compl. ¶¶ 126, 138)). This accurate depiction

3

of the case did not constitute error and is certainly not—as Defendant suggests—a lone failure to provide WAV service.

The Court considers those two claimed errors to the extent Defendant has raised them as infecting the more specific challenged findings and recommendations in the Report. Each of the specific objections raised by Defendant is addressed below.

I.     Standing

Defendant objects to Magistrate Judge Krause's legal analysis and ultimate conclusion concerning Plaintiffs' constitutional standing to maintain this action, arguing that Plaintiffs failed to satisfy the injury in fact and redressability requirements of standing. Caselaw interpreting Article III of the United States Constitution, as Magistrate Judge Krause correctly explained, requires a plaintiff to satisfy three elements to establish standing. (R&R at 8 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" *Lujan*, 504 U.S. at 560 (internal citations omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Second, the plaintiff must show "a causal connection between the injury and the conduct complained of . . . ." *Id.* at 560 (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). Third, it must be likely that a favorable judicial decision will redress the injury. *Id.* at 561. Defendant's objection concerns the first and third elements: the existence of an injury in fact and redressability.

A.     Injury in Fact

The Second Circuit, "[i]n the ADA context, [has] held that a plaintiff seeking injunctive relief has suffered an injury in fact when: '(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was

reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [businesses] to plaintiff's home, that plaintiff intended to return to the subject location." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (quoting *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d Cir. 2013) (citing *Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008))).

"Courts in the Second Circuit have expanded upon the first and third elements of this [injury in fact] test." *Castillo v. John Gore Org., Inc.*, No. 19-CV-00388, 2019 WL 6033088, at *3 (E.D.N.Y. Nov. 14, 2019). With respect to the first element, "[t]he Second Circuit has been unambiguous that . . . 'deterrence' can constitute a past injury." (Obj. at 23 (citing *Kreisler*, 731 F.3d at 188)). "Thus, if a plaintiff has not 'personally encounter[ed]' a barrier to access, she has nonetheless suffered an injury if she had 'actual knowledge of the barrier complained of and has been deterred from visiting the public accommodation because of that barrier.'" *Castillo*, 2019 WL 6033088, at *3 (quoting *Perdum v. Forest City Ratner Cos.*, 174 F. Supp. 3d 706, 714-15 (E.D.N.Y. 2016), *aff'd*, 677 F. App'x 2 (2d Cir. 2017)).[4]

The third element of the injury in fact test—which is the subject of Defendant's objection— is that it must be "reasonable to infer . . . that plaintiff intended to return to the subject location." *Calcano*, 36 F.4th at 74. Courts in this Circuit have linked the third element—intent to return—to the constitutional requirement that an injury in fact be imminent, rather than conjectural or

---

[4] This test, sometimes referred to as the "deterrence effect" doctrine, has also been linked in the ADA context to the text of the statute itself, which states that a person with a disability does not need "to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions." 42 U.S.C. § 12188(a)(1). Indeed, at the motion to dismiss stage in this case, Judge Román applied the deterrence effect test to Plaintiffs' allegations, invoking the "futile gesture" language of the statute to govern analysis of the injury in fact requirement of constitutional standing. *See Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 255 (S.D.N.Y. 2018). Putting aside whether the deterrence effect doctrine and ADA text are synonymous, interchangeable, or distinct, the result remains the same under either articulation.

hypothetical. *Castillo*, 2019 WL 6033088, at *4 (citing *Feltzin v. Stone Equities, LLC*, No. 16-CV-06457, 2018 WL 1115135, at *10 (E.D.N.Y. Feb. 8, 2018), *adopted by*, 2018 WL 1114682 (E.D.N.Y. Feb. 26, 2018)); *see, e.g., Calcano*, 36 F.4th at 74-75 ("[T]he focus of the third factor— i.e., intent to return based on past visits and proximity—is to ensure that 'the risk of harm is sufficiently imminent and substantial' to establish standing." (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021))); *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022).

The Second Circuit, in 2013, considered in *Kreisler* whether the plaintiff had standing to pursue an ADA case against a diner where a wheelchair bound plaintiff never attempted to enter the diner because the seven to eight-inch step deterred him from attempting to enter. 731 F.3d 184, 188. The Circuit drew from its prior decision in *Camarillo*, 518 F.3d 153, and "adopt[ed] the Ninth Circuit's ruling in *Pickern*" to hold that "deterrence constitutes an injury under the ADA." *Kreisler*, 731 F.3d at 188 (citing *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137-38 (9th Cir. 2002) ("[T]he fact that the wheelchair-inaccessible entrance deterred [the plaintiff] from accessing the Diner established a concrete and particularized injury; [the plaintiff] need not attempt to overcome an obvious barrier.")). The Ninth Circuit, in *Pickern*, had held that "in stating that he is currently deterred from attempting to gain access to the [defendant's] store, [the plaintiff] has stated sufficient facts to show concrete, particularized injury." *Pickern*, 293 F.3d at 1137-38.

By "adopt[ing] the Ninth Circuit's ruling in *Pickern*," *Kreisler* may have created some uncertainty, because in *Pickern*, in addition to holding that deterrence can satisfy the past injury element, the court also held that:

> [A] plaintiff who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers "imminent injury." [Plaintiff] has visited [defendant's] store in the past and states that he has actual knowledge of the barriers to

6

> access at that store. [Plaintiff] also states that he prefers to shop at [defendant's] markets and that he would shop at the [defendant's] market if it were accessible. This is sufficient to establish actual or imminent injury for purposes of standing."

*Pickern*, 293 F.3d at 1138. The Second Circuit in *Kreisler*, however, appears only to have adopted *Pickern* to the extent its holding bore on the first element—past injury—but not to the extent that *Pickern* can be read to endorse the deterrence effect doctrine as a substitute for the third element—intent to return.

It appears that since *Pickern*, the Ninth Circuit's ADA jurisprudence in this area has evolved concerning deterrence and future injury: "[A] plaintiff must establish a sufficient future injury by alleging that they are either currently deterred from visiting the place of public accommodation because of a barrier, or that they were previously deterred and that they intend to return to the place of public accommodation, where they are likely to reencounter the barrier." *Langer v. Kiser*, 57 F.4th 1085, 1094 (9th Cir. 2023) (internal citations omitted). Clearly, in the Ninth Circuit, the deterrence effect of a barrier is one way to establish a future injury.

The Second Circuit's jurisprudence since *Kreisler* has evolved as well, maintaining its tether to the "intent to return" element of the injury in fact requirement. *Calcano*, 36 F.4th at 75 ("[I]ntent to return is neither new nor is it an additional requirement—it is how our Court has determined whether a plaintiff has demonstrated a likelihood of future injury for injunctive relief."); *see also Harty v. Greenwich Hosp. Grp., LLC*, 536 F. App'x 154, 155 n.1 (2d Cir. 2013) ("Assuming, arguendo, that under *Kreisler*, [plaintiff] does not need to demonstrate an intention to return to the Hampton Inn in Stamford, Connecticut, but rather must allege that he is deterred from staying there, his complaint and affidavit must still give rise to 'a reasonable inference that he would frequent [the Inn] were the violation remedied.'" (quoting *Kreisler*, 731 F.3d at 188)). The Second Circuit in *Calcano* further elaborated on the intent to return element, explaining that

"the central inquiry is . . . if, 'examined under the "totality of all relevant facts,"' the plaintiff plausibly alleges 'a real and immediate threat of future injury." 36 F.4th at 75.

Defendant, citing to the 2022 *Calcano and Harty* decisions, argues that Magistrate Judge Krause "disregarded recent Second Circuit authority in favor of a D.C. district court opinion to hold that 'in the context of the ADA . . . the plaintiff need not establish that he or she would have otherwise actually or imminently visited and/or patronized a place with [access] barriers,' but instead, 'a plaintiff must simply allege that he or she has become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation.'" (Obj. at 23 (citing R&R at 11 (quoting *Equal Rts. Ctr. v. Uber Techs., Inc.*, 525 F. Supp. 3d 62, 76 (D.D.C. 2021)))). The gravamen of Defendant's objection is that Plaintiffs failed to demonstrate a "plausible intent" to use Defendant's service in the future, thereby failing to establish that the risk of harm is sufficiently imminent and substantial so as "to 'pursue forward-looking, injunctive relief.'" (*Id.* (quoting *Calcano*, 36 F.4th at 72)).

Defendant's objection concerning injury in fact thus concerns the third element of the test: whether Plaintiffs have established "sufficient facts to show a plausible intention" to return to the offending location or, in this case, to use Defendant's service. A plaintiff cannot merely "plead[ ] the magic words that [she] intends to return" but must instead establish "a real and immediate threat of future injury." *Calcano*, 36 F.4th at 75; *see also Tavarez-Vargas v. Annie's Publishing, LLC*, No. 21-CV-09862, 2023 WL 2499966, at *2 (S.D.N.Y. Mar. 14, 2023) ("other courts in this district have concluded that the Second Circuit's recent decision in *Calcano* 'raised the bar appreciably for adequately pleading standing to seek injunctive relief in ADA cases'" (quoting

*Loadholt v. Dungarees, Inc.*, No. 22-CV-04699, 2023 WL 2024792, at *2 (S.D.N.Y. Feb. 15, 2023))).[5]

Whether Magistrate Judge Krause substituted the deterrence effect doctrine for plausible proof of intent to return, as Defendant argues, is a red herring. Notwithstanding the comment that "a plaintiff must simply allege that he or she has become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation" to establish standing (R&R at 11), Magistrate Judge Krause actually utilized both the Ninth Circuit's approach in *Pickern* (and the District Court for the District of Columbia in *Equal Rts. Ctr. v. Uber Techs., Inc.*), as well as the Second Circuit's approach in *Kreisler*, *Harty*, and *Calcano* when he analyzed Plaintiff's evidence concerning Lowell's "intent to return." (R&R at 16-17) ("Moreover, Lowell has expressed an intention to use the Lyft app once it offers WAV service in Westchester County." (quoting Doc. 290, "Lowell Decl."))).

Magistrate Judge Krause correctly noted that "since it would have been a 'futile gesture' for Lowell to have downloaded and tried to use the Lyft app in the first instance, it is manifest that she never 'visited' the app and thus could not have an intent to return to it. Rather, the risk of imminent future harm to Lowell is based on the continued lack of WAV service available on Lyft's app in the Non-Access Regions." (R&R at 16). That statement did not, as Defendant suggests, convert this case into a case about its app. Neither Magistrate Judge Krause nor this Court construes Plaintiffs' claims to concern unequal access to an app, but rather that Defendant failed

---

[5] A named plaintiff, at the class certification stage, must prove standing by a preponderance of the evidence. *Calvo v. City of New York*, No. 14-CV-07246, 2017 WL 4231431, at *3 (S.D.N.Y. Sept. 21, 2017); s*ee also Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) ("'[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.' . . . Thus, the showing that must be made in order to withstand a dismissal for lack of standing increases as the suit proceeds." (quoting *Lujan*, 504 U.S. at 561)).

to make reasonable modifications to its policies, practices, and procedures that are necessary to afford on-demand WAV service.

The Court, in considering the future injury element, is constrained to analogize the caselaw concerning "intent to return based on past visits and proximity" to the instant scenario. Clearly, the facts of this case do not line up with the extant Second Circuit caselaw because this case does not concern a plaintiff's "return" to a building, or a restaurant, or a hotel, or a website. Here, rather, the Court must examine whether Plaintiffs "plausibly allege[ ] a real and immediate threat of future injury," *Calcano*, 36 F.4th at 75, as it relates to their use of Defendant's transportation services. The Court's inquiry, in other words, is whether Plaintiffs have shown that it is more likely than not, based upon the evidence in the record, that they, who were previously deterred from using Defendant's transportation services, intend to use Defendant's services in the future, should Defendant's alleged policies, practices, and procedures be remedied. *Kreisler*, 731 F.3d at 188.[6] Defendant's insistence that Magistrate Judge Krause should have relied upon *Calcano* and *Harty*

---

[6] *See also Langer*, 57 F.4th at 1094 ("a plaintiff must establish a sufficient future injury by alleging that they are either currently deterred from visiting the place of public accommodation because of a barrier, or that they were previously deterred and that they intend to return to the place of public accommodation, where they are likely to reencounter the barrier."); S*mith v. Golden China of Red Wing, Inc.*, 987 F.3d 1205, 1209 (8th Cir. 2021) ("In the ADA context, plaintiffs need not engage in the 'futile gesture' of visiting a building containing known barriers that the owner has no intention of remedying, but they must at least prove knowledge of the barriers *and that they would visit the building in the imminent future but for those barriers*." (internal quotation marks omitted)); *Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 757 (6th Cir. 2019) ("a plaintiff demonstrates the requisite threat of future injury where he establishes (1) a plausible intent to return to the noncompliant accommodation or (2) that he would return, but is deterred from visiting the noncompliant accommodation because of the alleged accessibility barriers." (internal quotation marks omitted)); *Deutsch v. Travis Cnty. Shoe Hosp., Inc.*, 721 F. App'x 336, 340 (5th Cir. 2018) (explaining that plaintiffs plead sufficient facts where they "allege[ ] in detail how specific inaccessible [locations] negatively affect their day-to-day lives by forcing them to take longer and more dangerous routes to their destinations"); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1336 (11th Cir. 2013) ("a plaintiff seeking an injunction under Title III either must have attempted to return to the non-compliant building or at least intend to do so in the future." (internal quotation marks omitted); *Disabled Americans For Equal Access, Inc. v. Ferries Del Caribe, Inc.*, 405 F.3d 60, 64 (1st Cir. 2005) (a disabled individual "who is threatened with harm in the future because of existing or imminently threatened noncompliance with the ADA suffers actual or imminent harm sufficient to confer standing.").

for "intent to return" guidance does not alter the conclusion set forth in the Report with respect to the injury in fact requirement of standing.

This Court, considering *de novo* the more fulsome "totality of all relevant facts" test with the ultimate findings and recommendation that Lowell has sufficiently demonstrated standing, agrees with Magistrate Judge Krause's conclusion. Plaintiffs offered Lowell's declaration and testimony to establish her intention to use Defendant's transportation services in the future, should WAV service be made available in Westchester County. Based upon its own review, this Court finds that Lowell established "sufficient facts to show a plausible intention" to use Defendant's transportation service in the future so as to satisfy the third element of the injury in fact requirement of standing. (Lowell Decl. ¶ 10 ("I would use Lyft for transportation in Westchester County but cannot do so as Lyft does not offer WAV service in Westchester County."); ¶ 15 ("I would like to travel to New York City more often but, unfortunately, I am limited by inadequate transportation options because Westchester County's ParaTransit service does not extend to New York City, public transportation options between Westchester and New York City are largely inaccessible, and private taxicabs are significantly more expensive than Lyft."); ¶ 16 ("I would have used Lyft's services to visit my husband in the hospital but for my knowledge that Lyft does not offer services to mobility-impaired individuals."); ¶ 18 ("If I had reliable access to Lyft's transportation services, I would travel to, from, and around New York City more often.");  ¶ 23 ("If Lyft were ADA-compliant and provided reliable access to me and my motorized scooter, I would be eager to use its services."); Doc. 301-5, "Lowell Tr." at 111:2-7 ("I would use [Lyft] . . . if I went into the City and I had no reason to bring my husband. I would use it locally."); 111:19-112:1 ("I might visit a friend. I might go to a museum or some other event like that. Things we don't have here. I might want to go to the park."); 138:6-8 ("I would love to use Lyft. It would be great to use it in White

Plains. It would be extremely helpful, you know."); 149:1-15 ("I would like to be able to go to appointments. I would like to be able to go to disability events, which are in the area in Westchester. I would like to visit my best friend in the City. I would like to go to a medical appointment on my own. I would like to go out to dinner with somebody in the City or a concert, you know, or any number of events. I would like to be able to use Lyft in an emergency for myself or my husband or a friend or someone close to me. I would like that freedom for the same reason there is Lyft, for the same reason there are services like taxis.")).

Contrary to Defendant's objections, these facts are sufficient to demonstrate, by a preponderance of the evidence, Lowell's plausible intention to imminently use Defendant's transportation service in the future should its policies, practices, and procedures be modified. Defendant argues that Lowell's stated intention to use Lyft in the future is "implausible given her admissions that she has never used a WAV taxi, or even Uber WAV, in any location, including New York City." (Obj. at 24-25). Defendant is essentially arguing that Lowell's sworn statements are not credible in light of her past conduct. The Court need not determine whether Lowell's past practices are a predictor of future conduct. At this juncture in the case, Lowell's testimony that she would use Defendant's services if its policies, practices, and procedures were modified is sufficient.

Defendant also challenges WDOMI's standing based upon the same predicate argument. Plaintiffs submitted, as Defendant acknowledges, declarations of WDOMI's members who seek to use Defendant's transportation services in the future. (*See, e.g.,* Doc. 287-2 at 2, 4 ("I occasionally use ParaTransit and traditional taxi services to travel. These services require that I schedule rides hours or even a full day in advance, and prevent me from spontaneous travel. . . . If Lyft was ADA-compliant and was to accommodate me and my motorized wheelchair, I would be

eager to use its services."); *id*. at 6 ("Access to Lyft would undoubtedly facilitate my travel around the Tri-State Area. There are many instances when I would use Lyft if it were to provide accessible services. For example, I enjoy going to dinner, movies, and concerts with my friends. We often go out in Westchester, New York City, and Hoboken, NJ. Because there are virtually no affordable, reliable, and accessible transportation services available, it is very difficult for me to travel to and from such destinations.")). This Court finds, for substantially the same reasons as it did with Lowell, that WDOMI has sufficiently demonstrated, by a preponderance of the evidence, its constituents' plausible intention to use Defendant's transportation service in the future.

Accordingly, the Court adopts Magistrate Judge Krause's finding that Plaintiffs have established an injury in fact.

B.  Redressability

Magistrate Judge Krause concluded that Plaintiffs established redressability upon a finding that "[a]t least certain elements of the injunctive relief that Plaintiffs seek–for example, removing the categorical block of WAVs on the Lyft platform in the Non-Access Regions . . . would be redressed if there were a favorable decision in this litigation." (R&R at 19). Defendant objects to this conclusion, arguing that "Plaintiffs rely on speculation, not evidence, to claim that changes to Lyft's App would result in WAV rides." [7] (Obj. at 12). Defendant's objection misses the mark. The issue is not whether *the design* of Defendant's app is the cause of Plaintiff's injury. Rather, Plaintiffs' contention is that they are injured "because Lyft prohibits any WAV service through the App in the Non-Access Regions." (Resp. at 14).

---

[7] Defendant, in a footnote, objects to Magistrate Judge Krause's July 5, 2022 decision denying its request to file a *Daubert* motion to exclude Plaintiffs' expert's opinions for the purposes of class certification. (Obj. at 14 n.3). This Court rejects any such objection to that decision as untimely under Rule 72(a).

Defendant's drivers cannot offer WAV services without Defendant first revising its policies, practices, and procedures to make that option available in the Non-Access Regions. (*See id.* n.6 (citing Doc. 287-14 at 118:12-15 (transcript of Defendant's designated Rule 30(b)(6) witness, testifying that WAV drivers cannot appear as WAVs in non-Access Regions); *id.* at 120:1-6 ("Q: So in other regions of the country, where Lyft drivers have WAV-accessible vehicles, there is no way for that information to be made known to drivers -- to passengers who would require a WAV vehicle? A: That is correct."); Doc. 287-8 at 242:22-25 (transcript of Defendant's designated Rule 30(b)(6) witness, testifying as follows: "Q: In all the markets where Lyft operates that are not access markets, Lyft does not provide rides for people who require WAV[s]? A: I guess that's correct, yes."))).

"That another cause may exist for Plaintiffs' alleged injuries—the possibility that [Defendant's] drivers will not drive [WAVs]—does not change that conclusion." *Namisnak v. Uber Techs., Inc.*, 971 F.3d 1088, 1094 (9th Cir. 2020). In other words, and as the Report concluded, at least some of the specific relief requested by Plaintiffs would be redressed by a favorable decision herein, and therefore, the Court adopts Magistrate Judge Krause's recommendation that Plaintiffs have established redressability. Plaintiffs have therefore established Article III standing and Defendant's request to enter judgment in its favor for lack of standing is denied.

II.    Class Definitions

The Court, having determined that Magistrate Judge Krause correctly found that Plaintiffs have constitutional standing to maintain this action, rejects Defendant's contention that the Report recommends certification of classes that include individuals who lack constitutional standing. Because the Court has found that Plaintiffs established standing, "that is enough to confer standing

on the entire class." *Hyland v. Navient Corp.*, 48 F.4th 110, 118 (2d Cir. 2022) (citing *Amador v. Andrews*, 655 F.3d 89, 99 (2d Cir. 2011)). Indeed, there is no requirement that Plaintiffs establish the standing of all members of each proposed class to be certified. *See id*. at 117-18; *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263-64 (2d Cir. 2006).[8] Defendant specifically argues that the class definitions are overbroad in that they embrace putative members with no connection to Defendant such that they have not been injured by Defendant and may never use Defendant's services in the future. (Obj. at 17-18). That a class member has not yet been injured by Defendant does not mean the class definition is too broad or that it includes class members without standing. The class definitions here limit membership to those "who are denied equal access to Lyft's transportation services" meaning, those who are injured by Defendant's alleged noncompliance with the ADA. This limitation necessarily restricts the proposed classes to only those members who have standing against Defendant through the denial of equal access.

Although modification of the recommended class definitions is not warranted for the reasons raised by Defendant, the Court will and does modify the second and third class definitions to clarify that WDOMI does not assert claims under the NYSHRL, as Judge Román previously determined that WDOMI "cannot satisfy all of the elements for organizational standing and cannot satisfy all of the elements for associational standing specifically for its . . . NYSHRL claims." *Lowell*, 352 F. Supp. 3d at 259.

---

[8] The Court rejects Defendant's characterization of the Report's analysis of *Hyland*'s impact on *Denney*. (Obj. at 17-18). Magistrate Judge Krause did not suggest that *Hyland* overruled *Denney*. (*See* R&R at 31-32).

III.    Federal Rule of Civil Procedure 23

Defendant objects to Magistrate Judge Krause's findings concerning each of the requirements of Federal Rules of Civil Procedure 23(a), including the implied requirement of ascertainability, and 23(b)(2). The Court considers each in turn.

A.    Numerosity

Magistrate Judge Krause concluded that Plaintiffs satisfied the numerosity requirement of Rule 23(a) because: (i) statistical data led to a reasonable inference that the number of class members were substantial; and (ii) declarations of putative class members and amici support a finding of numerosity. (R&R at 37-39). Defendant argues that Magistrate Judge Krause erred in these findings because he "accepted the general statistical data and faulty declarations from Plaintiffs to meet their burden in establishing the class size." (Obj. at 21). Defendant's objections fail to call into question either of these bases for Magistrate Judge Krause's determination.

Plaintiffs need only establish that there are 40 or more members of the putative class for the Court to presume numerosity has been met. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). The statistical data from the U.S. Census Bureau relied on by Magistrate Judge Krause further establishes that numerosity is met. "Courts within this Circuit have frequently relied on reasonable inferences based on statistical data to establish numerosity." *Westchester Indep. Living Ctr., Inc. v. SUNY Purchase*, 331 F.R.D. 279, 288-89 (S.D.N.Y. 2019).   Judge Furman, for example, relied on Census Bureau data in *Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg* to "estimate that there are roughly 900,000 people with disabilities in New York City" and therefore establish numerosity. 290 F.R.D. 409, 418 (S.D.N.Y. 2012). The data permissibly relied on by Magistrate Judge Krause here shows that the number of class members in each proposed class exceeds the threshold amount of 40 more than a hundred times over. Defendant's

objection that the statistical estimates of the classes size are overinclusive and therefore speculative fails because the proposed classes, even if overinclusive, are not so to the point of defeating numerosity.

For the estimates to be so inaccurate that numerosity is not met by the statistics, more than 99% of the people included in them would have to be excluded. There is no plausible explanation for how the estimates could be so skewed. If class action plaintiffs could use only statistical evidence that establishes numerosity by *more than a factor of one hundred*, they would never be able to use statistical evidence and, in any event, there is no requirement that numerosity be established to a precise number. *See Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993) (Courts do not require "evidence of exact class size or identity of class members to satisfy the numerosity requirement."). The statistical data here establishes to a near certainty that there are more than 40 members in each proposed class. No more is required.

In any event, Plaintiffs submitted hundreds of declarations from putative class members, which alone would establish a class size sufficient for joinder to be impracticable and numerosity therefore met. Defendant's objection to the declarations—*i.e.*, that some putative class members have not demonstrated concrete injury—is inapposite for two reasons identified by Magistrate Judge Krause: (i) "th[e] percentage of disqualified class members is not so substantial as to preclude a finding that Plaintiffs have satisfied the numerosity requirement for each of the proposed classes" (R&R at 39 n.20); and (ii) Defendant conflates this argument with their standing argument, rejected above (*id*. at 39).[9]

---

[9] The Court notes that Judge Alsup's decision in *Indep. Living Res. Ctr. San Francisco v. Lyft, Inc.*, No. 19-CV-01438, 2020 WL 6802410 (N.D. Cal. Nov. 19, 2020), which denied class certification because numerosity was lacking is distinguishable from this case for the simple reason that here, Plaintiffs provided significantly more than 40 declarations whereas there, plaintiffs had only submitted 25.

Accordingly, the Court adopts Magistrate Krause's recommendation that Plaintiffs have established numerosity.

    B. <u>Commonality</u>

Magistrate Judge Krause concluded that Plaintiffs satisfied the commonality requirement of Rule 23(a) because Plaintiffs "challenge policies and practices that Lyft implements on class-wide bases with respect to each of the putative classes, and propose injunctive relief tailored to the respective classes." (R&R at 41). Magistrate Judge Krause noted that "[w]here, as here, 'the plaintiff class seeks to enjoin a practice or policy, rather than individualized relief, commonality is assumed.'" (*Id.* (quoting *Westchester Indep. Living Ctr.*, 331 F.R.D. at 292)). Defendant objects to this conclusion, relying principally on *Wal-Mart Stores, Inc. v. Dukes*, and argues that Magistrate Judge Krause erred by not conducting "a 'rigorous analysis' of the elements of Plaintiffs' reasonable modification claim to determine whether a common issue will in fact drive the resolution of their case." (Obj. at 13 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011))).

The instant case is readily distinguishable from *Dukes*. There, plaintiffs—complaining of sex-based pay and promotion disparities—sought to certify a nationwide class of approximately 1.5 million female Wal-Mart employees without pointing to any nationwide policies or practices that would furnish the "glue holding together" the millions of individual employment decisions that plaintiffs wished to put at issue. *Dukes*, 564 U.S. at 352. "The only corporate policy" that the plaintiffs in *Dukes* were able to establish was "Wal-Mart's 'policy' of allowing *discretion* by local supervisors over employment matters." *Id*. at 355 (emphasis in the original). Plaintiffs here, in stark contrast with *Dukes*, have established that they were unable to utilize Defendant's services because "Lyft has a uniform centralized policy and practice of affirmatively and categorically

precluding WAV service in all Non-Access Regions." (R&R at 41 (citing Pls.' Revised Mem. at 44)).

The present case is, rather, analogous to *Westchester Indep. Living Ctr.*, where Judge Seibel certified a class of students and visitors with mobility disabilities and held that plaintiffs established commonality where "the core issue presented is whether Defendants engaged in a general course of conduct of not providing accessible paths of travel throughout the campus, thereby denying people with mobility disabilities meaningful access." 331 F.R.D at 293. Plaintiffs here similarly present the core issue of whether Defendant "implements a uniform policy of preventing WAV service in the Non-Access Regions." (Resp. at 19). The answer to this question "will resolve all of the class claims." *Westchester Indep. Living Ctr.*, 331 F.R.D. at 293.

Accordingly, the Court adopts Magistrate Judge Krause's recommendation that Plaintiffs have established commonality.

C.  Typicality

Magistrate Judge Krause concluded that Plaintiffs satisfied the typicality requirement of Rule 23(a) because "the ADA claim of each putative class arises from the same course of allegedly discriminatory conduct" and "each putative class makes uniform arguments regarding the reasonable modifications that Lyft could implement to make its services accessible." (R&R at 42). Defendant argues that Magistrate Judge Krause erred by failing to determine "whether 'each class member's claim' actually arises from 'the same course of events.'" (Obj. at 15 (quoting *Westchester Indep. Living Ctr.*, 331 F.R.D. at 293)). Defendant further argues that Magistrate Judge Krause "compounded his error by presuming that requiring Lyft to modify its App would lead to a uniform outcome." (*Id.*).

Magistrate Judge Krause did, contrary to Defendant's contentions, determine that Plaintiffs' claims arose "from a unitary course of conduct by a single system" before concluding that Plaintiffs satisfied the typicality requirement. (R&R at 43). Plaintiffs contend that Defendant "uniformly refuses to provide WAV service" in all Non-Access Regions. (Resp. at 20). Defendant argues that "the ADA does not require Lyft to provide WAV service." (Obj. at 15). There is no dispute, however, that Defendant engages in the unitary course of conduct of refusing WAV service in Non-Access Regions. (Resp. at 14, n.6; R&R at 41). Establishing the existence of such a "unitary policy is sufficient for typicality." *Westchester Indep. Living Ctr.*, 331 F.R.D. at 294. The question of whether Defendant's categorical preclusion of WAV service in Non-Access Regions violated the ADA goes to the merits of Plaintiffs' claim and is not relevant to the class certification determination presently before the Court. Furthermore, the fact that Plaintiffs' proposed modifications may impact class members differently, as Defendant suggests, has no bearing on the typicality determination. (Obj. at 15-16). Plaintiffs, rather, need only "establish a general policy or course of conduct that was responsible for the barriers" faced by class members in order to establish typicality. *Westchester Indep. Living Ctr.*, 331 F.R.D. at 294. That standard has been amply satisfied here.

Accordingly, the Court adopts Magistrate Judge Krause's recommendation that Plaintiffs have established typicality.

## D. Adequacy

Defendant objects to Magistrate Judge Krause's determination that Lowell and WDOMI are adequate class representatives. The Report concluded they are adequate because they "have an interest in vigorously pursuing the claims of the class; they seek the same relief as the class members they seek to represent; and they do not have interests that are antagonistic to the class

members." (R&R at 44).[10]  The Rule 23(a)(4) adequacy requirement "serves to uncover conflicts of interest between named parties and the class[es] they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Buffington v. Progressive Advanced Ins. Co.*, 342 F.R.D. 66, 72 (S.D.N.Y. 2022) (internal quotation removed).

Defendant argues that the named Plaintiffs have a "conflict" with putative class members in Non-Access Regions because they demand "equality" with Lyft's "Standard Mode." (Obj. at 22). Defendant's argument misconstrues Plaintiffs' theory of the case to manufacture a conflict where none exists. This case is not about the app, it is about Defendant's policies, practices, and procedures concerning transportation services. Plaintiffs argue that Defendant's policies with respect to WAV services are discriminatory in all Non-Access Regions and, in all such regions, the named Plaintiffs and the Proposed Classes seek the same relief: "for Lyft to implement reasonable modifications that will rectify its discriminatory WAV policies." (Resp. at 22). That the availability of WAV rides—as well as non-WAV rides—may vary between different regions is irrelevant to adequacy. That issue, as Magistrate Krause noted, "speaks once again to the merits of the proposed modifications and whether they are reasonable." (R&R at 43).

Accordingly, the Court adopts Magistrate Krause's recommendation that Plaintiffs have established adequacy.

E.  Ascertainability

Magistrate Judge Krause correctly explained that, as a legal matter, "[b]oth the Second Circuit and numerous district courts in the circuit have approved of class definitions without

---

[10] Defendant does not challenge the recommendation to appoint Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, Morgan & Morgan, P.C., and Michael Hellman of ADA compliance specialists as the class counsel. The Court, accordingly, adopts that recommendation as well.

precise ascertainability under Rule 23(b)(2) . . . [because] [i]t would be illogical to require precise ascertainability in a suit that seeks no class damages." (R&R at 45 (quoting *Robinson v. N.Y.C. Transit Auth.*, No. 19-CV-01404, 2020 WL 5884055, at *8 (S.D.N.Y. Aug. 31, 2020), *adopted by* 2020 WL 5814189 (S.D.N.Y. Sept. 30, 2020))).  Magistrate Judge Krause found that, in any event, Plaintiffs satisfied any implied ascertainability requirement because each of the proposed classes is defined using objective criteria. Defendant does not address the legal issue of whether ascertainability is required for a Rule 23(b)(2) class and only argues in passing that ascertainability is not met because defining a class by reference to "denial of equal access" to members is not an objective criterion.

Defendant relies entirely on the *Indep. Living Res. Ctr. San Francisco* case for its objection to ascertainability. 2020 WL 6802410 (N.D. Cal. Nov. 19, 2020). Ascertainability, however, was not at issue in that case. *See id.* at *2 (noting that "[o]ur court of appeals has additionally held that there is no explicit requirement in Rule 23 that a proposed class be ascertainable." (citing *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 929 (9th Cir. 2018))). Rather, that decision focused on the numerosity requirement, which the Court here has already determined has been met.

Moreover, decisions from this District have found criteria similar to the "denied equal access" definition to be sufficiently objective for ascertainability purposes, especially in light of the relaxed requirements for Rule 23(b)(2) classes. *See, e.g. Westchester Indep. Living Ctr.*, 331 F.R.D. at 299 ("the class is defined using objective criteria – whether the person has a mobility disability and whether the person has used or will use a pedestrian right-of-way on the campus – and thus the class is sufficiently ascertainable.").

Accordingly, the Court adopts Magistrate Krause's recommendation that, to the extent required for a Rule 23(b)(2) class, Plaintiffs have established ascertainability.

F.   Rule 23(b)(2)

Magistrate Judge Krause concluded that Plaintiffs met the Rule 23(b)(2) standard because "Plaintiffs challenge uniform policies that Lyft follows in each of the difference regions covered by each of the proposed classes and seek the implementation of proposed reasonable modifications tailored to each of those uniform policies." (R&R at 47). Defendant argues that Magistrate Judge Krause erred in reaching this conclusion because "Plaintiffs failed to prove the availability of a uniform remedy." (Obj. at 7-8). Defendant further argues that Plaintiffs failed to meet their burden under Rule 23(b)(2) because "there is no evidence based on which this Court could conclude that *all* putative class members would thereby benefit from an injunction ordering the redesign of Lyft's App." (*Id.* at 11).

Rule 23(b)(2) "does not require that 'the relief to each member of the class be identical, only that it be beneficial.'" *Barrows v. Becerra*, 24 F.4th 116, 132 (2d Cir. 2022) (quoting *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 97 (2d Cir. 2015)). Plaintiffs propose "enjoining Lyft from prohibiting WAV service in all Non-Access Regions." (Resp. at 24). Such injunctive relief would be beneficial to all class members as each would have the ability to hail a WAV using Lyft. *See Barrows*, 24 F.4th at 132 (holding that Plaintiffs satisfied Rule 23(b)(2) where the proposed injunctive relief would provide class members with "the ability to appeal the denial of Part A coverage when they are reclassified from an inpatient to an outpatient receiving observation care"). The injunctive relief requested here is sufficient for the purposes of Rule 23(b)(2). *Id.*

Accordingly, the Court adopts Magistrate Krause's recommendation that Plaintiffs have satisfied the requirements of Rule 23(b)(2) with respect to each of their proposed classes.

**CONCLUSION**

Based upon the foregoing, Defendant's objections to the Report are overruled, and the Court adopts the Report in its entirety, except with the modifications noted below to the recommended class definitions.

The Court certifies the following three classes:

o      All residents of or visitors to any and all regions serviced by Lyft, aside from Lyft's Access Regions or NYC, who require WAVs for vehicular transportation, and who are denied equal access to Lyft's transportation services (the Non-Access Region Class) (represented by Lowell and WDOMI and asserting claims under the ADA)

o      All residents of or visitors to any and all regions serviced by Lyft in New York State aside from NYC who require WAVs for vehicular transportation, and who are denied equal access to Lyft's transportation services (the New York State Other Than NYC Class) (represented by Lowell asserting claims under the ADA and NYSHRL and WDOMI asserting claims under the ADA); and

o      All residents of or visitors to Westchester County who require WAVs for vehicular transportation, and who are denied equal access to Lyft's transportation services (the Westchester Class) represented by Lowell asserting claims under the ADA and NYSHRL and WDOMI asserting claims under the ADA).

Excluded from the classes are people who (1) have downloaded the Lyft app; (2) have brought separate litigation against Lyft for its failure to serve people with disabilities; and/or (3) are residents of Ohio State University or the University of Texas at Austin who do not leave those campuses.

The Court appoints Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, Morgan & Morgan, P.C., and Michael Hellman of ADA compliance specialists as class counsel.

A status conference has been scheduled for April 5, 2023 at 12:30 p.m. to be held by telephone to discuss the filing of revised pretrial submissions. At the time of the scheduled conference, all parties shall call the following number: (888) 398-2342; access code 3456831.

For the sake of clarity on the electronic docket, the Court grants the request to maintain under seal the proposed findings of fact and conclusions of law that were filed on December 7, 2022. (Doc. 328).

The Clerk of Court is respectfully directed to terminate the pending motions (Doc. 282; Doc. 328; Doc. 357).

**SO ORDERED:**

Dated:    White Plains, New York
           March 24, 2023

_____
PHILIP M. HALPERN
United States District Judge