**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HARRIET LOWELL and WESTCHESTER DISABLED ON THE MOVE, INC., individually and on behalf of all other similarly situated, | Case No.  7:17-cv-06251-PMH-AEK |
| Plaintiffs, | |
| v. | **[PROPOSED] JOINT PRETRIAL ORDER** |
| LYFT, INC., | |
| Defendant. | |

**i.**       **The full caption of the action.**

*Harriett Lowell and Westchester Disabled on the Move, Inc. v. Lyft, Inc.*, No. 7:17-cv-06251-PMH-

AEK (S.D.N.Y.)

**ii.**      **The amount of trial time that each party anticipates needing for their case in chief.**

Plaintiffs anticipate that their case in chief will require three days.

Defendant anticipates that its case in chief will require no more than two court days.

**iii.**     **The names, addresses (including firm names), email addresses, and office and mobile telephone and fax numbers of trial counsel.**

Trial Counsel for Plaintiffs Harriet Lowell and Westchester Disabled on the Move, Inc., and the Classes:[1]

Andrew Finkelstein
Jeremiah Frei-Pearson
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
1 North Broadway, Suite 900
White Plains, New York 10601
Tel: 914-298-3281
Mobile: 718-666-7693
Fax: 914-824-1561
afinkelstein@lawampm.com
jfrei-pearson@fbfglaw.com

Michael F. Ram (admitted *pro hac vice*)
Marie Appel (admitted *pro hac vice*)
**MORGAN AND MORGAN**
**COMPLEX LITIGATION GROUP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Tel:  415-358-6913
Mobile: 415-846-3862
Fax: 415-358-6923
mram@forthepeople.com
MAppel@forthepeople.com

Michael T. Hellmann (admitted *pro hac vice*)
**ADA COMPLIANCE SERVICE**
27 Fieldstone Drive, Suite 209

---

[1] Jeremiah Frei-Pearson will be Plaintiffs' lead counsel.  Additional counsel may sit in the gallery.

Hartsdale, NY 10530
adatty@aol.com
Tel: 646-662-1335
Mobile:
Fax: 914-682-8518


<u>Trial Counsel for Defendant Lyft, Inc.:</u>

Jiyun Cameron Lee (Admitted Pro Hac Vice)
Marie Jonas (Admitted Pro Hac Vice)
**FOLGER LEVIN LLP**
33 New Montgomery Street, 19th Floor
San Francisco, CA 94105
Telephone: 415-625-1050
Mobile (Lee): 415-987-5086
Mobile (Jonas): 510-219-4924
Facsimile:  415-625-1091
jlee@folgerlevin.com
mjonas@folgerlevin.com

**iv.    A brief statement by plaintiff as to the basis of subject-matter jurisdiction, and a brief statement by each other party as to the presence or absence of subject-matter jurisdiction.  Such statements shall include citations to all statutes relied on and relevant facts as to citizenship and jurisdictional amount.**

**<u>Plaintiff</u>:**        Plaintiffs seek injunctive relief under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* ("ADA") and the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.* ("NYSHRL").  This Court has federal question jurisdiction under the ADA pursuant to 28 U.S.C. § 1343 and 28 U.S.C. § 1331, and has supplemental jurisdiction over Plaintiffs' remaining claims pursuant to 28 U.S.C. § 1367 because those claims are related to Plaintiffs' federal claims and arise out of a common nucleus of operative facts.

**<u>Defendant</u>:**    Defendant asserts Plaintiffs cannot establish subject matter jurisdiction because they lack standing to assert any claims on behalf of themselves or any class.

*First*, Plaintiffs lack standing to bring claims anywhere outside of Westchester County. *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 72 (2d Cir. 2022).

*Second*, Plaintiffs cannot establish, by a preponderance of the evidence, "a causal connection between the injury and the conduct complained of." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). Plaintiffs' asserted injury is a lack of reliable access to on-demand transportation by WAVs. But Plaintiffs cannot show that Lyft's alleged failure to make reasonable modifications to policies, practices, or procedures causes this harm because they have no evidence of a ready supply of WAVs for the Lyft platform.

*Third,* Plaintiffs cannot establish, by a preponderance of the evidence, that it is "'likely,' as opposed to merely 'speculative,' that their injury will be 'redressed by a favorable decision'" because Plaintiffs have no evidence of a ready supply of WAVs and WAV drivers for the Lyft platform. *See Lujan,* 504 U.S. at 561 (quoting *Simon*, 426 U.S. at 38, 43).

**v.      A brief summary by each party of the claims and defenses that party has asserted that remain to be tried, without recital of evidentiary matter but including citations to all statutes relied on.  The parties shall also identify all claims and defenses previously asserted that are not to be tried.**

Plaintiffs' Claims:

1.  Disability discrimination in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182(a), 12182(b)(2)(A)(ii), 12184(a), 12184(b)(2)(A), by engaging in the following types of discrimination:

    a.  Refusing to implement the following reasonable modifications, 42 U.S.C. §§ 12182(b)(2)(A)(ii), 12184(b)(2)(A):

        i.  Remove the current categorical preclusion ("blocker") of WAVs on its platform in approximately 96% of its service regions (the "non-Access

Regions"[2]) and prevent implementation of Lyft's hidden Access Mode toggle to view WAV options on the App's home screen. Lyft's policies and practices prevent WAV drivers from identifying their vehicles as WAVs and riders from having the option to select WAVs, even when they are available.

ii. Ask all drivers on its platform in the non-Access Regions and those onboarding in the non-Access Regions whether they have access to WAVs and whether they are interested in driving WAVs on Lyft's platform. Plaintiffs envision that this question would be added to Lyft's mandatory driver onboarding process, during which Lyft requires drivers to disclose all relevant information about their vehicles, such as makes and models, and insurance information.

iii. Utilize cross-dispatching (*i.e.*, allow WAV drivers to receive and accept ride requests for different ride modes) and prioritization logic (*i.e.*, whereby Lyft prioritizes dispatching WAVs to riders seeking WAVs to ensure efficient vehicle allocation) to optimize WAV drivers' efficiencies and profitability.

iv. Explore and form partnerships with car rental, taxi, non-emergency medical transportation, and other transportation companies that have WAVs, as Lyft's competitors have done to improve WAV service.

v. Include WAVs as options in Lyft's Express Drive and FlexDrive programs

---

[2] The non-Access Regions include the following Classes and geographical areas: the Westchester County Class; the New York State Other Than New York City Class; and the Non-Access Region Class.

for its existing and potential drivers.

vi. Engage in both WAV driver- and rider-facing marketing to attract potential WAV drivers and to increase awareness of WAVs on Lyft's platform among potential WAV riders, and thereby increase the supply of WAVs and demand for WAV services on Lyft's app. Lyft may do so by employing targeted advertising and advertising campaigns similar to those Lyft uses for its standard and other non-WAV services.

vii. Increase the supply of WAVs on its platform by offering potential drivers baseline bonuses and incentives for guaranteed periods of time, such as six months, one year, or eighteen months.

viii. Implement a ten-cent accessibility surcharge on all rides nationwide to fund robust WAV services.

b. Failing to remove barriers where such removal is readily achievable; where removal of a barrier is not readily achievable, failing to make services available through alternative methods if such methods are readily achievable, 42 U.S.C. § 12182(b)(2)(A)(iv), 12184(b)(2)(C).

2. Disability discrimination in violation of the New York State Human Rights Law, N.Y. Exec. Law §§ 296(2)(a) by engaging in the following types of discrimination:

a. Failing to implement the reasonable modifications identified above in Section V(1)(a)-(i), § 296(2)(c)(i); and

b. Refusing to remove barriers where such removal is readily achievable, § 296(2)(c)(iii).

Plaintiffs previously asserted claims for disparate treatment and disparate impact under the New York City Human Rights Law and a claim for Declaratory Relief, which are not to be tried.

<u>Defendant's Defenses:</u>

1. Defenses To Plaintiffs' Claim Under the ADA:

   a. As to Plaintiffs' claim that Lyft failed to make requested reasonable modifications to its policies, practices, or procedures under 42 U.S.C. §§ 12182(b)(2)(A)(ii) and 12184(b)(2)(A), Lyft asserts the following defenses:

      i. Plaintiffs cannot state a claim against Lyft under 42 U.S.C. § 12182(b)(2) because Lyft is not a "public accommodation." For purposes of this lawsuit, Lyft does not contest that it is subject to 42 U.S.C. § 12184.

      ii. Plaintiffs cannot meet their burden of proving that they ever requested that these alleged "reasonable modifications" be made. *Dudley v. Hannaford Bros. Co.,* 333 F.3d 299, 307 (1st Cir. 2003); *see also PGA Tour, Inc. v. Martin*, 532 U.S. 661, 683 n.38 (2001).

      iii. Plaintiffs cannot meet their burden of proving that any of their proposed "reasonable modifications" would be effective or reasonable in cost as required under *Staron v. McDonald's Corp.*, 51 F.3d 353, 356 (2d Cir. 1995).

      iv. As a matter of law, the ADA does not require Lyft to provide WAVs. *Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 73 (2d Cir. 2012); *see also Toomer v. City Cab*, 443 F.3d 1191, 1195 (10th Cir. 2006); 28 C.F.R. § 36.307.

      v. In the ADA, Congress specifically exempted private entities like Lyft from having to purchase or lease WAVs. *See* 42 U.S.C. § 12184(b)(3). A general provision of the ADA, such as 42 U.S.C. § 12184(b)(2)(A), cannot be construed to override a specific exemption provided by

6

Congress in Section 12184(b)(3). *RadLAX Gateway Hotel, LLC v. Amalgamated Bank,* 556 U.S. 639, 645 (2012).

vi. Plaintiffs, who have never downloaded or used the Lyft app, lack standing to pursue certain of the proposed modifications relating to the design or operation of the Lyft app. *Harty v. West Point Realty,* 28 F.4th 435, 443 (2d Cir. 2022).

vii. Requiring Lyft to provide WAVs would fundamentally alter the nature of Lyft's business and/or its ridesharing platform. *See* 42 U.S.C. § 12184(b)(2)(A) (citing § 12182(b)(2)(A)(ii)) and 42 U.S.C. § 12184(b)(2)(B) (citing § 12182(b)(2)(A)(iii)).

b. As to Plaintiffs' claim that Lyft fails to remove barriers where such removal is readily achievable; where removal of a barrier is not readily achievable, failing to make services available through alternative methods if such methods are readily achievable, 42 U.S.C. § 12182(b)(2)(A)(iv), 12184(b)(2)(C):

i. Plaintiffs cannot state a claim against Lyft under 42 U.S.C. § 12182(b)(2) because Lyft is not a "public accommodation." For purposes of this lawsuit, Lyft does not contest that it is subject to 42 U.S.C. § 12184.

ii. Plaintiffs have failed to recite any theory of liability or state a claim on which relief can be granted because Plaintiffs have not identified what barrier removal is readily achievable.

iii. Plaintiffs cannot meet their burden of producing a plausible barrier removal proposal, including an estimate of the cost of the alleged barrier removal. *Roberts v. Royal Atl. Corp.*, 542 F.3d 368, 373 (2d Cir. 2008). LEXIS 135989, at *10-12 (S.D.N.Y. July 21, 2021).

iv. Plaintiffs lack standing to pursue a claim for the removal of a "technological barrier" because they have not downloaded the Lyft app and thus cannot trace any injury allegedly resulting from the way the app is designed. *See Calcano*, 36 F.4th at 72.

v. As a matter of law, Lyft need not remove "transportation barriers" if such barrier removal would require retrofitting the vehicles to create WAVs. 42 U.S.C. § 12182(b)(2)(A)(iv).

vi. In the ADA, Congress specifically exempted private entities like Lyft from having to purchase or lease WAVs. *See* 42 U.S.C. § 12184(b)(3). A general provision of the ADA, such as 42 U.S.C. § 12184(b)(2)(C), cannot be construed to override a specific exemption provided by Congress in Section 12184(b)(3). *RadLAX Gateway Hotel, LLC v. Amalgamated Bank,* 556 U.S. 639, 645 (2012).

vii. As a matter of law, the ADA does not require Lyft to provide WAVs. *Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 73 (2d Cir. 2012); *see also Toomer v. City Cab*, 443 F.3d 1191, 1195 (10th Cir. 2006); 28 C.F.R. § 36.307.

2. Defenses To Plaintiff Harriet Lowell's Claim Under the NYSHRL:

a. As to Lowell's claim that Lyft fails to implement reasonable modifications:

i. *See* Lyft's defenses in Paragraphs 1.a.ii through vii.

b. As to Lowell's claim that Lyft refuses to remove barriers where such removal is readily achievable:

i. *See* Lyft's defenses in Paragraphs 1.b.ii through vii.

**vi.    A statement by each party as to whether the case is to be tried with or without a jury, and the number of trial days needed.**

This case will be tried without a jury.  The trial is expected to take five days.

**vii.    A statement as to whether all parties have consented to trial of the case by a magistrate judge (without identifying which parties have or have not so consented).**

The parties do not consent to trial of the case by a magistrate judge.

**viii.    Any stipulations or agreed statements of fact or law.**

1.    Plaintiff Harriet Lowell is an individual with a disability under the Americans with Disabilities Act.  42 U.S.C. § 12102(1)(A).

2.    Plaintiff Harriet Lowell is an individual with a disability under the New York State Human Rights Law and the New York City Human Rights Law.  N.Y. Exec. Law § 292(21).

3.    For purposes of this case, Defendant does not contest that it is an entity that is engaged in "specified public transportation" under the Americans with Disabilities Act.  42 U.S.C. § 12184.

4.    For purposes of this case, Defendant does not contest that it falls within the definition of "public accommodation" under the New York State Human Rights Law.  N.Y. Exec. Law § 292(9).

5.    Defendant will not dispute the authenticity of documents produced by Defendant during discovery, and Plaintiffs will not dispute the authenticity of documents produced by Plaintiffs during discovery.

6.    The parties will not dispute that the individual in the sender line of an email drafted that email and the email's contents are that individual's statement.  Individuals in the recipient lines of an email are assumed to have received the respective email.

**STIPULATED FACTS**

1.    Plaintiff Harriet Lowell ("Ms. Lowell") is a citizen of Westchester County and a

resident of White Plains, New York, who relies on a motorized scooter for travel.

2.    Plaintiff Westchester Disabled on the Move, Inc. ("WDOMI") is a non-profit community-based organization headquartered in Yonkers, New York.

3.    Ms. Lowell is a citizen of White Plains in Westchester County, New York.

4.    Ms. Lowell has never downloaded Lyft's mobile-based application (the "App").

5.    A significant percentage of WDOMI's constituents, clients, and staff are persons with disabilities, including mobility-related disabilities.  WDOMI is staffed, directed, and driven by the individuals with disabilities that it seeks to serve, including wheelchair-users.

6.    Lyft, Inc., is incorporated under the laws of the State of Delaware, with its principal place of business in San Francisco, California.

7.    Lyft launched its peer-to-peer marketplace for on-demand ridesharing in or about 2012.

8.    Lyft operates multimodal transportation networks in the United States that offer access to a variety of transportation options through Lyft's platform and App.

9.    Lyft's transportation network is designed to address a wide range of mobility needs. The Lyft network spans rideshare, car rentals, bikes, scooters, and transit.

10.    Lyft's stated mission is to "improve people's lives with the world's best transportation."

11.    Members of the general public may download the App and agree to the Terms of Service.

12.    Drivers on the Lyft ridesharing platform must agree to the Terms of Service and Driver Addendum, and meet applicable state and/or local regulatory vehicle, driver, and documentation requirements that vary by region.

13.    Charges, fares, and payments are governed by the Lyft Terms of Service and the Driver

Addendum.

14.     Lyft organizes its coverage areas into more than 300 geographic Regions ("Regions") nationwide.

15.     Lyft offers a variety of ride modes on the App, but does not offer every ride mode in every Region.

16.     Lyft offers its standard mode service ("Standard mode") in all 50 states.

17.     Lyft makes Standard mode available in all regions where it operates, regardless of population density, wait time, number of available vehicles, or any other considerations or metrics.

18.     In every Region where Lyft operates, Standard mode appears as an available ride mode when a user inserts their destination address.

19.     When a non-Access mode is available on the Lyft platform in a Region, riders are able to request a ride in that "mode" at any time, 24 hours a day, but Lyft makes no guarantee that the ride request will be matched or that a driver will be available or accept the ride request.

20.     Depending on a user's location, the App displays information specific to that location, such as available ride modes, price, and availability.  In addition to ridesharing options, the App may show local information such as public transportation options, bike share, or rental car offerings.

21.     Wait times (*i.e.,* the amount of time between the time a ride is requested and the time when the driver arrives) and completion rates (*i.e.,* the percentage of requested rides that are completed) on the Lyft platform vary by location and by mode.

22.     Lyft does not guarantee any service levels or outcomes to its users, including wait times, completion rates, or that a requested ride will be completed.

23.     Lyft does not restrict its Standard mode in any Region based upon the level of service, including wait times and completion rates.

24.    Lyft offers Standard mode through an independent contractor model (the "IC model").

25.    The IC model depends on drivers who personally own or rent a car. These drivers set their own hours and drive where they want to drive.

26.    Prior to 2016 when it began offering WAV service in Portland, Oregon, Lyft did not offer WAV service in any Region.

27.    WAVs are vehicles built to accommodate fixed-frame wheelchairs, and typically feature a wheelchair ramp or lift, a lowered floor to accommodate the equipment, and a securement device to keep the wheelchair in place when the vehicle is in motion.

28.    Lyft spent approximately $10-13 million on its WAV programs in 2019.

29.    Lyft spent approximately $13-15 million on its WAV programs in 2020.

30.    Lyft's WAV budget for 2021 was $20 million.

31.    Lyft's projected WAV budget for 2022 is $25 million.

32.    To date, Lyft has launched WAV service (called "Access" mode) in nine cities in the United States: Boston, Massachusetts; Chicago, Illinois; Dallas, Texas; Los Angeles, California; New York, New York; Philadelphia, Pennsylvania; Portland, Oregon; Phoenix, Arizona; and San Francisco, California ("Access Regions").

33.    Lyft launched Access mode in these nine markets in response to regulatory requirements, financial incentives, or a partnership with a transit agency.

34.    Whenever local regulators require Lyft to provide WAV service as a condition of doing business, Lyft has complied with the regulators and provided WAV service.

35.    Lyft does not offer Access mode in Regions other than the Access Regions ("the non-Access Regions").

36.     The non-Access Regions include Westchester County and all of New York State outside of New York City.

37.     Lyft offers Access mode in the Access Regions using two models: the IC model and the "Partner model."

38.     As in the case of Standard mode, the IC model for WAV depends on drivers who personally own or rent WAVs. These drivers ("IC WAV drivers"), like other independent drivers on the Lyft platform, set their own hours and drive where they want to drive.

39.     The second method, the Partner model, relies on third-party transportation companies with whom Lyft contracts.

40.     Under the Partner model, Lyft pays the third-party companies a negotiated hourly rate that varies by city and by company.  In exchange for the hourly rate, the third-party companies provide the contracted-for number of WAVs and drivers to drive the WAVs on the Lyft platform.

ix.     A list of the witnesses each party expects to call on its case in chief, including a very brief description of the witness's role and/or the subject matter of his or her anticipated testimony, the amount of court time needed for each witness, and a statement as to whether any other party objects to the witness.

Plaintiffs' Anticipated Witnesses:

Plaintiffs expect to call the following witnesses in its case in chief.

1.  Harriet Lowell: Plaintiff

    Explanation: Ms. Lowell will testify regarding the harm she has experienced as a result of being denied access to WAVs by Lyft.  Ms. Lowell will testify why and how she seeks to use Lyft's WAV services in the future should Lyft expand its WAV service.

    Direct Time Estimate: N/A, Testimony by Affidavit

2.  Melvyn Tanzman: Former Executive Director of Plaintiff WDOMI

    Explanation:  Mr. Tanzman was the Executive Director of WDOMI for 21 years, until 2020, where he was responsible for management of WDOMI's activities.  Mr. Tanzman will testify regarding the harm that many of WDOMI's members experienced as a result of being denied access to WAVs by Lyft, the statements and requests made by WDOMI to make Lyft offer WAV service, and why many of WDOMI's members seek to use Lyft.

    Direct Time Estimate: N/A, Testimony by Affidavit

    **Lyft's Objections**: Hearsay: Mr. Tanzman's testimony is based on hearsay. Fed. R. Evid. 802.

    Personal Knowledge: Mr. Tanzman is testifying on matters as to which he lacks personal knowledge. Fed. R. Evid. 602.

3.  <u>Donna Drumm</u>: Able-Bodied Lyft User and Founder of DrummAdvocacy, Law Firm Dedicated To Advocating For Individuals With Disabilities

Explanation: Ms. Drumm will testify regarding her experience as an able-bodied Lyft user who continues to use Lyft, despite the poor service that Lyft provides to able-bodied users in Westchester County.

Direct Time Estimate: N/A, Testimony by Affidavit

**Lyft's Objections**: Cumulative, Relevance: Ms. Drumm's testimony is unnecessary because the parties have already stipulated that Lyft provides WAV service in New York City but not in Westchester County. Fed. R. Evid. 401-403.

Undisclosed expert opinion: Ms. Drumm's testimony is not the testimony of a fact witness. She appears to be offering expert testimony but Plaintiffs did not disclose Ms. Drumm as an expert witness. Fed. R. Civ. Proc. 26, 37.

Hearsay: Ms. Drumm's testimony is based on hearsay. Fed. R. Evid. 802.

Personal Knowledge: Ms. Drumm is testifying on matters as to which she lacks personal knowledge. Fed. R. Evid. 602.

Belated disclosure: Ms. Drumm is testifying on factual matters for which she was not previously identified as a witness on topics not disclosed in discovery. Fed. R. Civ. Proc. 26, 37.

4.  <u>Timothy Adubato</u>: Class Member

Explanation: Mr. Adubato will testify regarding his personal experiences, including his desire and inability to use Lyft.

Direct Time Estimate: N/A, Testimony by Affidavit

**Lyft's Objections**: Cumulative, Relevance: The parties have already stipulated that Lyft does not provide WAV service in New Jersey; testimony does not include proposed modifications that are both effective and reasonable in cost. Fed. R. Evid. 401-403.

5. <u>Daniel Bussani</u>: CEO of Bussani Mobility

Explanation: Mr. Bussani will testify regarding the available supply of WAVs that he offers through his WAV dealership in Westchester County and across New York State.  Mr. Bussani will testify regarding the affordability of WAVs and the numerous options drivers and Lyft has regarding available WAVs.

Direct Time Estimate: N/A, Testimony by Affidavit

6. <u>Peter Ruprecht</u>: CEO of Drive Master Co. Inc.

Explanation: Mr. Ruprecht will testify regarding the available supply of WAVs that he offers through his WAV dealership in New Jersey and in the nearby areas.  Mr. Ruprecht will testify regarding the availability of WAVs for rental or partnerships.

Direct Time Estimate: N/A, Testimony by Affidavit

7. <u>Claudia Stern</u>: Accountant & Data Analysis Expert

Explanation: Ms. Stern is a CPA and an expert in data analysis, forensic accounting, and economic damages.  Ms. Stern will testify regarding the data analysis she performed at the direction of Mr. Elegudin relating to the cost estimates, tables, and charts.  Ms. Stern will also testify as a summary witness preparing Exhibits 105-115, which are summaries of data produced by Lyft in this action.

Direct Time Estimate: 1.5 hours

**Lyft's Objections**: Inadmissible expert opinion: the opinions contained in Plaintiffs' expert reports are inadmissible under FRE 702.

8. <u>Alex Elegudin</u>: Accessibility Expert

Explanation: Mr. Elegudin is an accessibility expert who has worked as the Accessibility Program Manager of the New York City Taxi and Limousine Commission ("TLC")and as the Accessibility Chief at the New York City Metropolitan Transportation Association.  While at the TLC, his guidance of regulatory changes forced Lyft to expand its WAV service.  Mr. Elegudin will testify regarding Lyft's current inefficient method of offering WAV service, explain why Lyft's practices fail to meet the needs of disabled users, and opine about the reasonable modifications Lyft can implement to provide WAV service.

Time Estimate: 2 hours

**Lyft's Objections**: Inadmissible expert opinion: the opinions contained in Plaintiffs' expert reports are inadmissible under FRE 702. To the extent Plaintiffs are granted additional time for direct examination of Mr. Elegudin, Lyft would request the same amount of time for cross-examination.

9. <u>Isabella Gerundio</u>: Head of Lyft's WAV Team

   Explanation: Plaintiffs will call Ms. Gerundio as an adverse witness to testify regarding Lyft's WAV services.

   Time Estimate: 1 hour

10. <u>Abbas Bozorgirad</u>: Data Scientist at Lyft

    Explanation: Plaintiffs will call Mr. Bozorgirad as an adverse witness regarding Lyft's WAV service and Lyft's use of data.

    Time Estimate: 1 hour

11. <u>Dongwon Lee</u>: Former Operations Strategy Manager at Lyft

    Explanation: Plaintiffs will call Mr. Lee as an adverse witness regarding Lyft's WAV service.

    Time Estimate: 1 hour

<u>Lyft's Anticipated Witnesses</u>:

Lyft expects to call the following witnesses in its case in chief.

1. <u>Isabella Gerundio</u>: Program Manager for WAV at Lyft.

   Ms. Gerundio has worked exclusively on Lyft's WAV program since she joined Lyft in February 2019, overseeing Lyft's WAV program, called "Access" mode, in every market where Access mode has been offered in the United States: Boston, Massachusetts; Chicago, Illinois; Dallas, Texas; Los Angeles, California; New York City, New York; Philadelphia, Pennsylvania; Portland, Oregon; Phoenix, Arizona; and San Francisco, California. She will testify regarding Lyft's efforts to offer "Access mode," the differences between regions, the challenge of finding a supply of WAVs, the cost of such efforts, and other operational challenges relating to Access mode. Lyft will offer Ms. Gerundio's direct testimony by affidavit, but anticipates that Plaintiffs will cross-examine Ms. Gerundio.

   Time Estimate:  1 hour.

2. <u>Abbas Bozorgirad</u>: Data Scientist at Lyft.

   Mr. Bozorgirad has worked on data science in support of Lyft's WAV program. Mr.

Bozorgirad will testify regarding his data analysis of Lyft's Access mode, including his review of data collected in support of this litigation, operational challenges relating to Access mode, and the supply-and-demand nature of Lyft's ridesharing platform generally. Lyft will offer Mr. Bozorgirad's direct testimony by affidavit, but anticipates that Plaintiffs will cross-examine Mr. Bozorgirad.

Time Estimate: 1 hour.

3. <u>Leon Treger</u>: Operations Lead for WAV and HVM at Lyft.

Mr. Treger will testify regarding Lyft's ridesharing platform. He will discuss the Lyft app, the importance of supply-and-demand to the Lyft ridesharing platform, the importance of population density, the role of pricing and bonuses, and modes in general. Mr. Treger will also testify about his experience with Lyft's WAV program in the New York City region. Lyft will offer Mr. Treger's direct testimony by affidavit, but anticipates that Plaintiffs will cross-examine Mr. Treger.

Time Estimate:  1 hour.

4. <u>Marc Rysman, PhD</u>.: Professor of Economics at Boston University.

Dr. Rysman is Lyft's expert witness in this matter. Dr. Rysman will testify regarding the contents of his expert report, which offers economic insights into the functioning of platform industries like Lyft's and opines on whether a WAV service could function on Lyft's supply-and-demand-based platform.

Time Estimate:  2 hours.

**Plaintiffs' Objection:** Plaintiffs object to the testimony of Dr. Rysman.  Dr. Rysman's opinions, reports, and testimony are unreliable, do not assist the trier of fact, and are not based upon independent analysis of sufficient facts and data.  As a result, his opinions fail to meet the standards of *Daubert* and Rule 702.

5. <u>Pauline Scudieri</u>: Class member from the Dallas, Texas area.

Lyft will call Ms. Scudieri to testify regarding the conditions under which she would download and use Lyft.

Time Estimate: 10  minutes.

**x.    For testimony to be taken from unavailable witnesses pursuant to Fed. R. Civ. P. 32(a)(4), a page and line designation by each party of witness deposition testimony to be offered in its case in chief, with any cross-designations and objections by any other party.**

Plaintiffs:

1. Christopher Wu: 30:14-32:6; 34:1-37:1; 38:21-41:8; 57:18-60:7; 66:4-68:20; 69:23-77:15; 77:24-80:3; 86:16-87:10; 89:1-91:3; 92:20-102:9; 106:25-107:12; 108:12-108:21; 110:12-113:4; 114:21-114:24; 116:20-118:8; 130:13-135:4; 151:19-155:19; 159:22-162:23; 168:11-173:3; 180:8-183:25; 185:22-199:13; 215:20-218:19.

2. Joyce Chan: 24:1-25:6; 30:22-32:13; 40:12-42:23; 45:5-50:13; 57:23-61:2; 81:18-85:19; 88:7-23; 101:6-103:15; 108:8-114:10; 118:3-122:18; 124:7-129:21; 133:8-134:7; 140:9-149:25; 160:5-165:3; 168:13-174:12; 224:7-231:16; 237:8-238:15.

3. Richard Zhou: 22:19-24:11; 38:15-25; 42:7-12, 42:16-44:19; 59:7-10; 67:25-68:24; 68:25-69:22; 71:4-21; 74:8-21;  82:9-83:12; 84:10-20; 94:24-96:12; 104:12-107:5; 110:6-111:1; 118:4-24; 160:16-19; 161:18-20; 165:21-166:1; 171:5-172:6; 199:17-200:12; 200:13-201:17; 206:3-207:7297:23-299:18

4. Karim Bousta: 14:11-22; 18:2-18:13; 25:8-27:15; 29:17-33:6; 48:3-16; 68:23-71:6.

5. Ansel Lurio: 12:22-14:25; 20:8-24:24; 29:18-34:2; 40:17-43:4; 68:1-23; 94:13-100:21; 106:22-110:3; 128:18-130:12.

6. Deepak Gupta: 13:17-17:11; 73:11-21; 74:9-18; 132:10-136:10; 151:21-154:16.

7. Audrey Ren: 32:10-32:22; 134:3-135:14; 143:3-145:2; 164:12-170:7; 199:21-201:15.

8. Asaf Selinger: 16:15-19; 17:16-22; 31:18-32:11; 33:15-34:22; 36:4-11; 40:17-42:6; 42:9-45:3; 45:9-45:15; 47:19-49:23; 51:5-8; 51:17-20; 53:9-24; 54:5-54:13; 56:8-22; 58:2-59:24; 65:2-67:20; 72:9-75:13; 81:18-83:24; 96:23-97:25; 101:13-102:1; 104:16-19; 106:6-25; 107:1-6; 112:3-15; 113:1-118:20; 119:2-25; 121:13-18; 169:2-170:9; 187:5-18; 202:7-23; 203:6-19

**Defendant**:  Lyft objects to Plaintiffs' designation of several hundred pages of deposition testimony. Substantial portions of the testimony identified by Plaintiffs are not relevant to the elements of Plaintiffs' claims and are duplicative. Defendant has prepared its responses to Plaintiffs' designation as set forth in attached **Exhibit A**.

Defendant designates the following testimony:

1. Pamela Daly: 27:18-30:7; 37:21-38:25; 40:6-21.

   **Plaintiffs' Counter Designations:** 33:14-16

Pursuant to Your Honor's Individual Practices 6(D)(ii), copies of the deposition excerpts and 1-page synopses of those excerpts are being lodged concurrently with Lyft's trial affidavits.

**Plaintiff:**  Plaintiffs object to Lyft's designated testimony as not relevant.  Plaintiff has prepared its responses and counter designations to Defendants' designations as set forth in attached Exhibit B.

**xi.    A list by each party of exhibits to be offered in its case in chief, with a notation indicating the basis for admissibility of each exhibit with citation to Fed. R. Evid., as well as a notation indicating exhibits to which there is an objection and the basis therefor.  The failure to include a notation and basis may be deemed a waiver of any objection.**

Plaintiffs' Anticipated Exhibits To Be Offered In Its Case In Chief:

Plaintiffs' list of anticipated exhibits to be offered in their case in chief is attached hereto as **Exhibit C.**

Defendant's Anticipated Exhibits To Be Offered In Its Case In Chief:

Lyft's list of anticipated exhibits to be offered in its case in chief is attached hereto as **Exhibit D**.

**xii.    A statement of the relief sought, including damages claimed, itemizing each component or element of the damages sought with respect to each claim, and including the manner and method used to calculate the claimed damages.**

Plaintiffs seek the following relief:

1.    First, Plaintiffs respectfully request that the Court issue an Order enjoining Lyft from operating its WAV programs and Access mode in a manner that is discriminatory pursuant to section 12182 of the ADA, including subsections 12182(b)(2)(A)(ii), (b)(2)(A)(iv), (b)(2)(A)(v).

2.    Second, Plaintiffs respectfully request that the Court issue an Order enjoining Lyft from operating its WAV programs and Access mode in a manner that is discriminatory pursuant to section 12184 of the ADA, including subsections 12184(b)(2)(A), (b)(2)(C).

3.    Third, Plaintiffs respectfully request that the Court issue an Order enjoining Lyft from operating its WAV programs and Access mode in a manner that is discriminatory pursuant to

section 296(2)(a) of the NYSHRL, including subsections 296(2)(c)(i)-(iii).

4.    Fourth, Plaintiffs respectfully request that the Court issue an Order enjoining Lyft's discriminatory policies, practices, and procedures, and require that it comply with the applicable statutes using any means and methods it would like.

5.    Fifth, Plaintiffs respectfully request that the Court issue Orders pursuant to the ADA and the NYSHRL requiring that Lyft implement the following remedial measures:

a.    Order Lyft to remove the current categorical preclusion ("blocker") of WAVs on its platform in approximately 96% of its non-Access Regions and prevent implementation of Lyft's hidden Access Mode toggle to view WAV options on the App's home screen.  Lyft's policies and practices prevent WAV drivers from identifying their vehicles as WAVs and riders from having the option to select WAVs, even when they are available.

b.    Order Lyft to ask all drivers on its platform in the non-Access Regions and those onboarding in the non-Access Regions whether they have access to WAVs and whether they are interested in driving WAVs on Lyft's platform.  Plaintiffs envision that this question would be added to Lyft's mandatory driver onboarding process, during which Lyft requires drivers to disclose all relevant information about their vehicles, such as makes and models, and insurance information.

c.    Order Lyft to utilize cross-dispatching and prioritization logic to optimize WAV drivers' efficiencies and profitability.

d.    Order Lyft to explore and form partnerships with car rental, taxi, non-emergency medical transportation, and other transportation companies that have WAVs, as Lyft's competitors have done to improve WAV service.

e.    Order Lyft to include WAVs as options in Lyft's Express Drive and FlexDrive

21

programs for its existing and potential drivers.

    f.    Order Lyft to engage in both WAV driver- and rider-facing marketing to attract potential WAV drivers and to increase awareness of WAVs on Lyft's platform among potential WAV riders, and thereby increase the supply of WAVs and demand for WAV services on Lyft's app. Lyft may do so by employing targeted advertising and advertising campaigns similar to those Lyft uses for its standard and other non-WAV services.

    g.    Order Lyft to increase the supply of WAVs on its platform by offering potential drivers baseline bonuses and incentives for guaranteed periods of time, such as six months, one year, or eighteen months.

    h.    Order Lyft to implement a ten-cent accessibility surcharge on all rides nationwide to fund robust WAV services.

6.    Sixth, Plaintiffs respectfully request that the Court issue an Order awarding Plaintiffs' reasonable attorneys' fees and reimbursement of all costs and expenses incurred in litigating this action.

7.    Finally, Plaintiffs respectfully request that the Court issue an Order granting any further relief the Court deems just, necessary, and proper.

**xiii.    A statement as to whether the parties consent to a less than unanimous verdict.**

Not applicable.

**FINKLESTEIN, BLANKINSHIP**
**FREI-PEARSON & GARBER LLP**

By: ___/s/ Jeremiah Frei-Pearson_____
    Jeremiah Frei-Pearson
    FINKLESTEIN, BLANKINSHIP
    FREI-PEARSON & GARBER LLP
    1 North Broadway, Suite 900
    White Plains, New York 10601
    Telephone: 914.298.3281
    Facsimile: 914.824.1561
    jfrei-pearson@fbfglaw.com

*Attorney for Plaintiffs and the Certified*
*Classes*

**FOLGER LEVIN LLP**

By: ___/s/ Marie Jonas_____
    Jiyun Cameron Lee (Admitted *Pro*
    *Hac Vice*)
    Marie Jonas (Admitted *Pro Hac Vice*)
    33 New Montgomery Street,
    19th Floor
    San Francisco, CA 94105
    Telephone: 415.625.1050
    Facsimile: 415.625.1091
    jlee@folgerlevin.com
    mjonas@folgerlevin.com

*Attorneys for Defendant*

## FILER'S ATTESTATION

I attest that concurrence in the filing of the document has been obtained from each of the

other Signatories.

Dated: April 26, 2024

                            */s/ Marie Jonas*_____
                            Marie Jonas

Dated: _____

    White Plains, New York

                            **SO ORDERED.**

                            _____
                            HON. PHILIP M. HALPERN
                            United States District Judge

4880-8124-9208, v. 1